# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ────────────────────────────── x<br>:<br>~~ODS CAPITAL LLC, Individually and on~~ :<br>~~Behalf of All Others Similarly Situated,~~ :<br>:<br>         ~~Plaintiff,~~ :<br>:<br>:<br>    ~~vs.~~ :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>IN RE CHANGYOU.COM LIMITED~~,~~ :<br>~~SOHU.COM LIMITED, SOHU.COM (GAME)~~ :<br>~~LIMITED, CHANGYOU MERGER CO.~~ :<br>~~LIMITED, XIAO CHEN, CHARLES ZHANG,~~ :<br>~~JOANNA LV,~~ SECURITIES LITIGATION :<br>:<br>      ~~Defendants.~~ x | Case No. 1:20-cv-05973-KAM-RLM<br><br>CLASS ACTION<br><br>**CORRECTED AMENDED COMPLAINT<br>FOR VIOLATIONS OF THE FEDERAL<br>SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     JURISDICTION AND VENUE ............................................................................... 6

III.    PARTIES .................................................................................................................. 7

IV.     CHANGYOU'S HISTORY AND OPERATIONS ................................................... 9

V.      THE MERGER AND KEY EVENTS .................................................................... 11

VI.     LEGAL CONTEXT OF DEFENDANTS' MISSTATEMENTS AND
        OMISSIONS ........................................................................................................... 14

        A.      The Importance of Appraisal ...................................................................... 14

        B.      Cayman Law Recognizes the Right to Appraisal ....................................... 15

        C.      Regulatory Duties of Disclosure ................................................................ 17

VII.    DEFENDANTS' FALSE, MISLEADING, AND INCOMPLETE 13E-3s ............. 18

VIII.   INAPPLICABILITY OF STATUTORY SAFE HARBOR .................................... 25

IX.     TRANSACTION CAUSATION & RELIANCE ..................................................... 25

X.      LOSS CAUSATION ............................................................................................... 27

XI.     SCIENTER ALLEGATIONS ................................................................................. 30

XII.    CLASS ACTION ALLEGATIONS ....................................................................... 32

XIII.   COUNTS .................................................................................................................. 34

        A.      COUNT I: Violation of § 10(b) of the Exchange Act and Rule 10b-5
                Promulgated Thereunder Against All Defendants Except Defendant Chen ........ 34

        B.      COUNT II: Violation of Section 13(e) of the Exchange Act and Rule 13e-3
                Promulgated Thereunder Alleging Scienter, Against All Defendants
                Except Defendant Chen ............................................................................... 35

        C.      COUNT III: Violation of Section 13(e) of the Exchange Act and Rule
                13e-3 Promulgated Thereunder Against All Defendants ............................. 36

        D.      COUNT IV: Violation of Section 20(a) of the Exchange Act Against the
                Individual Defendants ................................................................................. 37

XIV.    PRAYER FOR RELIEF .......................................................................................... 38

Plaintiff ODS Capital LLC ("Lead Plaintiff"), brings this Amended Complaint against Defendants Changyou.com Limited ("Changyou" or the "Company"), Sohu.com Limited ("Sohu"), Sohu.com (Game) Limited ("Sohu Game"), ~~Changyou Merger Co. Limited ("Merger Co."),~~ Xiao Chen ("Chen"), Charles Zhang ("Zhang"), and Joanna Lv ("Lv").

Lead Plaintiff alleges the following upon personal knowledge as to those allegations concerning Lead Plaintiff and, as to all other matters, upon the investigation of counsel, which included: (a) review and analysis of public filings made with the Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases, analyst reports, and other publications; (c) review of documents from litigation in the Cayman Islands; and (d) consultation with experts on Cayman law and mergers and corporate valuation. Lead Plaintiff believes that substantial additional evidentiary support exists for the allegations herein that will be revealed through continued investigation and discovery.

As fully stated herein, Lead Plaintiff brings this federal securities class action on behalf of itself and all holders of Changyou ADS on April 23, 2020, and all sellers of Changyou ADS during the period from February 14, 2020 through April 23, 2020, inclusive (the "Class Period").

## I.    INTRODUCTION

1.      Changyou's controlling shareholder executed a buyout of the Company at far below fair value. The buyout was structured as a short-form merger, meaning public shareholders did not have an opportunity to vote down the deal. This also meant that the key backstop protecting shareholders against an unfair deal was the right to seek a court appraisal of the fair value of their shares. Despite this, in the merger documents, Defendants unequivocally told investors that Cayman law prevents the exercise of appraisal rights in short-form mergers. This was blatantly false and an inadequate disclosure under federal law governing privatizations, which requires disclosure of any appraisal rights or any other similar rights.

2.      Changyou was a video game company primarily operating in China.  At all relevant times, it had two classes of stock, with Class A shares entitled to one vote per share, and Class B shares entitled to ten votes per share.  In 2009, Changyou conducted a public offering of ADS in the United States and each ADS represented two class A shares.

3.      Sohu was Changyou's controlling stockholder at all relevant times and throughout the Class Period.  Sohu owned all Class B shares, as well as about 1.5 million Class A shares, giving it 95.2% of votes and 66.9% of the economic interest in Changyou.

4.      On January 24, 2020, Changyou, Sohu Game, a subsidiary of Sohu, and Changyou Merger Co. Limited (together, the "Entity Defendants"Merger Co."), agreed to execute a merger transaction (the "Merger").  Through the Merger, Sohu would essentially buy each outstanding ADS for $10.80, and after the deal closed Sohu would own the entire Company.

5.      On February 19, 2020, the Entity DefendantsChangyou, Sohu Game, and Merger Co. filed a Rule 13E-3 Transaction Statement with the SEC (the "13E-3").  This filing was required under § 13(e) of the Securities Exchange Act and SEC regulations concerning going private transactions.

6.      The 13E-3 **falsely** stated that because the deal was a "short-form merger" and a vote "is not required," this meant investors would "not be able to exercise dissenters' rights."[1] Defendants repeated similar statements throughout the 13E-3.  For example, the filing included a section for frequently asked questions (FAQ), where Defendants responded to the question: "Will shareholders be able to assert . . . appraisal rights . . . in connection with the Merger?"  Defendants stated: "No. Because the Merger will be a 'short-form' merger . . . and no shareholder vote on the

---

[1] The term "dissenters' rights" refers to the ability to dissent from a merger and seek appraisal.  As used herein, the term is synonymous with "appraisal rights."

Merger will be held." The 13E-3 went on to state that § 238 of the Cayman Islands Companies Law ("CICL"), which is the statute that provides for appraisal rights for Cayman companies, only applies to mergers where a shareholder vote is held.

7.     These statements were **false and misleading** because Cayman law does provide appraisal rights in short-form mergers and shareholders can exercise those rights. Indeed, a recent Cayman case arising from the Changyou Merger that is the subject of this litigation, has confirmed that such rights exist. *See In re Changyou.com Limited*, No. FSD 120 of 2020 (Jan. 28, 2021) ("*Cayman Changyou Action*") (attached hereto as Exhibit A). That opinion held that:

> **It would be absurd** to exclude a dissentient member of a company subject to a short-form merger from the protection of section 238 simply because, unlike in the case of a long-form merger, that member is not allowed to vote. The need for protection is no less clear and so Parliament should not be taken as having intended such a consequence absent express words to that effect.

*Id.* at 70 (emphasis added).

8.     Defendants' "absurd" position in the 13E-3 is that there are no appraisal rights in short form Mergers because there is no shareholder vote. Section 238(1) of the CICL unambiguously states that stockholders **do have appraisal rights**. Rather, this position is based on badly misconstruing CICL § 238(2). That section deals with the *procedure* for exercising appraisal. It sets an outside *deadline* for when certain aspects of the appraisal process must be taken and that deadline is queued off the "vote" regarding the Merger. Out of thin air, Defendants concoct the idea that this provision eliminates appraisal rights in short form mergers, because those mergers do not have a public vote of shareholders. However, that is not what the statute says and is not supported by precedent or common sense.

