**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CHANGYOU.COM LIMITED SECURITIES LITIGATION | Case No. 1:21-cv-07858-GHW<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**LEAD PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF**
**PROPOSED CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.............................................................. 2

I.  Procedural History and Lead Plaintiff's Investigation........................................... 2

II.  Negotiation of the Settlement and the Terms of the Proposed Settlement ......................... 5

ARGUMENT ....................................................................................................................... 6

I.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED .................. 6

    A.  Standards for Preliminary Approval of a Proposed Class Action Settlement ................................................................................................... 6

    B.  Rule 23(e)(2)(A): Zealous Representation................................................. 8

    C.  Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel .................... 9

    D.  Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits ................................................................................................... 10

        1.  Despite Strong Claims, Many Risks to Recovery Remained ................... 10

        2.  The Effective Process for Distributing Relief to the Settlement Class.............................................................................................. 14

        3.  The Settlement Does Not Excessively Compensate Lead Counsel .......... 16

    E.  Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another.................................................................................................. 16

II.  PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS......................... 17

III.  THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED .......................... 23

IV.  PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS .......................... 26

CONCLUSION................................................................................................................... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
  271 F. App'x. 41 (2d Cir. 2008) ...................................................................................26

*In re Advanced Battery Techs. Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ...........................................................9, 10, 11, 24

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972).....................................................................................13, 22

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  293 F.R.D. 459 (S.D.N.Y. 2013) ....................................................................................7

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).......................................................................................22, 23

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  568 U.S. 455 (2013)...........................................................................................22

*Basic v. Levinson*,
  485 U.S. 224 (1988)....................................................................................13, 22

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006).............................................................................18

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
  Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)...................................................................................20

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 1:15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................13, 15

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) ...............................................................................7

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)...................................................................................18

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)....................................................................................8

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)..................................................................................20

*Edwards v. N. Am. Power & Gas, LLC,*
　No. 3:14-cv-01714 (VAB), 2018 WL 3715273 (D. Conn. Aug. 3, 2018)...............................24

*Erica P. John Fund, Inc.* v. *Halliburton Co.,*
　563 U.S. 804 (2011)..................................................................................................................22

*In re Globalstar Sec. Litig.,*
　No. 01-1748, 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) .......................................................19

*In re HealthSouth Corp. Sec. Litig.,*
　334 F. App'x. 248 (11th Cir. 2009) .............................................................................................6

*In re IMAX Sec. Litig.,*
　283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................................................18

*In re Initial Pub. Offering Sec. Litig.,*
　260 F.R.D. 81 (S.D.N.Y. 2009) .................................................................................................18

*In re Marsh & McLennan Cos., Sec. Litig.,*
　No. 04 civ 8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).............................................20

*McLaughlin v. IDT Energy,*
　No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627 (E.D.N.Y. July 30, 2018) ......................24

*In re Merrill Lynch Tyco Research Sec. Litig.,*
　249 F.R.D. 124 (S.D.N.Y. 2008) ...............................................................................................17

*In re MF Glob. Holdings Ltd. Inv. Litig.,*
　310 F.R.D. 230 (S.D.N.Y. 2015) ...............................................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.,*
　339 U.S. 306 (1950)...................................................................................................................24

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
　176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................................................9

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
　187 F.R.D. 465 (S.D.N.Y. 1998) ...............................................................................................10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
　330 F.R.D. 11 (E.D.N.Y. 2019)...................................................................................................8

*In re Pfizer Inc. Sec. Litig.,*
　282 F.R.D. 38 (S.D.N.Y. 2012) .................................................................................................19

*In re Polaroid ERISA Litig.,*
　240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................................................21

*In re PPDAI Grp. Inc. Sec. Litig.*,
   No. 18-cv-6716, 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022)................................................16

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)..........................................................................................21, 22

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)................................................................................................20

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) .......................................................................................18

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ 8331, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...........................................20

*Singh v. NYCTL 2009-A Tr.*,
   No. 14 CIV. 2558, 2016 WL 3962009 (S.D.N.Y. July 20, 2016) *aff'd,* 683 F.
   App'x. 76 (2d Cir. 2017) ....................................................................................................12

*Vaccaro v. New Source Energy Partners L.P.*,
   No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ...............................16

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05-MDL-01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)....................10, 20, 22

*In re Vivendi Univ.., S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................7, 24, 26

*Yang v. Focus Media Holding Ltd.*,
   No. 11-9051, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ...............................................6, 7

**Docketed Cases**

*DePalma v. Rent-A-Center, et al.*,
   No. 16-CV-00978, ECF No. 130 (E.D. Tex.).......................................................................15

*Haideri v. Jumei Int'l Holding Ltd., et al.*,
   20-cv-02751-EMC, ECF No. 110 (N.D. Cal. Sept. 14, 2021).................................................12

**Statutes**

15 U.S.C. § 78u-4(a)(4) .............................................................................................................16

15 U.S.C. §78u-4(a)(7)(A)-(F).....................................................................................................25

**Rules**

Fed. R. Civ. P. 23 .................................................................................................8, 25

Fed. R. Civ. P. 23(a) ...........................................................................................17, 18

Fed. R. Civ. P. 23(a)(2) ............................................................................................19