9.     Defendants' position in the 13E-3 falls apart for a number of reasons, but most simply, the existence of a potential deadline for doing something does not limit one from doing

3

that thing where the deadline never occurs.  Where no vote is held, no deadline occurs.  It makes no sense to instead argue that where no vote occurs, appraisal rights vanish.

10.    Even if the statute did not itself provide a means of **exercising** the appraisal rights — rights that are undeniably provided by § 238(1) — shareholders would still be able to exercise those rights through legal action.  It is perfectly ordinary for a statute to provide a right that can be exercised through suit, without providing a statutory process for the exercise of that right.  As the maxim goes, *ubi jus, ibi remedium* — where there is a right, there is a remedy.[2]

11.    In addition to being literally false, Defendants' statements were also misleading.  Defendants chose to unequivocally deny the existence of appraisal rights.  Even if they could furnish some plausible argument supporting their aggressively anti-shareholder view that shareholders could not seek appraisal, it was deeply misleading to assert (without clarification or qualification) that appraisal rights simply did not exist.  At most, Defendants could have stated that the issue was not fully settled, or that it was their position that shareholders could not seek appraisal.  Instead, Defendants unequivocally stated appraisal was unavailable.

12.    In fact, there was ***clear precedent*** for disclosing that appraisal rights ***do exist*** in short form mergers.  For example, in the privatization of Tsingda eEDU Corporation, another Chinese-based Cayman-incorporated company, by short-form merger, the Schedule 13E-3 stated: "Holders of Ordinary Shares of TEC will not be entitled to vote their Ordinary Shares of TEC with respect to the Merger, ***but will be entitled to dissenters' rights*** in accordance with Section 238 of the Cayman Companies Law."  It was misleading here to claim that the CICL barred

---

[2] In other words, there is absolutely no plausible argument that § 238(2) forecloses such actions and if § 238(2) simply did not exist, it would be wildly implausible to suggest § 238(1) could not be vindicated through suit due to the absence of an express statutory explanation of how to exercise that right.

4

appraisal, when — at most — it was actually Defendants' decisions that posed an obstacle to seeking appraisal.

13. Finally, regardless of whether an appraisal could be maintained under the procedure in the CICL, it was grossly deficient for Defendants to merely tell investors that appraisal was unavailable. In fact, applicable SEC regulations *required* Defendants to both "summarize the appraisal rights" and "**outline any other rights that may be available to security holders under the law**." *See* Item 1004(d) of Regulation M-A. Defendants' failure to describe the ability to seek appraisal by filing a suit clearly violated this requirement. But setting appraisal to the side, Defendants also failed to disclose many other available remedies that security holders could use to respond to an unfair merger, such as requesting an injunction in the Cayman Islands or seeking equitable quasi-appraisal remedies.

14. Ultimately, through their false and misleading statements and omissions, Defendants were able to push the Merger through—despite the fact that the Merger was at a tremendous discount to fair value. As more fully explained herein, the fair value of Changyou was far greater than the deal price at all relevant times, as confirmed by consultation with an expert in corporate valuation and mergers based on a discounted cash flow valuation and comparable companies' valuation.

15. Furthermore, on March 9, 2020, Changyou announced significantly positive fourth quarter 2020 ("4Q19") results. The Company **almost doubled** analyst expectations for earnings per share, generating $1.11 compared to expectations of $0.58.

16. Prior to these results — and as published in the 13E-3 — Houlihan Lokey (China) Limited ("Houlihan") issued a fairness opinion that warrants little consideration due to a number of biases and errors. However, Houlihan's discounted cash flow valuation resulted in a range of

$9.44 to $11.74, meaning the mid-point of $10.59 was just below the deal price of $10.80. Once reasonable adjustments to the projections utilized in that valuation are made to reflect the 4Q19 results, even the ***bottom*** of that range would increase to well above deal price.

17.    As will be confirmed by testimony, Lead Plaintiff relied upon the 13E-3s, including the representations regarding the lack of appraisal rights, in deciding to sell its shares on the NASDAQ, in deciding to tender shares through the Merger, and in deciding to not seek appraisal. Lead Plaintiff has sought appraisal in numerous other cases, including cases in the Cayman Islands.

18.    On April 17, 2020, the Merger closed without the truth being revealed. Pursuant to the Merger Agreement, Sohu Game, through its depositary institution acting as paying agent, competed the purchase of all Changyou ADS shares for $10.80 per share on April 23, 2020. On the day the deal closed, Sohu's stock price went up by 25%. This large increase confirms that Sohu was getting a tremendously good deal in the acquisition, and that the true value of Changyou ADS was worth far more than what Sohu had paid to acquire the Company.

19.    This action is brought on behalf of Changyou's former investors to recover losses based on the fair value of their Changyou ADS, and to prevent Defendants from retaining a windfall in value from a deal they closed using grossly false and misleading disclosures.

## II.    JURISDICTION AND VENUE

20.    The claims asserted herein arise under (i) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (ii) Section 13(e) of the Exchange Act, 15 U.S.C. § 78m(e), and Rule 13e–3 promulgated thereunder, 17 C.F.R. § 240.13e–3 ("Rule 13e-3").

21.    This Court has subject matter jurisdiction over this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

22.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b).  A significant portion of Defendants' actions related to the 13E-3s and the Merger occurred in this District.  Further, Changyou's ADS agreement consents to jurisdiction in this District.  Section 7.07 of that agreement states that "[t]he Company hereby (i) irrevocably designates and appoints CT Corporation System located at 111 Eighth Avenue, New York, New York, 10011, in the State of New York, as the Company's authorized agent upon which process may be served in any suit or proceeding arising out of or relating to the Shares or Deposited Securities, the American Depositary Shares, the Receipts or this Agreement, (ii) consents and submits to the jurisdiction of any state or federal court in the State of New York in which any such suit or proceeding may be instituted, and (iii) agrees that service of process upon said authorized agent shall be deemed in every respect effective service of process upon the Company in any such suit or proceeding."

23.     In connection with the acts alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    **PARTIES**

24.     Plaintiff ODS Capital LLC (previously defined as "Lead Plaintiff"), as set forth in the Certification attached to the initial complaint dated December 8, 2020, ECF No. 1, was a beneficial owner of Changyou ADS at the close of the Merger.  Lead Plaintiff purchased its Changyou ADS on the NASDAQ and sold shares on the NASDAQ on March 18, 2020 and March 26, 2020, and exchanged its remaining shares (which exchange constitutes a sale) on April 23, 2020.  Lead Plaintiff's primary offices and business address are in Jupiter, Florida.  Lead Plaintiff's transactions in Changyou ADS were completed through a New York-based brokerage.

7

25.     Defendant Changyou is a China-based company incorporated in the Cayman Islands that operates personal computer and mobile application games.  Changyou completed its initial public offering at a price of $16.00 per ADS in April 2009, and was publicly traded on the NASDAQ Global Select Markets until the close of the Merger.  Its principal executive offices are located at the Changyou Building, Raymon Creative Industrial Park, No. 65 Bajiao East Road, Shijingshan District, Beijing, 100043, People's Republic of China.  Its registered office in the Cayman Islands is located at P.O. Box 31119 Grand Pavilion, Hibiscus Way, 802 West Bay Road, Grand Cayman, KY1-1205 Cayman Islands.  Its registered agent in the United States is CT Corporation System located at 111 Eighth Avenue, New York, New York 10011.

26.     Defendant Sohu.com Limited (previously defined as "Sohu") is a leading Chinese online media, search, and game service group providing comprehensive online products and services on personal computers ("PCs") and mobile devices in China.  Sohu's businesses are conducted through the Sohu Group, which consists of Sohu, Sogou, and Changyou, and their various subsidiaries.  Sohu.com ADSs trade on the NASDAQ under the symbol "SOHU."

27.     Prior to the Merger, Sohu had absolute control over Changyou.  Sohu held 1.5 million Class A Ordinary Shares of the Company directly, and 70.25 million Class B Ordinary Shares of the Company indirectly, through its 100% ownership of Sohu Game.  Together, Sohu's stock ownership in Changyou constituted 66.9% of the combined total outstanding equity and 95.2% of the total voting power.