Fed. R. Civ. P. 23(a)(3) .......................................................................................19, 20

Fed. R. Civ. P. 23(a)(4) .............................................................................................20

Fed. R. Civ. P. 23(b)(3) ............................................................................17, 21, 22, 23

Fed. R. Civ. P. 23(b)(3)(D) .......................................................................................23

Fed. R. Civ. P. 23(c)(1)(C) .......................................................................................13

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................23

Fed. R. Civ. P. 23(e) ...............................................................................................1, 7

Fed. R. Civ. P. 23(e)(1)(B) ..........................................................................................7

Fed. R. Civ. P. 23(e)(2) .......................................................................................7, 8, 19

Fed. R. Civ. P. 23(e)(2)(A) ..........................................................................................8

Fed. R. Civ. P. 23(e)(2)(B) ..........................................................................................9

Fed. R. Civ. P. 23(e)(2)(C) ........................................................................................10

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................16

Fed. R. Civ. P. 23(e)(3) ...............................................................................................8

**Other Authority**

Manual for Complex Litigation (4th ed. 2004) ...........................................................6

William B. Rubenstein, Newberg on Class Actions (5th ed. 2015) .............................7

## PRELIMINARY STATEMENT

Court-appointed Lead Plaintiff ODS Capital LLC ("Lead Plaintiff"), on behalf of itself and all other members of the proposed Settlement Class,[1] submits this memorandum of law in support of its motion for preliminary approval of the proposed Settlement reached in the above-captioned class action (the "Action").  The Settlement would provide a recovery of $1,075,000 in cash and was entered into with defendants Changyou.com Limited ("Changyou" or the "Company"), Sohu.com Limited ("Sohu"), Sohu.com (Game) Limited ("Sohu Game"), Xiao Chen ("Chen"), and Joanna Lv ("Lv") (collectively, "Settling Defendants").[2]  The terms of the proposed Settlement are set forth in the Stipulation, which will resolve all claims in the Action and result in the dismissal, with prejudice, of the Action.

Lead Plaintiff respectfully submits that the Settlement warrants preliminary approval by the Court given that it is the result of thorough arm's-length negotiations by experienced counsel, represents a fair and adequate recovery that falls within the range of possible approval, and is likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent. Through the Court's grant of preliminary approval, Lead Plaintiff will be able to provide notice of the Settlement's terms and conditions to potential members of the Settlement Class.  A final approval hearing (the "Settlement Hearing") will then be conducted so that the Parties and Settlement Class Members may present arguments and evidence for (and against) the Settlement,

---

[1] All capitalized terms used in this memorandum that are not defined have the same meanings as in the Stipulation and Agreement of Settlement, dated as of March 28, 2022 (the "Stipulation").  The Stipulation is annexed as Exhibit 1 to the Declaration of Carol C. Villegas ("Villegas Decl."), filed herewith.

[2] Defendant Charles Zhang is not a party to the Settlement but he, together with Changyou Merger Co. and other related parties, is one of the Released Defendant Parties, as that term is defined in the Stipulation.

and the Court will then make a final determination as to whether the Settlement is fair, reasonable, and adequate. The Court will also be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement and to consider Lead Counsel's Fee and Expense Application.

The proposed Preliminary Approval Order, submitted herewith, has been negotiated by the Parties and will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) preliminarily certify the Settlement Class and appoint Lead Plaintiff as class representative and Lead Counsel as class counsel, for purposes of the Settlement only; (iii) approve the form and content of the Notice of Pendency, Proposed Settlement of Class Action, and Motion for Attorneys' Fees and Expenses ("Notice"), Proof of Claim and Release ("Claim Form"), Summary Notice, and Postcard Notice, attached as Exhibits 1, 2, 3 and 4 to the Preliminary Approval Order; (iv) find that the procedures for distribution of the Postcard Notice, Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses, including reimbursement to Lead Plaintiff pursuant to the PSLRA; and (vi) appoint Strategic Claims Services ("SCS"), which was selected after a competitive bidding process, to administer the notice and claims process.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History and Lead Plaintiff's Investigation

Changyou is an online game company primarily operating in China. *See* Complaint, ¶25, ECF No. 38. In 2009, Changyou conducted an initial public offering of ADSs in the United States.

2

*Id*. ¶35.  Sohu was Changyou's controlling shareholder throughout the Class Period. *Id*. ¶27.   In January 2020, Changyou, Sohu Game (a subsidiary of Sohu), and Changyou Merger Co. Limited, agreed to execute a going private transaction (the "Merger").  *Id*. at ¶¶42-50.  The transaction was structured as a "short form" merger, meaning that it did not require a vote of public shareholders. *Id*. at ¶43.  Through the transaction, Sohu would essentially buy each outstanding ADS for $10.80, resulting in Sohu owning the Company. *Id*. at ¶¶42-45.