28.     Defendant Sohu.com (Game) Limited (previously defined as "Sohu Game") is a wholly-owned subsidiary of Sohu.com, and indirectly held 70.25 million Class B Ordinary Shares of the Company through its 100% ownership of Merger Co.

29.     Changyou Merger Co. Limited.

8

29.    Defendant Changyou Merger Co. Limited ("Merger Co.") is, was a direct wholly-owned subsidiary of Sohu Game, and directly held 70.25 million Class B Ordinary Shares of the Company, which constituted approximately 95.0% of the total voting power of Changyou. Merger Co. is not a named Defendant because it has been merged with Changyou through the Merger and no longer has an independent existence.

30.    Defendant Xiao Chen was a director and Chairman of the Special Committee of Changyou prior to the Merger.  He signed the 13E-3 on behalf of Changyou.  Mr. Chen is a citizen of China.

31.    Defendant Dr. Charles Zhang is a director and the Chairman of the Changyou board of directors.  Mr. Zhang founded Sohu and also serves as Chairman of the board of directors and Chief Executive Officer of Sohu.  He signed the 13E-3 on behalf of Sohu.  Mr. Zhang is a citizen of China.  Changyou's public filings recognize that Defendant Zhang's dual roles at Sohu and Changyou may pose conflicts of interest.

32.    Defendant Joanna Lv (also known as, Yangfeng Lyu) is the Chief Financial Officer of Sohu and a director of Sohu Game and Merger Co.  She signed the 13E-3 on behalf of Sohu Game and Merger Co.

33.    Defendants Changyou, Sohu, Sohu Game, Merger Co., Chen, Zhang, and Lv are collectively referred to herein as the "Defendants."  Defendants Chen, Zhang, and Lv are collectively referred to herein as the "Individual Defendants."

## IV.    CHANGYOU'S HISTORY AND OPERATIONS

34.    Changyou began operations as the games business unit within the Sohu Group in 2003.  In May 2007, Sohu launched an online game called Tian Long Ba Bu, or TLBB.  Around that time, the Sohu Group reorganized its online games business.  As part of the reorganization, Changyou was incorporated in the Cayman Islands in August 2007 as an indirect wholly-owned

9

subsidiary of Sohu, to hold the personal computer ("PC") games business of the Sohu Group.  The Sohu Group transferred all its assets and operations relating to its PC games business unit to Changyou, effective December 2007.

35.     In April 2009, Changyou completed an initial public offering ("IPO") of ADS in the United States, whereby one ADS represented two Class A ordinary shares of Changyou.  The ADS were listed on the NASDAQ Global Select Markets under the symbol CYOU until the close of the Merger.  The ADS are securities.

36.     Since Changyou's IPO, Sohu was the Company's controlling stockholder through ownership of super-voting Class B shares that were entitled to 10 votes per share.

37.     Changyou operates three primary businesses: (i) online game business, (ii) the platform channel business, which consists primarily of online advertising, and (iii) the cinema advertising business.  The Company's core business is the online game business.

38.     Changyou is a leading online game developer and operator in China as measured by the popularity of its PC game TLBB and its mobile game Legacy TLBB Mobile.  Changyou also engages in the development, operation, and licensing of its massively multi-player online role-playing games ("MMORPGs"), which are games that may be played simultaneously by hundreds of thousands of game players.  Other online games offered by Changyou include TLBB 3D, Xuan Yuan Jian, Legend of Sword, Fairy 5, and Fengyun, among others.

39.     Changyou distributes its games through licensing agreements with major distributors in China and other select countries.  For instance, in 2016 and 2018, Changyou entered into agreements with Tencent pursuant to which the Company granted an exclusive license to Tencent to distribute and operate within China the Company's mobile games Legacy TLBB Mobile and Xuan Yuan Jian, which were launched in May 2017 and October 2018,

respectively.  The Company also licensed other third-party operators to distribute and operate within China certain other mobile games, including Legend of Sword and Fairy 5.  The Company also licenses to third-parties select PC games and mobile games in certain overseas markets outside China, including Hong Kong, Macau, Taiwan, Singapore, Malaysia, Thailand, Vietnam, and South Korea.

40.    Changyou earns revenue when game players purchase prepaid game cards or game points, which are used to purchase virtual items.  Changyou sells prepaid game cards to regional distributors, who in turn sub-distribute them to numerous retail outlets, including Internet cafes and various websites, news stands, software stores, book stores, and retail stores.

41.    Changyou's public filings – such as its final annual report prior to the Merger – acknowledge that Sohu is its ultimate parent and that Sohu's voting power gives it the power to control Changyou's actions.  The Company stated that it operates as "part of the Sohu Group" and that "Sohu may from time to time make strategic decisions that it believes are in the best interests of its business as a whole, including our company.  These decisions may be different from the decisions that we would have made on our own."  Changyou's management was conflicted as between Sohu and Changyou, since they all understood that Sohu was ultimately in control of the Company.  Changyou recognized that the relationship with Sohu could create conflicts of interest in a number of ways, including because Defendant Zhang was the CEO of Changyou and also the founder, Chairman, and CEO of Sohu.  Similarly, Changyou expressly recognized that Sohu may "influence" the board of directors.

## V.    THE MERGER AND KEY EVENTS

42.    According to the 13E-3, discussions that ultimately resulted in the Merger began on July 11, 2019, when Dr. Charles Zhang, Chairman of Changyou and CEO and Chairman of

Sohu, held a meeting with certain members of Sohu's senior management to discuss the feasibility of a possible privatization of Changyou by Sohu.

43.    Following retention of U.S. legal counsel, and discussions with China Merchants Bank regarding financing, on September 7, 2019, the Sohu board of directors approved submitting to the Changyou board of directors a preliminary non-binding proposal to acquire all outstanding Class A Ordinary Shares not already owned or beneficially owned by Sohu in a short-form statutory merger of the Company with Sohu for cash consideration of $10.00 per ADS, or $5.00 per Class A Ordinary Share.  This proposal was sent to the Changyou board of directors on September 9, 2019.

44.    On September 18, 2019, the Changyou board of directors approved the formation of a special committee (the "Committee"), consisting of Dr. Xiao Chen and Mr. Charles Chan, both of whom were purportedly independent from Sohu, to review and evaluate the Proposal. The Committee retained Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") as U.S. counsel and Houlihan as the financial advisor to the Special Committee.

45.    Between January 16, 2020 and January 23, 2020, Changyou and Sohu negotiated a modest increase in the consideration paid to $10.80 per ADS share.

46.    On January 23, 2020, the Committee met with Houlihan Lokey and Skadden. Houlihan issued a fairness opinion based on a discounted cash flow valuation.  That valuation found a fair range of $9.44 to $11.74 per ADS.  The midpoint of this valuation is $10.59, just below the Merger price.  However, Houlihan's supposed opinion warrants little attention for two reasons.

47.    **First**, Houlihan relied entirely on the figures, estimates, and projections provided by Changyou management — meaning that Houlihan's analysis was only as good as those

estimates.   Changyou management was conflicted due to their deep ties to Sohu, which was acquiring the Company.

48.    **Second**, Houlihan was entitled to a larger fee for its work if the Merger closed. Issuing an opinion that the deal was unfair would make it far less likely for a deal to close. Therefore, Houlihan had strong incentive to issue an opinion that the Merger was fair.

49.    On January 24, 2020, the Changyou board of directors adopted resolutions that, among other things, authorized and approved the execution, delivery, and performance of the Merger agreement (the "Merger Agreement") and the consummation of the Merger.

50.    On January 24, 2020, the Sohu board of directors and the sole director of each Sohu Game and Merger Co. adopted resolutions wherein Sohu, Sohu Game, and Merger Co., among other things, authorized and approved the execution, delivery, and performance of the Merger Agreement and the consummation of the Merger.

51.    On February 19, 2020, ~~the Entity Defendants~~Changyou, Sohu Game, and Merger Co. jointly filed the 13E-3 under Section 13(e) of the Securities Exchange Act.  The Merger Agreement was attached as Exhibit (d)(1) to the 13E-3.  The 13E-3 contained false and misleading statements regarding the availability of appraisal rights for security holders.