Lead Plaintiff alleges, among other things, that the Rule 13e-3 Transaction Statement filed with the U.S. Securities and Exchange Commission ("SEC") and sent to ADS holders in connection with the transaction contained allegedly false and misleading statements regarding the unavailability of "dissenters'" or "appraisal" rights, and other potential rights, for dissenting shareholders in short-form mergers under the Cayman Islands Company Law and/or omitted material information rendering Defendants' statements false and misleading. *See generally*, Complaint ¶¶68-86.  Lead Plaintiff alleges that during the Class Period, Defendants' alleged wrongdoing artificially deflated the prices of Changyou ADSs, allegedly misled sellers of Changyou ADSs concerning their rights and, as a result of their sales (including tendering) of Changyou ADSs, members of the class allegedly suffered damages under the federal securities laws. *Id*. at ¶¶94-109.

On December 8, 2020, ODS Capital filed its initial securities class action complaint in the U.S. District Court, Eastern District of New York, styled *ODS Capital LLC v. Changyou.com Limited, et al.*, No. 1:20-cv-05973 (the "E.D.N.Y. Action"). The case was assigned to Hon. Kiyo A. Matsumoto. By Order dated April 14, 2021 (ECF No. 9), the Court appointed ODS Capital LLC as Lead Plaintiff and approved Labaton Sucharow LLP as Lead Counsel, pursuant to the PSLRA.

3

On July 2, 2021, Lead Plaintiff filed its Amended Complaint for Violations of the Federal Securities Laws (ECF No. 18) (the "Amended Complaint"), which dropped Changyou Merger Co. as a named defendant and asserted claims (1) against all Defendants, except Defendant Chen, under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder; (2) against all Defendants under Section 13(e) of the Exchange Act and Rule 13e-3 promulgated thereunder; and (3) against Defendants Chen, Zhang, and Lv under Section 20(a) of the Exchange Act.  Lead Plaintiff asserted such claims on behalf of a class of (a) all holders of Changyou ADSs on April 23, 2020, and (b) all sellers of Changyou ADS during the Class Period.

Prior to filing the Amended Complaint, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action.  This process included, among other things, analyzing:  (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses.  Lead Counsel, through an investigative firm, identified and interviewed numerous former Changyou employees in China and other persons with relevant knowledge of the underlying allegations.  Lead Counsel also consulted with an expert on damages and loss causation issues.

On August 9, 2021, Settling Defendants filed a pre-motion letter seeking to file a motion to dismiss (ECF No. 29), which Lead Plaintiff replied to (ECF No. 30).  Judge Matsumoto held a

pre-motion conference on September 2, 2021. During the conference, Judge Matsumoto raised concerns regarding the appropriateness of venue in the Eastern District of New York.

On September 17, 2021, the parties filed a stipulation agreeing to transfer the E.D.N.Y. Action to the Southern District of New York (ECF No. 32), a venue that was consented to in the public agreements relating to the ADSs. Judge Matsumoto so ordered the stipulation and transferred the case on September 18, 2021 (ECF No. 33).

On September 21, 2021, the Southern District of New York docketed the transferred case as *In re Changyou.com Limited Securities Litigation*, No. 1:21-cv-07858 (ECF No. 34) (the "S.D.N.Y. Action" and, together with the E.D.N.Y. Action, the "Action"), and the Honorable Gregory H. Woods was assigned to the case.

On October 8, 2021, Lead Plaintiff filed a Second Amended Complaint for Violations of the Federal Securities Laws (ECF No. 38) (the "Complaint"), which was substantially the same as the Amended Complaint, with minor changes to reflect the change in venue from the Eastern District of New York to the Southern District of New York. On October 29, 2021, Settling Defendants served a motion to dismiss the Complaint, which, pursuant to the Court's September 2, 2021 Minute Entry, was not filed on the docket.

## II.    Negotiation of the Settlement and the Terms of the Proposed Settlement

In October 2021, the Parties began discussing the possibility of reaching a negotiated settlement of the claims. After extended arm's-length discussions, the Parties reached an agreement in principle to settle the Action on November 24, 2021, subject to the execution of a "customary long form" stipulation and agreement of settlement and related papers.

The Parties subsequently entered into the Stipulation, which sets forth the final terms and conditions of the Settlement, including, among other things, a release of all claims asserted against

Defendants in the Action and related claims, "Released Claims," against all "Released Defendant Parties." Stipulation at ¶¶1(z) – (aa). Once the Settlement reaches its Effective Date, the Released Claims will be forever dismissed with prejudice. *Id*. ¶4. Upon the Effective Date of the Settlement, the Settling Defendants will also release any Released Defendants' Claims concerning the litigation and settlement of the Action against the Released Plaintiff Parties. *Id*. ¶5. The Parties also entered into a confidential Supplemental Agreement Regarding Requests for Exclusion, dated March 28, 2022, concerning the Settling Defendants' right to withdraw from the Settlement if a certain threshold of requests for exclusion is received. *Id*. ¶39.[3]

In exchange for the releases, within thirty calendar days of the later of entry of the Preliminary Approval Order or the provision of complete payment information, Changyou will pay, or cause the payment of, $1,075,000 for the benefit of the Settlement Class. *Id*. ¶6.