52.    On March 9, 2020, Changyou announced significantly positive fourth quarter 2020 ("4Q19") results.  The Company *almost doubled* analyst expectations for earnings per share, generating $1.11 compared to expectations of $0.58.  It performed in line with expectations on other key metrics, including by posting strong revenue growth.

53.    Also on March 9, 2020, Changyou published an amended 13E-3.  This filing updated certain disclosures, but made identical statements regarding the availability of appraisal

13

rights. Together, the February 14, 2020 13E-3 and March 9, 2020 amendment, are referred to as the "13E-3s."

54.    On April 17, 2020, Changyou, Sohu, Sohu Game, and Merger Co. closed the Merger pursuant to the terms of the Merger Agreement. That same day, Sohu's stock price went up by 25%. This large increase confirms that Sohu was getting a tremendously good deal in the acquisition and that the true value of Changyou ADS was worth far more than what Sohu had paid to acquire the Company.

55.    Sohu Game, through its depositary institution acting as paying agent, completed the purchase of all outstanding Changyou ADS for $10.80 per share on April 23, 2020.

## VI.    LEGAL CONTEXT OF DEFENDANTS' MISSTATEMENTS AND OMISSIONS

### A.    The Importance of Appraisal

56.    Appraisal rights provide a key backstop that protects investors from an unfair buyout. In many mergers, and especially in short-form mergers, investors may be dragged into an unfair merger. Without the ability to reject the merger, minority shareholders are at great risk of being ripped off. This is especially true when the merger itself is conflicted, such as in a case of a management buyout or, as here, when a controlling shareholder is executing a short-form merger, because in these situations the acquirer is likely to have significant leverage in controlling the terms of the merger and flow of information. The right to seek judicial review is an essential right because it serves as a final backstop against unfair deals. The statutory right to appraisal is a core right comprising the benefits of share ownership, along with the right to dividends, voting rights, and the right to residual value in a liquidation.

57.    As esteemed Delaware Court of Chancery Chancellor, Leo Strine, has stated, "[a]lthough appraisal is not a cost-free remedy, institutional ownership concentration has made it

14

an increasingly effective one, and there are obvious examples of where it has been used effectively." *In re MFW S'holders Litig.*, 67 A.3d 496, 535 (Del. Ch. 2013).

58.    In addition to providing an important right to seek fair value of one's shares, appraisal also serves as a valuable deterrent discouraging unfair deals.  Charles Korsmo, Minor Myers, *Reforming Modern Appraisal Litigation*, 41 DEL. J. CORP. L. 279, 317 (2017).  Therefore, any attempt to artificially constrain the right to seek appraisal should be viewed with skepticism, as it may indicate that parties are attempting to side-step this deterrent and pave the way for a lower risk pathway for the completion of an unfair deal.

59.    Even where a shareholder would not themselves seek appraisal, other market participants who see the value of appraisal may be willing to buy shares on the open market in order to seek appraisal when they see a merger at unfair prices – and this phenomenon creates upward pressure on share prices.  *Id.* at 314-15.  Put differently, appraisal creates value for shareholders in enabling them to personally secure a fair value for their shares through court review, but it also creates immediate value insofar as it is a valuable right that attaches to shares, which thus increases the value of the shares.

**B.    Cayman Law Recognizes the Right to Appraisal**

60.    The existence of appraisal rights is determined by the corporate law of the company at issue.  Changyou is incorporated in the Cayman Islands and therefore is subject to the appraisal laws provided by Cayman Islands law.  While ADS securities do not *directly* carry the right to appraisal, ADS holders have the right to redeem their securities for common stock and

15

therefore have the right to seek appraisal. Therefore, as relevant here, the existence of appraisal rights is exactly as relevant to ADS holders as it is to holders of common stock.[3]

61.     The right to appraisal under Cayman law is provided by § 238(1) of the major Cayman companies law, the CICL. The full text of that subsection is as follows: "**A member of a constituent company incorporated under this Law shall be entitled to payment of the fair value of his shares upon dissenting from a merger or consolidation.**" The term "member" is used by the CICL to refer to shareholders.[4]

62.     The next subsection CICL § 238(2) provides a **deadline** for the exercise of appraisal rights. The full text of the subsection states: "**A member who desires to exercise his entitlement under subsection (1) shall give to the constituent company, before the vote on the merger or consolidation, written objection to the action.**" There are two important points to note about this deadline. First, it does not specify what it means by "a vote." Second, it *only* specifies a deadline tied to a vote, and therefore does not specify a timeframe within which one must dissent where no vote is held.

63.     As written, it is not strange or problematic that there is no deadline where there is no vote. It merely implies that where no vote is held, no statutory deadline exists. By analogy, consider a hypothetical statute of limitation that requires claims to be brought within 30 days after the defendant confesses to a crime. This statute would not limit claims where no confession was made. There would then, of course, be questions of whether some other statute of limitation

---

[3] The terms "dissenting" and "objecting" are used roughly interchangeably to refer to the act of seeking appraisal. In particular, one is said to give notice that they are "dissenting" or is said to issue their "objection" to initiate an appraisal. This language reflects the concept that the shareholder is dissenting from and objecting to the merger.

[4] Citations to the CICL refer to the version of that law in effect at the time of the Merger. It has since been updated with revisions that are not relevant to the matters at issue here.

applies, or whether the only limit on timeliness would derive from equitable principles or other procedural limits, but there is nothing peculiar about the non-application of the confession statute where there has been no confession.  Similarly, even accepting the notion that CICL § 238 requires a shareholder vote to apply, that would simply mean the *limitation* in §238 does not apply.  It would not mean that CICL § 238 bars actions.

64.    The remaining subsections of CICL § 238 relate to other details of the process of dissenting and seeking appraisal and provide details about the content of an objection.

65.    The leading case interpreting CICL § 238 is *Shanda Games Ltd v. Maso Capital Investments Ltd* [2020], in which the Privy Counsel (which sits as the high court over the Cayman legal systems), explained the importance of appraisal rights as follows: "A **key feature of the statutory regime** for mergers in the Cayman Islands is that it gives significant rights to dissenting shareholders. . . .  They include an **appraisal right,** that is, the right to apply to the Grand Court for determination of the 'fair value' of their shares and a right to the payment of 'a fair rate' of interest on the outstanding consideration."  Similarly, the Cayman Islands Grand Court commented on the importance of appraisal rights under Cayman law in *In re JA Solar Holdings Co., Ltd.,* No. FSD 153 of 2018 (July 18, 2019), as "**a vital safeguard for minority shareholders designed to protect their economic interest**."  (Emphasis added.)

## C.    Regulatory Duties of Disclosure

66.    In addition to general duties of candor applicable to all statements, Defendants had specific regulatory duties of disclosure, because they were engaged in a "going private" transaction subject to Section 13 of the Exchange Act and the rules promulgated thereunder. These duties required Defendants to file a complete and accurate 13E-3 information statement. The purpose of these special rules governing going private transactions is to ensure that investors have important information prior to a privatization merger.

17

67.     As especially relevant here, Rule 13e-3(f) requires the disclosure of "the information concerning appraisal rights required by § 229.1016(f)."  17 C.F.R. § 240.13e-3(e)(4). That section (17 C.F.R. § 229.1016(f)) requires "[a] detailed statement describing security holders' appraisal rights and the procedures for exercising those appraisal rights referred to in response to Item 1004(d) of Regulation M-A."  Item 1004(d) of Regulation M-A states that the filer must "[s]tate whether or not dissenting security holders are entitled to any appraisal rights." 17 C.F.R. § 229.1004(d).  It also states that if shareholders are entitled to any appraisal rights, the filer must "summarize the appraisal rights." *Id.*  If they are not entitled to appraisal rights, the filer must "**briefly outline any other rights that may be available to security holders under the law**." *Id.* (emphasis added).