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

### A.    Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of litigation. *See Yang v. Focus Media Holding Ltd.,* No. 11-9051, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are 'mindful of "the strong judicial policy in favor of

---

[3] As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. *See, e.g., Manual for Complex Litigation*, §21.631 at 319 (4th ed. 2004) ("Opt-out agreements, in which a defendant conditions its agreement on a limit on the number or value of opt outs, that will vitiate a settlement might encourage third parties to solicit class members to opt out. A common practice is to receive information about such agreements in camera."); *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x. 248, 250 n.4 (11th Cir. 2009) ("The threshold number of opt outs required to trigger the blow provision is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out).

settlements[.]'""")[4] This is especially so in securities class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.' The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.,* 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.,* 293 F.R.D. 459, 464 (S.D.N.Y. 2013). District court review of a class action settlement proposal is a two-step process. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:12 (5th ed. 2015). The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class. *Id*. at §13:13.

Rule 23(e) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement, after considering the required factors enumerated in Rule 23(e)(2), and be able to certify the class. Rule 23(e)(1)(B). Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

(A)    class representatives and counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

---

[4] All internal quotations and citations are omitted, unless otherwise noted.

> (i)     the costs, risks, and delay of trial and appeal;
>
> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under Rule 23(e)(3); [5] and
>
> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6]  The Rule 23 amendment, which became effective in December 2018, has not changed the overall standard for approving a settlement, *i.e.* whether or not the settlement is fundamentally fair, adequate, and reasonable.  The proposed Settlement here satisfies all these factors and should be preliminarily approved.  *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

### B.     Rule 23(e)(2)(A): Zealous Representation

Lead Plaintiff and Lead Counsel have zealously prosecuted the Action on behalf of the class since its inception and will continue to do so throughout the administration of the Settlement to secure and deliver its benefits.  Lead Plaintiff has been an active and informed participant in the litigation by regularly communicating with Lead Counsel, evaluating the Settlement Class's and

---

[5] The Stipulation and Supplemental Agreement are the only agreements concerning the Settlement entered into by the Parties.

[6] In assessing these core factors at the final approval stage, the Court may also consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability and damages; (5) the risks of maintaining the class action through the trial; (6) the ability of the defendants to withstand a greater judgment; and (7) the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Settling Defendants' best arguments concerning liability and damages, consulting with Lead Counsel concerning the settlement negotiations, and approving the terms of the Settlement.

Likewise, Lead Counsel developed a thorough understanding of the facts of the case and merits of the claims through, among other things, analyzing: (i) documents filed publicly by the Company with the SEC; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning the Company and Defendants; (iii) research reports issued by financial analysts concerning the Company; (iv) other publicly available information and data concerning the Company; and (v) the applicable law governing the claims and potential defenses, including an analysis of the Settling Defendants' Motion to Dismiss. Lead Counsel, with the assistance of an investigative firm, identified and interviewed numerous former Changyou employees located in China and other persons with relevant knowledge of the underlying allegations. Lead Counsel also consulted with an expert on damages and loss causation issues. Lead Counsel evaluated the potential risks in the case and negotiated vigorously to secure the $1,075,000 million recovery.

Accordingly, the Settlement Class has been, and remains, well represented.

**C.     Rule 23(e)(2)(B): The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel**

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  A strong presumption of fairness attaches where a settlement is "reached by experienced counsel after arm's length negotiations." *In re Advanced Battery Techs. Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014).   The Settlement is entitled to this

presumption because it was achieved after thorough arm's-length negotiations between well-informed and experienced counsel—on both sides.[7]  *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts give "great weight … to the recommendations of counsel[.]").

Here, Lead Plaintiff is represented by an experienced and skilled firm in securities class litigation.  *See* Villegas Decl., Ex. 2.  Lead Counsel believes that the achieved Settlement is a favorable result for the Settlement Class given the attendant risks of ongoing litigation and recommends that the Settlement be preliminarily approved.  Lead Plaintiff and Lead Counsel only agreed to settle the claims after a rigorous factual and legal investigation.  The Settlement was also negotiated with the oversight of Lead Plaintiff, a sophisticated institutional investor, which recommends that the Settlement be approved.  *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-01695(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'").  Thus, the procedurally fair manner in which this Settlement was reached weighs strongly in favor of granting approval.

**D.** **Rule 23(e)(2)(C): The Settlement Provides Significant and Certain Benefits**

**1.** **Despite Strong Claims, Many Risks to Recovery Remained**

To determine whether a proposed Settlement is fair, reasonable, and adequate, courts balance the risks of continuing litigation against the benefits afforded to class members through settlement.  Although Lead Plaintiff and Lead Counsel believe the claims to be strong, they

---

[7] Settling Defendants are represented by Goulston & Storrs PC and Skadden, Arps, Slate, Meagher & Flom LLP.

acknowledge that defendants advance several substantial arguments concerning the pleading strictures of the PSLRA, liability, class certification, and damages. It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet." *In re Advanced Battery*, 298 F.R.D. at 177. Had the case not settled, Lead Plaintiff and the Settlement Class faced the prospect of dismissal outright in connection with the Settling Defendants' Motion to Dismiss and, if the claims survived that motion, years of additional and risky litigation involving contested certification of the class, completion of fact and expert discovery, complex dueling summary judgment motions, trial, and inevitable appeals.