## VII.    DEFENDANTS' FALSE, MISLEADING, AND INCOMPLETE 13E-3s

68.     Each of the Defendants made the statements in the 13E-3 filings.  ~~The Entity Defendants~~Changyou, Sohu Game, and Merger Co. each signed the 13E-3s and each of the Individual Defendants executed those signatures.  Specifically, Defendant Chen signed for Changyou, Defendant Zhang signed for Sohu, and Defendant Lv signed for Sohu Game and ~~for~~ Merger Co.[5]  The 13E-3s included the following false and misleading statements, and the particular language alleged to be false and misleading is recorded below in ***bold/italic*** text.  The following statements appeared in both 13E-3 filings, which were filed on February 19, 2020 and March 9, 2020.

69.     Under a bold header, "Will shareholders be able to assert dissenters' rights (also referred to as "appraisal rights") in connection with the Merger?," the 13E-3s stated as follows:

---

[5] Defendant Changyou is responsible for any statements made by Merger Co., due to the Merger between Changyou and Merger Co.

*No. Because the Merger will be a "short-form" merger in pursuant to section 233(7) of the Cayman Islands Companies Law and no shareholder vote on the Merger will be held, holders of Class A Ordinary Shares (including holders of Class A Ordinary Shares represented by ADSs) will not be able to exercise dissenters' or appraisal rights under section 238 of the Cayman Islands Companies Law, which applies to mergers under the Cayman Islands Companies Law in which a shareholder vote is held.*

70.     The 13E-3s also included the following false and misleading header and statement:

*No Dissenters' or Appraisal Rights*

*As the Merger is a short-form merger under section 233(7) of the Cayman Islands Companies Law, and the vote of holders of the Company's Shares (including ADSs) is not required to complete the Merger, the Unaffiliated Security Holders will not be able to exercise dissenters' rights such as are afforded to shareholders of Cayman Islands companies pursuant to Section 238 of the Cayman Islands Companies Law with respect to mergers for which a shareholder vote is required.*  A copy of Section 238 of the Cayman Islands Companies Law is attached as Exhibit (f)(2) to this Transaction Statement for the information of the Unaffiliated Security Holders.

71.     The 13E-3s also included a statement that "the Special Committee and the Changyou Board also weighed the following negative factors," and then listed the following supposed factor:

*No Opportunity for the Unaffiliated Security Holders to Vote on the Merger.  Because the Merger is being effected pursuant to a "short-form" merger under section 233(7) of Cayman Islands Companies Law, the Merger does not require approval by the Company's shareholders. The Unaffiliated Security Holders will not therefore have the opportunity to vote on the Merger. Further, the Unaffiliated Security Holders will not be able to exercise any dissenters' rights under section 238 of the Cayman Islands Companies Law.*

19

72.    The statements in the prior three paragraphs were false, materially misleading, and utterly failed to meet the obligations imposed by the federal securities laws, including Item 1004(d) of Regulation M-A.  Specifically, the statements were false for the following reasons.

73.    **First**, the statements falsely claimed that shareholders did not have appraisal rights when those rights were clearly provided by Section 238(1) of the CICL, which states that stockholders do have appraisal rights.  Specifically, it states that "A member of a constituent company incorporated under this Act shall be entitled to payment of the fair value of that person's shares upon dissenting from a merger or consolidation."  No provision of the Companies Law states otherwise.  As the *Cayman Changyou Action* stated, "[t]he words Parliament has chosen to use in subsection 238(1) are, indeed, unqualified. . . .  [T]he subsection is not in terms limited to members who dissent from a long-form merger."  Ex. A at ¶ 41.

74.    Defendants' position in the 13E-3s is based on CICL § 238(2) and at **most** that section relates to the process to exercise those rights.  Notably, CICL § 238(2) itself refers to the rights provided by CICL § 238(1) as an "entitlement."   Even if Defendants had strong ground to stand on as to shareholders' pathway to exercising their rights, it was nevertheless false to assert that such rights did not exist.  As was recognized by the court in the *Cayman Changyou Action*, "section 239 of the Act sets out various provisions which limit the rights of dissenters, under the heading 'Limitation on the right of dissenters' . . . Significantly, subsection 239(1) does not seek to exclude from the scope of section 238 minority shareholders who dissent from a short-form merger."  Ex. A at ¶ 82

75.    A reasonable shareholder would be far more skeptical of Defendants' assertions regarding their inability to exercise those rights, if they were correctly told that they **do** have

20

appraisal rights.  Thus, without even reaching the issue of exercising those rights, it is clear that

Defendants' statements were materially false and misleading.

76.    **Second**, Defendants falsely stated that shareholders could not exercise appraisal

rights, when in fact they could.  In a detailed opinion firmly recognizing that shareholders in a

short-form merger can seek appraisal, the *Cayman Changyou Action* held (at page 70):

> **It would be absurd** to exclude a dissentient member of a company
> subject to a short-form merger from the protection of section 238
> simply because, unlike in the case of a long-form merger, that
> member is not allowed to vote. The need for protection is no less
> clear and so Parliament should not be taken as having intended such
> a consequence absent express words to that effect.

Ex. A at page 70 (emphasis added).[56]

77.    Defendants' position in the 13E-3s was always wrong and was never legally

colorable.  The position depended on construing the deadline in CICL § 238(2), which is tied to a

vote, as some sort of requirement that the shareholder can only dissent where there is a

shareholder vote.  This position was absurd because the existence of a deadline, triggered by a

certain event, poses no obstacle to acting if that event never occurs. The non-occurrence of an

event (the vote) that would otherwise trigger a condition precedent to the exercise of some

deadline, simply means that the deadline does not apply.  Here, the supposed absence of a vote

would simply mean the time requirement of providing written objection "before" the vote does

not apply.  It does not follow from this, that an "objection" filed at another time is untimely.[67]

78.    Defendants' position was also absurd because **if** one were to treat § 238(2) of the

Companies Law as a required period for action (rather than a deadline), it would then make far

---

[56] Defendants have sought to appeal the Cayman Action decision.

21

more sense to interpret the term "vote" broadly — to include the corporate act by the majority shareholder effectuating the "short-form" merger — than to read the statute as providing appraisal rights (under § 238(1) of the Companies Law), without providing a method to exercise those rights (under § 238(2) of the Companies Law).  Indeed, § 238(2) of the Companies Law does not even contain the word "stockholder" or "member" as a term limiting the word "vote." Rather, Defendants unilaterally read "stockholder" or "member" into that statutory provision and then falsely represented the law to investors.

79.    **Third**, even if Defendants could advance a colorable argument justifying their position that shareholders lacked appraisal rights, Defendants' statements in the 13E-3s would still be misleading because they represented what was — at best — an unsettled dispute as a black-and-white settled issue of law.  Put differently, the statement was materially incomplete for failing to disclose that it merely stated what was — at best — Defendants' position on an unsettled point of law.  Adequate disclosure would have meaningfully apprised shareholders of their appraisal rights and would have described the position of the parties to the transaction regarding those potential rights, as well as the basis for those positions.  Similarly, the 13E-3s did not even express who – *i.e.*, the Company or Sohu – took the aggressive position regarding these rights; instead the 13E-3s stated the lack of appraisal rights was a matter of settled law.

80.    **Fourth,** regardless of whether there was a colorable basis to choose to deny shareholders appraisal rights, Defendants misrepresented the situation by stating that the statute denied appraisal rights, when – at most – it was a decision by Changyou and Sohu to not inform investors of the method by which they could exercise appraisal.  Even if the statute in fact did not

---

[67] For the avoidance of doubt, even if there is no deadline whatsoever provided by 238(2), in cases where there is no vote, this would not imply that an indefinite period to object must be allowed.

provide a statutory process for appraisal, it **<u>certainly</u>** did not bar Changyou and Sohu from permitting appraisal, meaning that (again, at most) it was Defendants' choices that posed an obstacle to appraisal, not the law.  In addition to misleadingly attributing the supposed lack of appraisal rights to the statute, Defendants failed to describe the alternative rights that would have been available to investors as required by Item 1004(d) of Regulation M-A.