**Risks to Surviving Settling Defendants' Motion to Dismiss:** In order for the Settlement Class to recover anything in the Action, Lead Plaintiff would need to overcome the pending Motion to Dismiss.[8] It is well-known that securities fraud claims are frequently dismissed under the "strong inference of scienter" standard established by the PSLRA. For example, according to the most recent analysis of securities class action settlements by NERA Economic Consulting, "[o]f the 239 cases resolved in 2021, 153 were dismissed and 86 resolved through a settlement. This is a decline in total dismissed cases and total resolutions relative to 2020.[9] Compared to 2020, there was an increase in both dismissed and settled non-merger-objection cases." *See* McIntosh J. & Starykh S., *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 1 & 11 (NERA January 25, 2022), Villegas Decl., Ex. 4. Moreover, "[f]or each filing year since 2015, more cases have been resolved in favor of the defendant than have been settled." *Id*. at 12.

---

[8] A copy of the Settling Defendants' Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint is submitted herewith as Exhibit 3 to the Villegas Declaration.

[9] NERA's totals include "merger-objection" cases as well as "non-merger-objection" cases.

Here, there was a significant risk of immediate dismissal.  In particular, after the filing of this Action, a decision was issued in a case analogous to the instant Action, which was adverse to Lead Plaintiff's claims, *Haideri v. Jumei Int'l Holding Ltd., et al.,* 20-cv-02751-EMC, ECF No. 110 (N.D. Cal. Sept. 14, 2021). *Jumei* involved allegations very similar to those here, namely that a Chinese-based Cayman incorporated company allegedly falsely stated, among other things, that minority shareholders did not have appraisal rights.  In response to defendants' motion to dismiss, the Northern District of California dismissed the claims for failure to adequately plead scienter and loss causation. While not controlling, the *Jumei* decision strongly weighed against Lead Plaintiff's prospects of success here.

**Risks to Proving Material Falsity:** Had the claims survived the Motion to Dismiss challenge, Settling Defendants would have vigorously contested Lead Plaintiff's ability to both plead and prove that the alleged misrepresentations and omissions were either material or false, couching the allegedly undisclosed truth as a matter of unsettled Cayman Islands law and a matter of first impression arising from a decision in *In the matter of Changyou.com Limited*, FSD 120 of 2020 (Jan. 28, 2021) (holding section 238 allows dissenting shareholders right of appraisal in short-form mergers) that has been appealed. *See also Singh v. NYCTL 2009-A Tr.*, No. 14 CIV. 2558, 2016 WL 3962009, at *7 (S.D.N.Y. July 20, 2016) *aff'd,* 683 F. App'x. 76 (2d Cir. 2017) (representations about the law are expressions of opinion and are generally not actionable in fraud even if false). Settling Defendants also likely would have sought to establish that defendants' assessment of appraisal rights under Cayman Islands law was a statement of opinion and not actionable absent an allegation that the defendants' belief was not sincerely held. Settling Defendants would have further argued that the alleged misstatements were legal opinions and immaterial as a matter of law.  How the Court, in connection with the Motion to Dismiss or a future

12

summary judgment motion, or a jury at trial would have viewed Settling Defendants' arguments was far from clear.

**Risks to Proving Scienter:** Lead Plaintiff would have also faced obstacles in pleading and proving that defendants acted with the required intent to defraud or severe recklessness necessary to establish defendants' scienter.  Defendants likely would have argued that even if the trier of fact found that defendants' alleged statements and/or omissions concerning the ADS's holders' rights to appraisal were false and misleading, the defendants did not believe this to be the case when they issued the Rule 13e-3 Transaction Statement and they believed the statements were appropriate given their understanding of the law.  Lead Plaintiff also faced the risk that the Court or a jury could find the evidence of defendants' motive and opportunity to commit fraud simply general economic self-interest that did not rise to the requisite level of scienter.

**Risks to Achieving and Maintaining Class Certification**:  Lead Plaintiff had not yet moved for class certification at the time the Settlement was reached.  However, Settling Defendants would have undoubtedly challenged certification with respect to reliance, arguing that Lead Plaintiff could not establish class wide reliance in connection with the allegedly false statements, because Lead Plaintiff would not be able to rely on the fraud-on-the market presumption set forth in *Basic v. Levinson*, 485 U.S. 224 (1988) based on the characteristics of the market for Changyou ADSs during the Class Period, or rely on *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) given a lack of alleged omissions. There was significant uncertainty with respect to how the Court would rule on these matters or whether certification would be maintained through a potential appeal and a trial.  The Court could have revisited certification at any time prior to judgment.  *See* Fed. R. Civ. P. 23(c)(1)(C) (authorizing a court to decertify a class at any time); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *13 (S.D.N.Y. Oct.

16, 2019) (this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits").

**Risks in Proving Loss Causation and Damages:** Even if the hurdles to establishing liability and maintaining class certification were overcome, Lead Plaintiff would have confronted significant challenges in proving loss causation and damages. Although Lead Plaintiff believed the evidence would establish that defendants' allegedly false denial of appraisal rights prevented class members from obtaining fair value for their shares, proving that the value of Changyou ADSs was higher than the prices class members received when they sold the ADSs, or that class members held ADSs to their detriment, would have been very difficult and complex, and would have been hotly contested by the Parties' respective experts. Although Lead Plaintiff was confident expert opinion and testimony would have supported its claims that the Company's fair value exceeded the prices members of the class sold their shares for during the Class Period, in connection with a summary judgment challenge and at trial, defendants would have put forth their own experts who would strenuously argue to the contrary. Ultimately, the fair value of the ADSs would have been the subject of a complex and widely divergent "battle of the experts" and up to a jury to decide with no certainty that Lead Plaintiff's experts would be credited over defendants'.