81.    Put differently, while (in fact) the right to exercise appraisal was a statutory right owed to investors that could not be withheld from them, even if one assumed under the statute that appraisal was not provided for by the statute, it would still be misleading to present the situation as Defendants did, *i.e.*, to claim appraisal was not available *because* of the CICL.  Even if the CICL did not require shareholders to be given appraisal rights, Defendants nevertheless could have chosen to do so.  It is perfectly ordinary to provide shareholders with rights beyond what statutes require in the context of a merger.  For example, companies may require a certain percentage of shareholders to approve a merger, even where that vote is more than what the relevant statute would require.  Even crediting Defendants' position about what rights CICL provided, it was still a *decision* to not agree to provide shareholders with appraisal rights, and it was misleading to not disclose this fact, and instead claim that the CICL barred appraisal.

82.    There was clear precedent at the time for permitting appraisal even in short-form mergers.  For example, in the privatization of Tsingda eEDU Corporation by short-form merger, the Schedule 13E-3 stated: "Holders of Ordinary Shares of TEC will not be entitled to vote their Ordinary Shares of TEC with respect to the Merger, but will be entitled to dissenters' rights in

---

There may be other limiting factors on the deadline to object, *e.g.*, laches.

23

accordance with Section 238 of the Cayman Companies Law."[78]  A description of those rights

was provided in a formal notice issued as part of the Tsingda eEDU Corporation transaction.

83.     Buried in an exhibit to the Changyou 13E-3s, § 2.08 of the Merger Agreement

stated as follows:

> No Dissenter's Rights.  Each of the Parties hereto acknowledges and agrees that, because no vote of the shareholders of the Company to approve this Agreement, the Plan of Merger, or the Merger is required and no such vote will be held, holders of the Shares, including Shares represented by ADSs, will not be able to exercise dissenters' rights under section 238 of the Companies Law.

84.     If CICL § 238 deprived shareholders of a procedural mechanism to exercise

appraisal rights (which it does not), then the Company would not have had to separately agree to

interpret that statute in such a way that it foreclosed shareholders of that procedural right.  In

reality, if shareholders lacked the ability to exercise appraisal rights (which they did not) this

would have been because Changyou and Sohu decided to deny shareholders appraisal, not

because the provisions of the CICL foreclosed those rights.

85.     **Fifth**, even assuming Defendants' false statements regarding appraisal rights were

literally true (which they were not), the disclosures were still materially misleading and

incomplete because the 13E-3 failed to adequately disclose "any other rights that may be

available to security holders under the law," as required by Item 1004(d) of Regulation M-A.  For

example, even if § 238(2) of the Companies Law did impede the exercise of appraisal rights

(which it did not), shareholders could have converted to record holder status and sought relief

from an appropriate court to otherwise protect themselves against an unfair merger, including by,

for example, (1) requesting the court enjoin the Merger as unfair, (2) bringing a suit for equitable

---

[78] Tsingda eEDU Corporation, Schedule 13E-3 (Jan. 24, 2013),

quasi-appraisal type remedies, or (3) bringing a suit requesting other relief that would provide a method of exercising the appraisal rights provided by § 238(1) of the Companies Law.

86.     **Finally**, adequate disclosures regarding appraisal rights are material to investors because those disclosures determine the options available to investors when considering those transactions.  Defendants' disclosures gave the misleading impression that investors' only option was to accept the Merger.  Further, the SEC itself has recognized appraisal rights and other remedies available to stockholders as *per se* material, requiring issuers to affirmatively disclose such rights or other remedies regardless of whether such rights or remedies are deemed "material" to the issuer.  *Compare* Item 1004(a)(2)(vii) of Reg. M-A (requiring disclosure of "[t]he federal income tax consequences of the transaction, **if material**") (emphasis added) *to* Item 1004(d) (requiring disclosure of appraisal rights or, if no such rights exist, a brief description of other rights available under the law, **without** any condition that such rights or remedies be "material"). 17 C.F.R. § 229.1004.

## VIII.   INAPPLICABILITY OF STATUTORY SAFE HARBOR

87.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false and misleading statements pleaded in this Complaint.  The safe harbor does not apply to statements made in the context of going private transactions.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false and misleading may be characterized as forward-looking, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in any purportedly forward-looking statements.  Further, to the extent that the statutory safe

https://www.sec.gov/Archives/edgar/data/1381790/000093041313000305/c72371_13sce3.htm.

25

harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Changyou, Sohu, Sohu Game, and/or Merger Co. who knew that the statement was false when made.

## IX.    TRANSACTION CAUSATION & RELIANCE

88.    As will be confirmed by testimony, Lead Plaintiff relied upon the 13E-3s, including the representations regarding the lack of appraisal rights, in deciding to sell its shares on the NASDAQ, in deciding to tender shares through the Merger, and in deciding to not seek appraisal.  Lead Plaintiff has sought appraisal in numerous other cases, including cases in the Cayman Islands.

89.    To the extent reliance would otherwise be an element of Lead Plaintiff's claims, the requirement to plead reliance is relieved because Defendants' issuance of the 13E-3s were an essential link in the completion of Merger and contained material misstatements and omissions, and therefore reliance need not be pleaded under *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 386 (1970), and the cases arising thereafter.

90.    To the extent reliance is an element of their claims, Lead Plaintiff and members of the Class are entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972), because Defendants omitted material information that they had a duty to disclose under the Exchange Act and regulations promulgated thereunder.

91.    To the extent reliance is an element of their claims, Lead Plaintiff and members of the Class are entitled to the presumption of reliance established by the fraud-on-the-market doctrine, in that:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    The misrepresentations and omissions were material;

(c)    The Company's stock traded in an efficient market;

(d)    The misrepresentations and omissions would tend to induce a reasonable shareholder to misjudge the value of the Company's securities;

(e)    Lead Plaintiff and other members of the Class sold Changyou securities at a time when Defendants misrepresented or failed to disclose material facts and before the time the true facts were known to the public, without knowledge of the misrepresented or omitted facts.

92.    At all relevant times, the market for Changyou securities was efficient for the following reasons, among others:

(a)    As a regulated issuer, Changyou filed periodic public reports with the SEC;

(b)    Changyou was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms and that were publicly available and entered into the marketplace; and

(c)    Changyou securities were actively traded in an efficient market, and traded on the NASDAQ Select Global Markets, under the ticker symbol "CYOU."

27

93.    As a result of the foregoing, the market for Changyou securities promptly digested current information regarding Changyou from all publicly available sources and reflected such information in Changyou's stock price.  Under these circumstances, all sellers of Changyou securities during the Class Period suffered similar injury through their sale of Changyou securities at artificially deflated prices and the presumption of reliance applies.

## X.    LOSS CAUSATION

94.    During the Class Period, as detailed herein, Defendants made false and misleading statements, violated their affirmative disclosure obligations, and engaged in a scheme to deceive the market and a course of conduct that artificially deflated the price of Changyou securities, artificially maintained the price of Changyou securities at low levels, and operated as a fraud or deceit on Class Period sellers of Changyou securities by misrepresenting the ability to assert appraisal rights.  As a result of their sales (including tendering) of Changyou securities during the Class Period, members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws.

95.    Lead Plaintiff and members of the Class suffered losses when they sold their Changyou securities for less than the fair value of those securities.  As a further result of Defendants' false and misleading statements in the 13E-3s, members of the Class were deceived into foregoing their appraisal rights or other rights under Cayman Islands law, which would have provided them with significantly greater value than provided by the Merger.  Accordingly, the deceptive 13E-3s were essential links in accomplishing the Merger and in inducing Lead Plaintiff and members of the Class to sell their Changyou securities for less than the fair value of those securities.

96.    The fair value of Changyou ADS exceeded both the market price and Merger price throughout the Class Period, as indicated by the following allegations:

28

97.      **First,** the Company almost **doubled** analyst expectations for earnings per share in 4Q19, generating $1.11 compared to expectations of $0.58.  This new information strongly supports the conclusion that Changyou ADS were worth more than the Merger price.