## 2. The Effective Process for Distributing Relief to the Settlement Class

The Settlement, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator. The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member will submit, either by mail or online using the Claims Administrator's website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other

14

things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶23. Lead Plaintiff's claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id*. at ¶28(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court for a determination. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶37) and the claims process is completed, Authorized Claimants will be issued payments. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. At this point, if there are unclaimed funds, such funds will be contributed to Consumer Federation of America, a non-sectarian, not-for-profit charitable organization serving the public interest, or such other non-sectarian, not-for-profit organization approved by the Court. *Id*. at ¶25.[10]

---

[10] Consumer Federation of America ("CFA") is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education before the judiciary, Congress, the White House, federal and state regulatory agencies, and state legislatures. *See generally* www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program that works nationwide to promote consumer-oriented policies that safeguard investors against fraud through: (i) the development of educational material for investors; (ii) drafting policies and legislation; (iii) and providing testimony and comments on legislation and regulations. *See* www.consumerfed.org/issues/ investor-protection. CFA has been approved as a *cy pres* beneficiary in numerous securities settlements, including *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-MLR (C.D. Cal.), *DePalma v. Rent-A-Center, et al.*, No. 16-CV-00978, ECF No. 130 (E.D. Tex.).

### 3.    The Settlement Does Not Excessively Compensate Lead Counsel

As an initial matter, the reasonableness of attorneys' fees will be decided by the Court after Lead Counsel files a motion for attorneys' fees and litigation expenses.  The Settlement does not contemplate any specific award.  Lead Counsel will be compensated out of the Settlement Fund, under the common fund doctrine, and will not be compensated by Settling Defendants.  In connection with Lead Counsel's Fee and Expense Application, Lead Counsel will seek no more than 30% of the Settlement Fund, an amount that is within the percentages that courts in the Second Circuit have approved in class actions with comparable recoveries.  *See, e.g., In re PPDAI Grp. Inc. Sec. Litig.,* No. 18-cv-6716, 2022 WL 198491, at \*22 (E.D.N.Y. Jan. 21, 2022) (awarding 33% of $9 million settlement); *Vaccaro v. New Source Energy Partners L.P.,* No. 15 CV 8954 (KMW), 2017 WL 6398636, at \*8 (S.D.N.Y. Dec. 14, 2017) (awarding 33.33% of $2.85 million settlement); *see also* Villegas Decl. Ex. 4 at 27 (Figure 25)(median attorneys' fee in settlements of less than $5 million from 2012 to 2021 was 30%).  Lead Counsel will also seek payment of litigation expenses incurred during the prosecution of the Action of no more than $60,000.

### E.    Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either the Lead Plaintiff or any segment of the Settlement Class.  Rather, all members of the Settlement Class, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[11]  The proposed Plan of Allocation, which is set forth in the

---

[11] Lead Plaintiff may seek reimbursement of its reasonable costs and expenses (including lost wages) directly related to its participation in the Action, pursuant to the PSLRA.  This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of a plaintiff's costs and expenses is explicitly contemplated, in addition to receiving a *pro rata* portion of the recovery).

Notice at pages 22 to 27, *see* Stipulation, Exhibit A-1, was prepared by Lead Counsel with the assistance of Lead Plaintiff's damages expert and is consistent with Lead Plaintiff's theories of damages in the case.  All class members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan.  Notice at ¶¶56-58. *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

## II.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS

Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of the Settlement only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class, which has been stipulated to by the Parties, is "(a) all holders of Changyou.com Limited ADSs on April 23, 2020 and (b) all persons and entities that sold (including by tendering) Changyou ADSs during the Class Period, who were allegedly harmed by Defendants' conduct."[12]  *See* Stipulation at ¶1(ss).

Courts within the Second Circuit have long acknowledged the propriety of certifying settlement classes.  "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by

---

[12] Excluded from the Settlement Class are: (i) Defendants; (ii) any officers or directors of Defendants during the Class Period (the "Excluded D&Os"); (iii) members of the immediate families of the Individual Defendants and of the Excluded D&Os; (iv) the subsidiaries and affiliates of the Company and any entity in which Defendants or the Excluded D&Os have or had a controlling interest; (v) the legal representatives, heirs, successors, or assigns of any excluded person or entity, in their capacities as such; and (vi) those who timely and validly request exclusion from the Settlement Class in accordance with the requirements set by the Court, or who are otherwise excluded by the Court.

relatively small claimants." *In re IMAX Sec. Litig.,* 283 F.R.D. 178, 186 (S.D.N.Y. 2012). For the following reasons, Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

### A.    The Settlement Class Meets the Requirements of Rule 23(a)

Pursuant to Rule 23(a), Lead Plaintiff must demonstrate: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The Settlement Class satisfies these requirements.