98.      **Second**, numerous aspects of Defendants' public disclosures understated Changyou's fair value.  As just one example, in both the discounted cash flow and comparable companies based analysis, Houlihan needed to add in the value of a piece of commercial real estate called the Wanda Plaza.  They correctly added in this property as an additional asset contributing to the value of the Company.  However, rather than making any effort to value Wanda Plaza, Houlihan merely relied on its "book value" of $25.8 million, which is an accounting entry based on the price Changyou paid for Wanda Plaza in 2009 ($33.4 million), and accounting entry depreciation.   In fact, in the over 12 years since Changyou bought the property, the value of commercial office space in Beijing has increased by about 300%, meaning a realistic estimate of the value of Wanda Plaza would be closer to $100 million.[89]  This alone meant that Changyou was worth about $74 million more than Defendants and Houlihan claimed, which is equal to $1.32 per share (assuming 56.1 million fully diluted shares) or $2.64 per ADS.  As a quick point of reference, adding that figure to the **bottom** of Houlihan's discounted cash flow valuation range would put the new bottom of the range at $12.08, which is 12% higher than the deal price of $10.80.

99.      **Third**, upon consultation with an expert on valuation, it is alleged that expert valuation would show the comparable companies valuation used by Houlihan understated

---

[89] *See* CEIC Data, Property Price: YTD Average: Beijing (last visited June 30, 2021), https://www.ceicdata.com/en/china/nbs-property-price-monthly/property-price-ytd-avg-beijing (indicating that average commercial real estate sale prices, as compiled by the Chinese National Bureau of Statistics, have tripled in value over the last ten years).

Changyou's true value.  Houlihan's analysis cherry-picked supposedly comparable companies and relied only on 5 companies, one of which earns the vast majority of its revenue in the Japanese market where video game sales have been facing a dramatic decline.  It also excluded obviously comparable companies like Giant Interactive, which Changyou expressly recognized as a major competitor in its prior public filings.  Using a more realistic set of comparable companies (specifically the list used by the service Capital IQ)[9][10] shows enterprise value to adjusted EBITDA ratios of 2.8x-44.1x, far higher than Houlihan's range.  Merely adjusting the valuation to use the median and mean of the ratios from the more realistic days set, indicates a valuation of $25.24 per ADS (median) and $38.26 per ADS (mean).

100.    **Fourth**, upon consultation with an expert on valuation, it is alleged that expert valuation could be used to show that the fair value of Changyou ADS as measured by a fair discounted cash flow valuation exceeded $10.80.  For example, the midpoint of Houlihan's valuation was $10.59, but that analysis used unreasonably low growth rates for Changyou and used an unreasonably high discount rate.  For example, Houlihan used a terminal growth rate of -5% to 5%, which is far below reasonable estimates given Changyou's business.  Defendants use a discount rate between 16% and 25%, which is unrealistically high given Changyou's

---

[9][10] The peer companies used in Capital IQ are the following: Yoozoo Interactive Co., Kunlun Tech Co., SciPlay Corporation, NetDragon Websoft Holding Limited, IGG inc, Giant Network Group Co., Rovio Entertainment Oyj, Zhejiang Century Huatong Group Co, Glu Mobile Ince, XD Inc. The only company that is included by both Houlihan Lokey and Capital IQ is IGG inc. and it has the smallest EV/EBITDA ratio of 2.8 among Capital IQ peer firms.  Notably, Houlihan itself cites Capital IQ as a data source, but Houlihan cherry-picked its own set of supposedly comparable companies.

below-market beta; Capital IQ estimates its weighted average cost of capital at a mere 10.4%.[10][11]

Making appropriate adjustments to these figures results in a far higher valuation.

101.    **Fifth,** on the day the Merger closed, Sohu's stock price went up by 25%.  This increase confirms that Sohu was getting a tremendously good deal in the acquisition, and that the true value of Changyou ADS was worth far more than what Sohu had paid for the Company.

## XI.    SCIENTER ALLEGATIONS

102.    The allegations in this Section are alleged solely for purposes of Counts I, II, and, to the extent applicable IV.  These allegations are expressly excluded from Count III.

103.    During the Class Period, as alleged herein, the Defendants acted with scienter in that they: (i) knew or were reckless in not knowing that the public documents and statements issued or disseminated in the name of the Company, Sohu, Sohu Game, and Merger Co. during the Class Period were materially false and misleading; (ii) knew or were reckless in not knowing that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance and dissemination of such statements or documents as primary violations of the federal securities laws.

104.    Defendants Sohu and Sohu Game both had a clear motive to execute the Merger at the lowest price possible, and to suppress dissent from shareholders—which would directly cost them money—or taking other action to block what was, for Defendants Sohu and Sohu Game, a highly lucrative merger.  Defendant Zhang and Defendant Lv both acted as agents of Sohu and Sohu Games and were therefore motivated to act in furtherance of the goals of Sohu and Sohu

---

[10][11] The discount rate is used to account for the time value of money, *i.e.*, that money earned in the future is less valuable than money earned today.  A low beta and low cost of capital result in a low discount rate and a higher valuation.

Games.  Each of these Defendants had substantial control over the contents of the 13E-3s as signatories of those documents and therefore had the opportunity to defraud investors.

105.    The Defendants acted with conscious disregard of the accuracy of their statements, as those statements were patently false or materially incomplete.  Defendants either did not take the steps necessary to obtain accurate information and therefore acted with conscious recklessness as to the accuracy of their statements, or affirmatively knew that their statements were false and misleading.

106.    Defendants directly knew that, at most, the statements in the 13E-3s reflected their own positions but the statements were nevertheless represented as fact.  Furthermore, Defendants knew that, to the extent there was any accuracy to their statements — that shareholders lacked a means to exercise appraisal rights — this was because of Defendants' own choices and agreements, and not because the CICL prohibited the exercise of such rights in short-form mergers.

107.    Defendant Changyou is imputed with the scienter of Defendant Zhang, as he was the Company's CEO.

108.    As set forth herein, the Individual Defendants—by virtue of their control over, receipt, and/or modification of Changyou's materially misleading statements and omissions, and/or their positions with the Company, Sohu, Sohu Game, and Merger Co. that made them beholden to (and clearly favor the interests of) Sohu, as the buyer of Changyou ADS, to accept an unfair and inadequate purchase price for their shares—participated in the fraudulent scheme alleged herein.

109.    Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on sellers of Changyou securities by disseminating materially

false and misleading statements and concealing material facts.  The scheme deceived the

investing public regarding the rights of shareholders and caused Lead Plaintiff and members of

the Class to sell Changyou securities at artificially deflated prices.

## XII.    CLASS ACTION ALLEGATIONS

110.    Plaintiff brings this action on its own behalf and as a class action pursuant to Rule

23 of the Federal Rules of Civil Procedure on behalf of: (a) all holders of Changyou ADS on April

23, 2020, and (b) all sellers of Changyou ADS during the period from February 14, 2020 through

April 23, 2020, inclusive (the "Class Period"), who were harmed by Defendants' actions

described herein (the "Class").

111.    Excluded from the Class are: Defendants (as defined herein); any officers or

directors of Defendants during the Class Period (the "Excluded D&Os"); members of the

immediate families of Defendants' and the Excluded D&Os; the subsidiaries and affiliates of the

Company, including the Company's employee retirement and benefit plan(s) and their

participants or beneficiaries, to the extent they made purchases through such plan(s); any entity in

which Defendants or the Excluded D&Os have or had a controlling interest; and the legal

representatives, heirs, successors, or assigns of any excluded person or entity.

112.    This action is properly maintainable as a class action for the following reasons:

(a)    the Class is so numerous that joinder of all members is impracticable.  As

of December 31, 2019, the end of Changyou's last fiscal year as a public company, there were

tens of millions of Changyou ADS outstanding, which had been offered from time to time since

Changyou's IPO;

(b)    the holders of these shares are believed to be geographically dispersed;

there are questions of law and fact which are common to the Class and which predominate over

questions affecting individual Class members.  The common questions include, *inter alia*, the

33

following: (i) whether Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; (ii) whether Defendants violated Section 13(e) of the Exchange Act and Rule 13e-3 promulgated thereunder; and (iii) whether Defendants violated Section 20(a) of the Exchange Act;

(c)    Lead Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately represent the interests of the Class;

(d)    Lead Plaintiff's claims are typical of the claims of the other members of the Class and Lead Plaintiff does not have any interests adverse to the Class; and

(e)    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class.