### 1.    Rule 23(a): Numerosity

Numerosity is presumed when a class includes 40 or more members. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995); *accord In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 90 (S.D.N.Y. 2009). Courts do not need a "precise quantification" to find numerosity, but only a "reasonabl[e] estimate [of] the number of class members" for which "the court may 'make some common sense assumptions' and 'rely on reasonable inferences drawn from the available facts.'" *Bourlas v. Davis Law Assocs.,* 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006) (alterations in original). Consequently, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.,* 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

Here, the Settlement Class satisfies numerosity as it undoubtedly consists of thousands of investors. During the Class Period, Changyou had tens of millions of ADSs outstanding, which traded on the NASDAQ, and the Company was followed by several securities analysts. *See*

Complaint ¶¶92, 112; *see also* Form 13e-3/A filed March 9, 2020, www.sec.gov (as of March 6, 2020, Changyou had approximately 19.1 million ADSs outstanding).  Accordingly, there are likely thousands of class members who sold or held Changyou shares making joinder impracticable.

### 2.      Rule 23(a)(2): Questions of Law or Fact Are Common

Courts consistently find that securities fraud cases alleging that "putative class members have been injured by similar material misrepresentations and omissions" satisfy commonality. *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also*, *In re Globalstar Sec. Litig.*, No. 01-1748, 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues.").  "[C]ommonality requires that 'there are questions of law or fact common to the class. . . .' Not every 'issue must be identical as to each [class] member, but… plaintiff [must] identify some unifying thread...[.]" *In re Vivendi Universal., S.A. Sec. Litig.,* 242 F.R.D. 76, 84 (S.D.N.Y. 2007).

Here, the allegations present several questions of law and fact common to all members of the Settlement Class, including: a) whether Defendants' alleged conduct violated the federal securities laws; b) whether the Defendants' public statements during the Class Period contained material misstatements or omissions; c) whether Defendants acted with scienter; and d) whether the members of the class sustained damages as a result of the conduct complained of and, if so, the proper measure of damages. Courts in this district have routinely found that the above types of questions satisfy Rule 23(a)(2). *See, e.g., In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015).

### 3.      Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

The requirement of Rule 23(a)(3) that the claims of the class representative be "typical" of the claims of the class is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). "Typical" does not mean "identical." *In re Marsh & McLennan Cos., Sec. Litig.*, No. 04 civ 8144, 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009). The critical question is whether the proposed class representative and the class can point to a common "course of conduct" by defendants to support a claim for relief. *Id.*; *see also Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, the same conduct by Defendants allegedly injured both Lead Plaintiff and the other class members. The same legal theories apply equally to both. Thus, Lead Plaintiff "[has] the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions," satisfying the typicality requirement. *Veeco*, 235 F.R.D. at 238.

### 4.    Rule 23(a)(4): Lead Plaintiff Is Adequate

In determining whether "the representative parties will fairly and adequately protect the interests of the class," pursuant to Rule 23(a)(4), courts consider: (i) whether the interests of the proposed class representatives are antagonistic to those of other class members; and (ii) whether their counsel are qualified, experienced, and generally able to conduct the litigation. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ 8331, 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014).

20

Lead Plaintiff satisfies both.  First, no antagonism of interests exists between Lead Plaintiff and the proposed Settlement Class. All Settlement Class Members, including Lead Plaintiff, owned the Company's ADSs during the Class Period and either held them on April 23, 2020 or sold them during the Class Period, and the value of those ADSs was allegedly damaged by the Defendants' securities laws violations. Thus, the claims of the Settlement Class and Lead Plaintiff would prevail or fail in unison, and the common objective of maximizing recovery aligns the interests of Lead Plaintiff and all members of the Settlement Class. *See*, *e.g.*, *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members." (citing *Drexel*, 960 F.2d at 291)).

Second, Lead Plaintiff has retained qualified counsel.  Lead Counsel is amply qualified and experienced and has conducted the Action effectively on behalf of Lead Plaintiff and the Settlement Class. *See* Ex. 2, firm resume of Labaton Sucharow.

**B.**     **The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class meets this standard.

**1.**     **Common Legal and Factual Questions Predominate**

Rule 23(b)(3) does not require "an absence of individual issues," but instead that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon*

*Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). In making this determination, "a court's inquiry is directed toward whether the issue of liability is common to the members of the class." *Veeco*, 235 F.R.D. at 240. The Supreme Court has stated that this requirement is "readily met in certain cases alleging . . . securities fraud." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

Here, common questions of law and fact predominate over individual questions because Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (*i.e.*, through public statements made to the market and documents publicly filed with the SEC). Materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," thus "can be proved through evidence common to the class" and "is a common question for purposes of Rule 23(b)(3)." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 467 (2013). The same is the case for loss causation, scienter, and falsity. *Erica P. John Fund, Inc.* v. *Halliburton Co.*, 563 U.S. 804, 812 (2011) ("*Halliburton I*") (loss causation "requires a plaintiff to show that a misrepresentation that affected the integrity of the market price also caused a subsequent economic loss," but need not be shown at the class certification stage).

Lead Plaintiff contends that reliance is established in this Action through the application of the "fraud-on-the-market" presumption of reliance detailed in *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) or under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Application of *Basic* or *Affiliated Ute* dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions. *See Basic,* 485 U.S. at 241-42.