113.    Defendants have acted on grounds generally applicable to the Class with respect to matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## XIII.   COUNTS

### A.    COUNT I: Violation of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants Except Defendant Chen

114.    Lead Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

115.    This Count is asserted pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC against all Defendants except Defendant Chen.

116.    Defendants, individually and in concert, directly and indirectly, by the use of the means or instrumentalities of interstate commerce, the mails, and/or the facilities of national

securities exchanges, violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC.

117. Defendants made false and misleading statements of material facts, omitted to state material facts which they had an affirmative duty to disclose under the Exchange Act and rules promulgated thereunder, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Defendants made their false and misleading statements and omissions and engaged in the fraudulent activity described herein knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Lead Plaintiff and the other members of the Class.

118. In addition to making false and misleading statements and omissions, Defendants' course of conduct amounted to a manipulative scheme to defraud investors and a fraudulent device. Specifically, Defendants' denial of the existence of appraisal rights, while conducting a merger at unfairly low prices was aimed at defrauding investors and depriving them of the fair value of their shares.

119. Defendants intended to and did, as alleged herein, (i) deceive the investing public, including Lead Plaintiff and members of the Class; (ii) artificially deflated and artificially maintained the deflated price of Changyou ADSs; and (iii) caused Lead Plaintiff and members of the Class to sell Changyou ADSs at artificially deflated prices.

120. Defendants were individually and collectively responsible for making the false and misleading statements and omissions alleged herein and having engaged in a plan, scheme, and course of conduct designed to deceive Lead Plaintiff and members of the Class, by virtue of having made public statements and prepared, approved, signed, and/or disseminated documents

35

that contained untrue statements of material fact and/or omitted facts necessary to make the statements therein not misleading.

121.    In ignorance of the false and misleading nature of Defendants' statements and omissions, and relying directly or indirectly on those statements or upon the integrity of the market price for Changyou securities, Lead Plaintiff and the Class sold Changyou ADSs at artificially deflated prices during the Class Period.  But for the fraud, Lead Plaintiff and the Class would not have sold Changyou ADSs at such artificially deflated prices.  By selling Changyou ADSs at these artificially deflated prices, Lead Plaintiff and the Class suffered economic losses, which losses were a direct and proximate result of Defendants' fraudulent conduct.

122.    By virtue of the foregoing, Defendants are liable to Lead Plaintiff and the Class for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**B.    COUNT II: Violation of Section 13(e) of the Exchange Act and Rule 13e-3 Promulgated Thereunder Alleging Scienter, Against All Defendants Except Defendant Chen**

123.    Lead Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

124.    Defendants engaged in a going private transaction of Changyou, without meeting their disclosure obligations under Section 13(e), and Rule 13e-3.

125.    Section 13(e), and Rule 13e-3 promulgated thereunder require that material information about the transaction be filed with the SEC as described herein.  Defendants failed to file disclosures that met the requirements of those laws and regulations, as described herein.  The disclosure failures were material misstatements and omissions under Section 13(e) and Rule 13e-3.

126.    The 13E-3s were essential links in the completion of the Merger.

36

127.    In the exercise of reasonable care, Defendants should have known that the 13E-3s were materially misleading and omitted material facts that were necessary to render them not misleading.  Furthermore, Defendants acted with scienter.  Defrauding investors regarding the existence of appraisal rights permitted Sohu to wrongfully acquire Changyou at an unfairly low price, and Defendants knew their disclosures were misleading or recklessly disregarded this risk.

128.    The material misrepresentations and omissions in the 13E-3s were material to Lead Plaintiff and the Class, and Lead Plaintiff and the Class were deprived of the right to make fully informed decisions about the sale of their shares and about their rights as shareholders.

C.    **COUNT III: Violation of Section 13(e) of the Exchange Act and Rule 13e-3 Promulgated Thereunder Against All Defendants**

129.    Lead Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein, except paragraphs 102-109, *i.e.*, the entirety of Section 11.  This Count does not allege scienter and instead alleges that Defendants' failure to disclose accurate information violated § 13(e) regardless of Defendants' state of mind.  This Count should be treated as if pleaded in a separate complaint from the prior Counts.

130.    Defendants engaged in a going private transaction of Changyou, without meeting their disclosure obligations under Section 13(e), and Rule 13e-3 promulgated thereunder.

131.    Section 13(e), and Rule 13e-3 promulgated thereunder require that material information about the transaction be filed with the SEC as described herein.  Defendants failed to file disclosures that met the requirements of those laws and regulations, as described herein.  The disclosure failures were material misstatements and omissions under Section 13(e) and Rule 13e-3.

132.    The 13E-3s were essential links in the completion of the Merger.

37

133.     In the exercise of reasonable care, Defendants should have known that the 13E-3s were materially misleading and omitted material facts that were necessary to render them not misleading.

134.     The material misrepresentations and omissions in the 13E-3s were material to Lead Plaintiff and the Class, and Lead Plaintiff and the Class were deprived of the right to make fully informed decisions about the sale of their shares and about their rights as shareholders.

**D.     COUNT IV: Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

135.     Lead Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

136.     The Individual Defendants acted as controlling persons of Changyou, Sohu, and Sohu Game, and Merger Co. within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control public statements by and about Changyou, Sohu, and Sohu Game, and Merger Co., the Individual Defendants had the power to control the actions of those entities and their employees.

137.     As alleged herein, the Individual Defendants managed Changyou, Sohu, and Sohu Game, and Merger Co., and the wrongful conduct alleged herein—including the dissemination of false and misleading statements and omissions through formal corporate processes (such as SEC filings) directly involved the respective entities' senior management.  Due to their involvement in this wrongful conduct, the Individual Defendants were culpable participants in the wrongdoing and securities violations alleged herein.

138.     By reason of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act, and are liable to Lead Plaintiff and the Class for damages suffered in connection with their sale or exchange of Changyou securities during the Class Period.

38

## XIV.    **PRAYER FOR RELIEF**

139.    WHEREFORE, Lead Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiff ODS Capital LLC as Lead Plaintiff and certifying Lead Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure, and appointing Lead Plaintiff's counsel Labaton Sucharow LLP as Lead Counsel for the Class;

(b)    Determining and declaring that Defendants violated the Exchange Act by reason of the acts and omissions alleged herein;

(c)    Awarding Lead Plaintiff and the Class compensatory damages against all Defendants, jointly and severally, in an amount to be proven at trial together with interest thereon;

(d)    Awarding Lead Plaintiff and the Class reasonable costs and expenses incurred in this action, including but not limited to attorneys' fees and costs incurred by consulting and testifying expert witnesses; and

(e)    Granting such other and further relief as the Court deems just and proper.

DATED: July ~~13~~14, 2021                                        Respectfully submitted,

                                        **LABATON SUCHAROW LLP**

                                        */s/ Carol C. Villegas*
                                        Carol C. Villegas
                                        David J. Schwartz
                                        Jake Bissell-Linsk
                                        140 Broadway
                                        New York, New York 10005
                                        Telephone: (212) 907-0700
                                        Facsimile: (212) 818-0477
                                        Email: cvillegas@labaton.com
                                        Email: ~~dsewartz~~dschwartz@labaton.com
                                        Email: jbissell-linsk@labaton.com

                                        *Counsel for Lead Plaintiff ODS Capital*
                                        *LLC and Lead Counsel for the Class*

39

Document comparison by Workshare Compare on Monday, July 19, 2021 10:53:46 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\bisselj\Desktop\Changyou Amended Complaint (FILED).docx |
| Description | Changyou Amended Complaint (FILED) |
| Document 2 ID | file://C:\Users\bisselj\Desktop\Changyou Corrected Amended Complaint.docx |
| Description | Changyou Corrected Amended Complaint |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 31 |
| Deletions | 38 |
| Moved from | 3 |
| Moved to | 3 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 75 |