### 2.    A Class Action Is Superior to Other Methods of Adjudication

22

Rule 23(b)(3) sets the following non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Each of the applicable factors supports certification here.[13]  With respect to the first two factors, there is no evidence that numerous putative class members desire to bring separate individual actions. With respect to the third factor, Changyou's ADSs traded on the NASDAQ, which is located in this district, and many of the alleged acts occurred in this district.  Finally, without the settlement class device, Settling Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to settle. Certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of implementing the proposed Settlement.

## III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Postcard Notice, long-form Notice and Summary Notice, attached as Exhibits 1, 3, and 4 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA.  Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action

---

[13] Since Lead Plaintiff requests class certification only for purposes of the Settlement, the Court need not inquire as to Rule 23(b)(3)(D) management factor. *See Amchem*, 521 U.S. at 620.

and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.* 396 F.3d at 114.

The proposed notice program includes individual notification by mail in the form of the Postcard Notice in order to save costs, publication of the Summary Notice in a national newspaper focusing on investors, dissemination over the internet using a wire service, and posting of the long-form Notice on the Claims Administrator's website, from which copies of the Notice and Claim Form can be downloaded and claims can be completed using an online portal. The Claims Administrator will also mail the Notice and Claim Form upon request. The Postcard Notice will provide important information regarding the Settlement and the rights of Settlement Class Members in connection therewith, and will direct recipients to the website for more detailed information. Courts regularly allow notice by postcard. *See, e.g., McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *9 (E.D.N.Y. July 30, 2018) (approving "short-form notice to the proposed settlement class sent as a postcard and a long-form notice distributed via the Internet"); *see also Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-cv-01714 (VAB), 2018 WL 3715273, at *5 (D. Conn. Aug. 3, 2018) (approving notice by postcard, which directed settlement class members to settlement website). Individual notice via the Postcard Notice, as opposed to mailing the long-form Notice and Claim Form, will provide a substantial savings for the Settlement Class. *See In re Advanced Battery*, 298 F.R.D. at 182-83 (approving postcard notice, which directed class members to a website that contained the long notice, in part, because a postcard notice helps to "minimize notice costs").

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the

Settlement and the recovery; (ii) the reasons for the Settlement; (iii) the maximum attorneys' fees and expenses that may be sought; (iv) the procedures for requesting exclusion from the Settlement Class and objecting; (v) the procedures for submitting a claim; (vi) the proposed Plan of Allocation for distributing the settlement proceeds to the Settlement Class; and (vii) the date, time and place of the Settlement Hearing (which can be held in-person or remotely, in the Court's discretion). The Notice also satisfies the PSLRA's separate requirements by, *inter alia,* stating*:* (i) the amount of the Settlement determined in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Lead Counsel intends to make an application for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) the names, telephone numbers, and addresses of Lead Counsel; and (v) the reasons why the Parties are proposing the Settlement.  15 U.S.C. §78u-4(a)(7)(A)-(F).

Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Postcard Notice to all Settlement Class Members who can be identified and located through reasonable effort, using investor information provided by the Company, as well as information provided by third-party banks, brokers, and other nominees about their customers who may be eligible. Lead Counsel will also cause the Summary Notice to be published in *Investor's Business Daily* and to be transmitted across the internet using a wire service.  In addition, the Notice and Claim Form will be available for viewing and downloading on the Claims Administrator's and Lead Counsel's websites.  Claims may also be submitted online using the Claims Administrator's website.  The manner of providing notice, *i.e.*, individual notice by mail supplemented by additional publication and internet notice, represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See, e.g.*,

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x. 41, 44 (2d Cir. 2008) (notice satisfied due process where notice was "provided through individually mailed notice to all known and reasonably identifiable class members, publication in several newspapers, and entered on the district court's docket sheet"); *Wal-Mart Stores,* 396 F.3d at 106, 114-16 (affirming reasonableness of notice mailed to class members and published in widely-distributed publications).

Lead Plaintiff also requests that the Court appoint SCS as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. SCS is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements. *See* Villegas Decl. Ex. 5; *see also* www.strategicclaims.net. SCS was chosen after a competitive bidding process. Its fees and expenses, payable from the Settlement Fund, will be based primarily on the number of notices mailed and claims processed.

## IV. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Lead Plaintiff requests be approximately 100 days from entry of the Preliminary Approval Order.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (the "Notice Date") | *No later than 10 business days after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing.* |

26

| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
|---|---|
| Deadline for filing reply papers | *No later than 7 calendar days before the Settlement Hearing.* |
| Deadline for submitting Claim Forms | *Five calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's convenience, approximately 100 days from entry of the Preliminary Approval Order.  The hearing can be held either in-person or remotely, in the discretion of the Court.  Any scheduling updates will be posted on the Claims Administrator's website and Lead Counsel's website.* |

## CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to the Settlement Class; (iii) appoint Strategic Claims Services as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

Dated: March 29, 2022

Respectfully submitted,

**LABATON SUCHAROW LLP**

 */s/ Carol C. Villegas*
Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700

Facsimile: (212) 818-0477
Emails: cvillegas@labaton.com
      dschwartz@labaton.com
      jbissell-linsk@labaton.com

*Counsel for ODS Capital LLC. and the*
*Proposed Settlement Class*

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

/s/ *Carol C. Villegas*
CAROL C. VILLEGAS