# Exhibit 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE CHANGYOU.COM LIMITED
SECURITIES LITIGATION

Civil Action No. 1:21-cv-07858-GHW

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**
**BY DEFENDANTS CHANGYOU.COM LIMITED, SOHU.COM LIMITED,**
**SOHU.COM (GAME) LIMITED, JOANNA LV, AND XIAO CHEN**

**GOULSTON & STORRS PC**

Nicholas Cutaia
885 Third Avenue
New York, NY 10022

Richard Rosensweig (admitted *pro hac vice*)
Abigail Fletes (admitted *pro hac vice*)
400 Atlantic Avenue
Boston, MA 02110

*Attorneys for Defendants Changyou.com*
*Limited, Sohu.com Limited, Sohu.com*
*(Game) Limited, and Joanna Lv*

**SKADDEN, ARPS, SLATE,**
  **MEAGHER & FLOM LLP**

Robert A. Fumerton
Scott D. Musoff
Michael C. Griffin
One Manhattan West
New York, NY 10001

*Attorneys for Defendant Xiao Chen*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 4

I.      THE RELEVANT ENTITIES ............................................................................. 4

II.     THE MERGER ..................................................................................................... 5

III.    THE 13E-3s .......................................................................................................... 7

IV.     THE APPRAISAL RIGHTS LITIGATION IN THE CAYMAN ISLANDS .................... 8

ARGUMENT ..................................................................................................................... 9

I.      THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF SECTION
        10(b) OF THE EXCHANGE ACT AND RULE 10b-5 ...................................... 10

        A.      The Challenged Statements in the 13E-3s Are Not Actionable. ........................... 10

                1.      Defendants' Statements Were Not False When Made. ............................. 10

                2.      The Challenged Statements Are Non-Actionable Opinions
                        Interpreting the Law. .............................................................................. 12

                3.      Plaintiff Fails to Plead Any Actionable Omissions. ................................ 15

        B.      Plaintiff's Conclusory Allegations Fail to
                Establish a Strong Inference of Scienter. ............................................................. 16

                1.      Plaintiff Fails to Allege Intentional or Reckless Misconduct. .................. 17

                2.      Defendants Did Not Have "Motive and Opportunity to Commit
                        Fraud." ................................................................................................... 18

        C.      Plaintiff Is Not Entitled to Presumption of Reliance and Fails to
                Adequately Plead Actual Reliance. ...................................................................... 19

                1.      Plaintiff Is Not Entitled to Presumption of Reliance Based on the
                        *Mills* and *Affiliated Ute* Principle. ........................................................ 19

                2.      Plaintiff Is Not Entitled to Presumption of Reliance Under the
                        Fraud on the Market Theory. .................................................................. 20

                3.      Plaintiff Fails to Plead Reasonable Reliance on Alleged
                        Misrepresentations. ................................................................................ 22

        D.      Plaintiff Fails to Adequately Plead Economic Loss and Loss Causation. ............ 23

i

II.      COUNTS II AND III FAIL AS A MATTER OF LAW BECAUSE
         THERE IS NO PRIVATE RIGHT OF ACTION UNDER
         SECTION 13(e) OF THE EXCHANGE ACT. .................................................................. 24

III.     COUNT IV FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF
         FAILED TO ALLEGE AN UNDERLYING VIOLATION
         OF THE EXCHANGE ACT.............................................................................................. 25

CONCLUSION................................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
 406 U.S. 128 (1972).................................................................................................... 3, 19

*Altimeo Asset Mgmt. v. Qihoo 360 Technology Co., Ltd*,
 No. 19 CIV. 10067 (PAE), 2020 WL 4734989 (S.D.N.Y. Aug. 14, 2020)...................... 4, 9, 16

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)........................................................................................................ 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
 493 F.3d 87 (2d Cir. 2007) ........................................................................... 10, 11, 25

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988)........................................................................................................ 16

*Bay Harbour Mgmt. LLC v. Carothers*,
 282 F. App'x 71 (2d Cir. 2008) ...................................................................... 16, 18

*Bell Atl. Corp. v. Twombly*,
 50 U.S. 544 (2007)........................................................................................................ 9, 10

*Berg v. First Am. Bankshares, Inc.*,
 Civ. A. No. 83-3887, 1985 WL 2232 (D.D.C. Apr. 17, 1985) .................................. 24

*Bolton v. Gramlich*,
 540 F. Supp. 822 (S.D.N.Y. 1982) .............................................................................. 24

*Boylan v. Sogou, Inc.*,
 No. 21 CIV. 2041 (PGG), 2021 WL 4198254  (S.D.N.Y. Sept. 13, 2021) .................... 4, 24, 25

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*,
 496 F. Supp. 3d 952 (E.D. Va. 2020) ......................................................................... 13

*Carolina Cas. Ins. Co. v. Cap. Trucking, Inc.*,
 No. 18 CIV. 10871 (PED), 2021 WL 848064  (S.D.N.Y. Mar. 5, 2021) ................................ 13

*Diebold Nixdorf, Inc., Sec. Litig.*,
 No. 19-CV-6180 (LAP), 2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021)................................ 11

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
 553 F.3d 187 (2d Cir. 2009) ........................................................................................ 18

*Fasano v. Juoqing Li*,
 16 cv-8759 (KPF), 2017 WL 6764692 (S.D.N.Y. Dec. 29, 2017) ......................................... 24

*Goldsmith v. Weibo Corp.*,
 No. CV 17-4728 (SRC), 2018 WL 2733694 (D.N.J. June 7, 2018)......................................... 12

*Haideri v. Jumei Int'l Holding Ltd.*,
 No. 20-CV-02751-EMC, 2021 WL 4170791 (N.D. Cal. Sept. 14, 2021)...................... 3, 17, 23

*Jiajia Luo v. Sogou, Inc.*,
 465 F. Supp. 3d 393 (S.D.N.Y. 2020) ........................................................................ 11

*Kalmanovitz v. G. Heileman Brewing Co.*,
  595 F. Supp. 1385 (D. Del. 1984) ................................................................................. 25

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ................................................................................. 18, 19

*Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014) ............................................................................ 11

*Miller v. Yokohama Tire Corp.*,
  358 F.3d 616 (9th Cir. 2004) ...................................................................................... 13

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970) ............................................................................................... 3, 19

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ....................................................................................... 11

*ODS Capital LLC v. JA Solar Holdings Co., Ltd.*,
  No. 18-CV-12083 (ALC), 2020 WL 7028639 (S.D.N.Y. Nov. 30, 2020) ....................... passim

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) .................................................................................................. 13

*Phillips v. LCI Int'l, Inc.*,
  190 F.3d 609 (4th Cir. 1999) ...................................................................................... 18

*Piper v. Chris-Craft Indus., Inc.*,
  430 U.S. 1 (1977) ...................................................................................................... 19

*Podany v. Robertson Stephens, Inc.*,
  318 F. Supp. 2d 146 (S.D.N.Y. 2004) .......................................................................... 14

*Progress Energy, Inc.*,
  371 F. Supp. 2d 548 (S.D.N.Y. 2005) .......................................................................... 16

*ProShares Trust Sec. Litig.*,
  728 F.3d 96 (2d Cir. 2013) ......................................................................................... 16

*Seibert v. Sperry Rand Corp.*
  586 F.2d 949, 952 (2d Cir. 1978) ................................................................................ 16

*Shanda Games Limited Securities Litigation*,
  No. 1:18-CV-02463 (ALC), 2019 WL 11027710 (S.D.N.Y. Sep. 30, 2019) .............. 19, 20, 22

*Shanda Games Limited Securities Litigation*,
  No. 1:18-CV-02463 (ALC), 2020 WL 5813769 (S.D.N.Y. Sep. 30, 2020) .......................... 21

*Shemian v. Rsch. In Motion Ltd.*,
  No. 11 CIV. 4068 RJS, 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013) ............................ 11, 15

*Singh v. NYCTL 2009-A Trust*,
  No. 14 CIV. 2558, 2016 WL 3962009 (S.D.N.Y. July 20, 2016) ......................................... 12

*Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*,
  412 F.3d 103 (2d Cir. 2005) .............................................................................. 19, 20, 22

iv

*Steginsky v. Xcelera, Inc.*,
  No. 3:12-CV-188 SRU, 2015 WL 1036985 (D. Conn. Mar. 10, 2015) ................................... 19

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) ........................................................................................ 13, 14, 15

*Uniti Grp., Inc. Sec. Litig.*,
  No. 4:19-CV-00756-BSM, 2021 WL 1238889 (E.D. Ark. Mar. 31, 2021) ............................. 13

*Waggoner v. Barclays PLC*,
  875 F.3d 79 (2d Cir. 2017) ............................................................................................... 20

**Rules**

17 C.F.R. § 229.1004(d) ......................................................................................................... 13

Fed. R. Civ. P. 9(b) ........................................................................................................... 1, 10

15 U.S.C. § 78u-4(b).................................................................................................... 1, 10, 16

Defendants[1] respectfully submit this Memorandum of Law in support of their joint Motion to Dismiss the Second Amended Complaint dated October 8, 2021, ECF No. 38 ("Complaint" or "Compl.") pursuant to Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6) and Section 101(b) of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) ("PSLRA").

## PRELIMINARY STATEMENT

Plaintiff ODS Capital LLC ("Plaintiff") alleges that two Transaction Statements filed with the Securities and Exchange Commission ("SEC") on Form Rule 13E-3 (the "13E-3s"),[2] one of which was sent to holders of Changyou's American depository shares ("ADSs") in connection with a short-form, going-private merger ("Merger"), contained false, misleading and incomplete statements in violation of Section 10(b) of Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder ("Rule 10b-5") (Count I), Section 13(e) of the Exchange Act and Rule 13e-3 promulgated thereunder (Counts II and III), and Section 20(a) of the Exchange Act (Count IV).

Plaintiff claims there were two purported deficiencies in the 13E-3s: (1) Defendants allegedly misrepresented appraisal rights for dissenting shareholders in short-form mergers under Section 238 of Cayman Islands Companies Law ("CICL"), and (2) Defendants allegedly omitted information as to other rights that may have been available to ADS holders under Cayman law. Plaintiff's allegations do not withstand the stringent pleading requirements of the PSLRA and are insufficient to support a claim.

As to its Section 10(b) and Rule 10b-5 claim, Plaintiff fails to adequately allege any of

---

[1] This Motion to Dismiss is filed jointly on behalf of defendants Changyou.com Limited ("Changyou"), Sohu.com Limited ("Sohu"), Sohu.com (Game) Limited ("Sohu Game"), Joanna Lv, and Xiao Chen (collectively, "Defendants"). Defendant Charles Zhang has not yet been served.

[2] The Complaint refers to the February 19, 2020 13E-3 and to the March 9, 2020 amendment, which was sent to ADS holders as the "13E-3s." Compl., ¶ 53. The amended 13E-3 updated certain disclosures, but made identical statements regarding the availability of appraisal rights. *Id.* The 13E-3s are attached to the Declaration of Nicholas Cutaia filed in support of this Motion ("Cutaia Decl.") as Exs. 1 and 2.

the requisite elements.

First, Plaintiff does not allege facts showing that any of the challenged statements or alleged omissions were false or misleading when made. Instead, Plaintiff relies on a single decision of first impression issued by a Cayman Islands trial court *11 months after* the amended 13E-3 was filed, which is the subject of an appeal and has been stayed. Compl., ¶¶ 73-76; *see infra*, Section IV. That decision found that even though the CICL on its face did not provide a procedural mechanism for exercising appraisal rights for short form mergers, this was an "accidental oversight" by drafters and appraisal rights exist. It is well-established that the securities laws do not impose a duty on corporate officials to be clairvoyant. It is absurd to suggest that Defendants could have predicted that, nearly a year after the filing of the amended 13E-3, a Cayman Islands trial court would read new language into the CICL that adopted a different interpretation. *See infra*, Section I.A.1. Furthermore, even if Defendants could be liable for this lack of clairvoyance (and they cannot), Defendants' interpretation of Cayman law are opinion statements and therefore are not actionable as securities fraud absent special circumstances, which Plaintiff does not allege. *See infra*, Section I.A.2. As to Plaintiff's omission allegations about an alleged failure to identify "other rights" under Item 1004(d) of Regulation M-A, Plaintiff does not identify any other established rights that *were* available to shareholders in connection with the Merger. Plaintiff merely identifies remedies such as petitioning the court for equitable relief, without establishing on what basis such relief could be granted. Compl., ¶¶ 80, 85-86; *see infra*, Section I.A.3.

Second, Plaintiff fails to allege with particularity facts giving rise to a strong inference of scienter. Plaintiff's reliance on a later Cayman Islands trial court decision of first impression fails to create any inference, let alone a strong one, that Defendants intentionally misrepresented Cayman law in the 13E-3s. Indeed, the Northern District of California recently found that *the*

2

*same allegations Plaintiff asserts here* (i.e. that a later Cayman Islands decision rendered earlier statements about lack of dissenters' rights in short-form mergers misleading) were insufficient to establish scienter. *Haideri v. Jumei Int'l Holding Ltd.*, No. 20-CV-02751-EMC, 2021 WL 4170791, at *19 (N.D. Cal. Sept. 14, 2021) ("*Haideri*"); *see infra*, Section I.B.1. Further, Plaintiff does not plead scienter with its conclusory allegations regarding Defendants' motive and opportunity to commit fraud because Plaintiff has not alleged that Defendants stood to gain a concrete, personal benefit by their alleged misrepresentations. *See infra*, Section I.B.2.

Third, Plaintiff fails to adequately allege either an applicable presumption of reliance or actual reliance. Plaintiff invokes the presumption of reliance principle in *Mills* and *Affiliated Ute* (Compl., ¶¶ 89-90), but this principle is applicable only where a plaintiff alleges *primarily* omissions claims, which is not the case here. *See infra*, Section I.C.1. Plaintiff's attempt to plead presumption of reliance through fraud on the market (Compl., ¶¶ 91-93) likewise fails because the compulsory sale of shares through a merger does not constitute an efficient market, and Plaintiff fails to adequately allege otherwise. *See infra*, Section I.C.2. With respect to actual reliance, Plaintiff's contradictory allegations that it relied on Defendants' alleged misstatements in *both* selling ADSs prior to the Merger, and in holding other ADSs until the Merger, fail to plausibly allege *any* reasonable reliance by Plaintiff. *See infra*, Section I.C.3.

Fourth, Plaintiff does not sufficiently allege actual damages or loss causation because the price of ADSs *increased* during the Class Period. Plaintiff's conclusory allegation that it would have received a greater value for shares if it had exercised a right of appraisal (Compl., ¶ 95) is speculative and cannot support a claim of securities fraud. *Haideri* firmly rejected the same loss causation arguments Plaintiff attempts to raise here. *See infra*, Section I.D.

Plaintiff's Section 13(e) and Rule 13e-3 claims must also be dismissed as a matter of law because there is no private right of action under Section 13(e). In a careful analysis of this issue

last month, Judge Gardephe rejected a claim that Section 13(e) provides an implied right of action for aggrieved shareholders. *See Boylan v. Sogou, Inc.*, No. 21 CIV. 2041 (PGG), 2021 WL 4198254, at *13 (S.D.N.Y. Sept. 13, 2021). Even if there were a private right of action, Plaintiff's Section 13(e) claims would still fail as they are predicated on the same allegations as its Section 10(b) and Rule 10b-5 claim and suffer the same fatal flaws. *See infra*, Section II.

Lastly, Plaintiff's Section 20(a) claim fails as a matter of law because Plaintiff does not adequately allege an underlying primary breach of the securities laws and Defendants' culpable participation. *See infra*, Section III.

For these reasons, all counts in the Complaint must be dismissed with prejudice.

## FACTUAL BACKGROUND[3]

### I.    THE RELEVANT ENTITIES

Sohu is a China-based online media, video, and game business group that provides comprehensive online products and services on personal computers and mobile devices. Compl., ¶ 26. Sohu Game is a wholly-owned subsidiary of Sohu. *Id.* at ¶ 28.

Changyou is a China-based developer and operator of online and mobile games. *Id.* at ¶ 25. It is a Cayman Islands company with its executive offices in the People's Republic of China. *Id.* Prior to the Merger, Changyou had issued and outstanding two classes of equity securities: (1) Class A ordinary shares ("Class A Shares"), and (2) Class B ordinary shares ("Class B Shares"). *Id.* at ¶ 27. The ADSs, each of which represented two Class A Shares, traded on the Nasdaq Global Select Market ("Nasdaq"). *Id.* at ¶ 35. Prior to the Merger, Sohu's combined ownership of Class A and Class B shares represented approximately 66.9% of the total

---

[3] The facts are taken primarily from the Complaint and the documents cited therein, including the 13E-3s. *See* Cutaia Decl., Exs. 1 and 2. The 13E-3s are integral to the Complaint and therefore may be considered by the Court in deciding Defendants' Motion to Dismiss. *See Altimeo Asset Mgmt. v. Qihoo 360 Technology Co., Ltd*, No. 19 CIV. 10067 (PAE), 2020 WL 4734989, at *1 n.2 (S.D.N.Y. Aug. 14, 2020) (court may consider documents incorporated in complaint by reference, as well as public disclosure documents that have been filed with the SEC).

outstanding equity and 95.2% of the total voting power in Changyou. *Id*. at ¶ 27.

Plaintiff alleges that it was a beneficial owner of Changyou ADSs at the time of the Merger. *Id.* at ¶ 24.

Defendant Xiao Chen ("Chen") was a Changyou director and Chairman of a Special Committee consisting of independent, disinterested directors appointed to evaluate the proposed deal terms of the Merger. *Id*. at ¶¶ 30, 44. He signed the 13E-3s on behalf of Changyou. *Id*.

Defendant Dr. Charles Zhang ("Zhang") is a director and Chairman of the Changyou Board of Directors. *Id*. at ¶ 31. Zhang serves as Sohu's Chief Executive Officer and Chairman of its Board of Directors. *Id.* Zhang signed the 13E-3s on behalf of Sohu. *Id.*

Defendant Joanna Lv ("Lv") serves as the Chief Financial Officer of Sohu, and a director of Sohu Game and Changyou Merger Co. *Id.* at ¶ 32. Lv signed the 13E-3s on behalf of Sohu Game and Changyou Merger Co. *Id.*

## II.   THE MERGER

On September 9, 2019, Sohu proposed a plan to the Changyou Board of Directors to take Changyou private by acquiring all outstanding Class A Shares, including Class A Shares represented by ADSs, not already owned or beneficially owned by Sohu in a short-form statutory merger under the CICL. Compl., ¶ 43. Under the proposed plan, Sohu offered Changyou shareholders cash consideration of $10.00 per ADS, or $5.00 per Class A Share. *Id.*

In response to Sohu's offer, the Changyou Board of Directors appointed the Special Committee.[4] *Id*. at ¶ 44. The Special Committee retained Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") as U.S. counsel and Houlihan Lokey (China) Limited ("Houlihan") as the committee's financial advisor. *Id*. Contrary to Plaintiff's allegation that "Houlihan was

---

[4] Capitalized terms used in connection with the Merger are defined in the 13E-3s.

entitled to a larger fee for its work if the Merger closed," (*id*. at ¶ 48), Houlihan was retained "for a fixed fee, which [was] not contingent upon the consummation of" the Merger "or any conclusion in any opinion rendered by Houlihan [] with respect" to the Merger. *See* 13E-3s, Cutaia Decl., Exs. 1 and 2, at 25.[5]  Further, Conyers Dill & Pearman advised on the validity of the Merger and other legal matters under Cayman Islands law. *Id.* at 26.

Based on Houlihan's "preliminary financial and valuation analysis," on January 16, 2020, the Special Committee rejected Sohu's offer of $10.00 per ADS. *Id.* at 26.  On January 19, 2020, Sohu increased its offer to $10.55 per ADS, or $5.275 per Class A Share. *Id.* at 27.  On January 23, 2020, after receiving Houlihan's updated "financial and valuation analysis," the Special Committee requested that Sohu further increase its offer. *Id.*  Later that day, Sohu conveyed its "best and final offer price" of $10.80 per ADS, or $5.40 per Class A Share, representing an increase of $0.80 per ADS or 8% from Sohu's original offer price. *Id.*  $10.80 per ADS represented the following premiums depending on the time period:

- a premium of approximately 82.4% over the closing price of $5.92 per ADS on September 6, 2019, the last trading day prior to the announcement of the proposed Merger;

- a premium of approximately 9% over the closing price of $9.91 per ADS on January 23, 2020, the last trading day prior to the date the Merger Agreement was signed; and

- a premium of 70.1% to the average closing price of $6.35 per ADS during the 30 trading days prior to the announcement of the proposed Merger. *See* 13E-3s, Cutaia Decl., Exs. 1 and 2, at 31.

On January 23, 2020, Houlihan rendered its opinion that Sohu's proposed merger consideration was fair, from a financial point of view, to holders of Class A Shares or ADSs other than Sohu and its subsidiaries, Changyou and its subsidiaries, and directors and officers of

---

[5] All citations to the 13E-3s cite to the pagination in the lower right-hand corner of the page.

any of them. Compl., ¶ 46; 13E-3s, Cutaia Decl., Exs. 1 and 2, at 27. On January 24, 2020, the Changyou Board, acting on the unanimous recommendation of the Special Committee, made the same determination and approved the Merger Agreement. Compl., ¶ 49; 13E-3s, Cutaia Decl., Exs. 1 and 2, at 27. In so doing, the Special Committee and the Changyou Board considered the following factors and potential benefits, among others, of the proposed merger: (i) the merger consideration, (ii) current and historical market prices for ADSs, and (iii) the financial analysis of Houlihan and its opinion that the Merger was fair. 13E-3s, Cutaia Decl., Exs. 1 and 2, at 28.

## III.    THE 13E-3s

On February 19, 2020, Defendants filed with the SEC a Form 13E-3 under Section 13(e) of the Exchange Act. Compl., ¶¶ 5, 51. Defendants filed an amended Form 13E-3 on March 9, 2020. *Id.* at ¶ 53. The 13E-3s summarized the governing Merger documents in accordance with applicable Cayman Islands law, stating that the Merger was a going-private transaction and would be effected through a statutory short-form process in accordance with section 233(7) of the CICL. *Id.* at ¶¶ 69-71; 13E-3s, Cutaia Decl., Exs. 1 and 2, at 21.

The 13E-3s explained that after the Merger was completed, Changyou would be a privately-held company, and all of the outstanding equity shares would be owned directly or indirectly by Sohu. 13E-3s, Cutaia Decl., Exs. 1 and 2, at 21. As a result, the ADSs would no longer be listed on Nasdaq, and Changyou would cease to be a publicly-traded company. *Id.*

Defendants attached a copy of section 238 of the CICL as Exhibit (f)(2) of the 13E-3s. Compl., ¶ 70. The CICL provides that when a parent company (which owns at least 90% of the voting stock of another company) merges with one or more of its subsidiaries, ***no shareholder vote is required***. *See* CICL §§ 232, 233(7), Cutaia Decl., Ex. 3. As the 13E-3s noted at the time, given that a parent company can effect a short-form merger without a shareholder vote, minority shareholders have no right to vote against or dissent from it. Compl., ¶¶ 69-71.

In contrast to short-form mergers, the CICL provides that a long-form merger must be approved by a shareholder vote.  *See* CICL § 233(6), Cutaia Decl., Ex. 3.  The CICL also provides that shareholders may exercise their right to dissent by providing written objection to the company "***before the vote on the merger***."   Compl., ¶ 62; CICL § 238(2), Cutaia Decl., Ex. 3.  The written objection must include a statement that the shareholder "proposes to demand payment for his shares if the merger or consolidation is ***authorized by the vote***." *Id.* at § 238(3). The company then has twenty days from the ***date of the vote*** to give written notice of the authorization to each objecting shareholder.  *Id.* at § 238(4).

Accordingly, Defendants notified ADS holders in the 13E-3s that "because the Merger will be a 'short-form' merger []pursuant to section 233(7) of the [CICL] and no shareholder vote on the Merger will be held, [ADS holders] will not be entitled to exercise dissenters' or appraisal rights under section 238 of the [CICL], which applies to mergers … in which a shareholder vote is held." Compl., ¶¶ 69-70.  Defendants stated that "the Special Committee and the Changyou Board also weighed the following negative factors" including "no opportunity for [ADS] Holders to vote on the Merger."  13E-3s, Cutaia Decl., Exs. 1 and 2, at 30.  Defendants "urge[d] all [ADS] Holders to read [the 13E-3s] carefully, including its annexes, exhibits, attachments, and the other documents referred to or incorporated by reference [t]herein." *Id.* at 22.

On April 17, 2020, Changyou, Sohu, Sohu Game, and Changyou Merger Co. completed the Merger and Changyou became a private company.  Compl., ¶ 54.  Plaintiff sold some of its ADSs on Nasdaq on March 18 and March 26, 2020, and tendered its remaining ADSs for merger consideration of $10.80 per ADS (or $5.40 per Class A Share) on April 23, 2020. *Id*. at ¶ 24.

## IV.    THE APPRAISAL RIGHTS LITIGATION IN THE CAYMAN ISLANDS

On June 11, 2020, a few former holders of Changyou Class A Shares filed an action in the Grand Court of the Cayman Islands against Changyou seeking appraisal of the fair value of

their shares in connection with the Merger.  *See* Compl., Ex. A, *In the matter of Changyou.com Limited*, FSD 120 of 2020 (Jan. 28, 2021) ("Cayman Decision").  On January 28, 2021 – almost a year after Defendants filed the 13E-3s – the Cayman court concluded for the first time that minority shareholders in short-form mergers have appraisal rights under section 238 of the CICL.  *Id*.  The court recognized "the absence of an express provision [in the CICL] for the protection of a dissenting minority in a short-form merger" and that "[t]aken at face value, the[] provisions of [CICL Section 238] do imply that a person wishing to exercise entitlement under subsection 238(1) to apply to the court for appraisal must also be a person entitled to dissent from the vote for the merger and to have given written objection of an election to dissent."  *Id.* at 14, 23-24.  Notwithstanding this language, the court concluded that "the absence of any qualification upon [the notice of dissent] requirement exempting short-form mergers from it, should be regarded *as an accidental oversight* in the drafting of the Act" and that "appropriate language to give effect to [Parliament's intent] may and *should be read into*" Section 238.  *Id.* at 9, 61 (emphasis added).  This novel interpretation of the CICL is currently the subject of an appeal and the effect of the Cayman Decision has been stayed pending appeal.  *See* Order of the Grand Court, *In the matter of Changyou.com Limited*, FSD 120 of 2020 (Apr. 15, 2021), Cutaia Decl., Ex. 4.

On December 8, 2020, Plaintiff filed the present action in the Eastern District of New York (Matsumoto, J.), alleging that Defendants made material misstatements of fact in the 13E-3s in violation of the Exchange Act.  ECF. No. 1.  After Judge Matsumoto questioned Plaintiff's venue allegations, this case was transferred to the Southern District on September 21, 2021.  ECF. No. 34.

## ARGUMENT

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Qihoo 360*, 2020 WL 4734989 at *4 (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when the plaintiff pleads sufficient

facts "to show more than a sheer possibility that a defendant has acted unlawfully."  *ODS*

*Capital LLC v. JA Solar Holdings Co., Ltd.*, No. 18-CV-12083 (ALC), 2020 WL 7028639, at *6

(S.D.N.Y. Nov. 30, 2020) (citing *Twombly*, 550 U.S. at 556); *see Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice.").  In a securities fraud case, a plaintiff's allegations must

also satisfy the heightened pleading requirements set forth in the PSLRA, which requires that a

complaint "state with particularity all facts" constituting fraud.  15 U.S.C. § 78u-4(b); *see also*

Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud").

I.    **THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5.**

To sustain a 10(b) claim, Plaintiff must plead: (1) a material misrepresentation or

omission; (2) scienter; (3) reliance; and (4) loss causation.  *ATSI Commc'ns, Inc. v. Shaar Fund,*

*Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007).  Here, Plaintiff fails with respect to all four.

A.    **The Challenged Statements in the 13E-3s Are Not Actionable.**

According to Plaintiff, Defendants allegedly misrepresented the availability of appraisal

rights under Section 238 of the CICL and failed to adequately disclose "any other rights that may

be available to security holders under the law," such as seeking court intervention to enjoin the

Merger or bringing another form of suit.  Compl., ¶¶ 69-71, 85.  Defendants' affirmative

statements are not actionable as fraud, and Plaintiff fails to plausibly allege any actionable

omission as it does not identify any established "other rights" available to ADS holders.

1.    **Defendants' Statements Were Not False When Made.**

Plaintiff's falsity allegations fail because fraud by hindsight is insufficient to support a

securities fraud claim.  In order to be actionable, a misstatement must have been false ***at the time***

10

*it was made*.  *ATSI Commc'ns, Inc.*, 493 F.3d at 105.  "A statement believed to be true when made, but later shown to be false, is insufficient . . . Put another way, without *contemporaneous* falsity, there can be no fraud."  *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014), *aff'd,* 604 F. App'x 62 (2d Cir. 2015) (emphasis in original).  "It is well established that securities laws do not impose a duty on corporate officials to be clairvoyant."  *Shemian v. Rsch. In Motion Ltd.*, No. 11 CIV. 4068 RJS, 2013 WL 1285779, at *21 (S.D.N.Y. Mar. 29, 2013), *aff'd*, 570 F. App'x 32 (2d Cir. 2014) (internal citations omitted).

Here, Defendants' description of appraisal rights in the 13E-3s was accurate when they were circulated to ADS holders.  The Cayman Decision – which did not exist at the time the 13E-3s were circulated – cannot establish that that the 13E-3s were false *at the time they were sent*.  Courts routinely reject such "fraud by hindsight" allegations.  *See In re Diebold Nixdorf, Inc., Sec. Litig.,* No. 19-CV-6180 (LAP), 2021 WL 1226627, at *11 (S.D.N.Y. Mar. 30, 2021) (no falsity where plaintiff failed to allege concrete facts showing defendant knew of impairment to goodwill and pointed only to "after-the fact allegations" more than a year later); *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 409 (S.D.N.Y. 2020), *appeal withdrawn sub nom.  Frater v. Sogou Inc.*, No. 20-2188, 2020 WL 6020580 (2d Cir. Sept. 14, 2020) (no fraud where the alleged basis for defendant's misstatement was a Chinese regulation enacted five months after the alleged misstatement was made); *accord Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (fraud by hindsight not actionable).  Furthermore, the Cayman Decision is a trial court decision that is currently stayed pending appeal and does not bind other Cayman courts.  Therefore, whether appraisal rights are available to minority shareholders in short-form mergers under Cayman law has not yet been conclusively determined.

Moreover, Plaintiff's argument that the language of the CICL itself "clearly provide[s]" that shareholders have "unqualified" appraisal rights (Compl., ¶ 73) is facially incorrect given

the language of the CICL and the Cayman Decision.  As the Cayman court expressly

acknowledged, it was only able to interpret the CICL in the manner it did "because of the

***absence of an express provision for the protection of a dissenting minority in a short-form***

***merger***."  Compl., Ex. A, Cayman Decision, at 14, n.9 (emphasis added).  Indeed, "[*t]aken at*

*face value*, the[] provisions of [CICL Section 238] do imply that a person wishing to exercise

entitlement under subsection 238(1) to apply to the court for appraisal must also be a person

[unlike Plaintiff here] entitled to dissent from the vote for the merger and to have given written

objection of an election to dissent."  *Id.* at 23-24 (emphasis added).  Thus, if the statutory text

were truly clear and unequivocal, as Plaintiff mistakenly suggests, the Cayman court's laborious

analysis of the statute's legislative history, precedents in various other jurisdictions, and the

constitutionality of the statute, would have been unnecessary.  *Id.* at 29-44 (considering the

Constitution of the Cayman Islands, the U.K. Companies Act, the Bermuda Companies Act, the

BVI Companies Act, and the Delaware General Corporation Law).

**2.      The Challenged Statements Are Non-Actionable Opinions
         Interpreting the Law.**

Even if Plaintiff had properly alleged falsity, its fraud claim nevertheless fails because the

alleged misrepresentations are non-actionable opinion statements.  It is "well settled . . . that

fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of

law."  37 Am. Jur. 2d Fraud and Deceit § 101.  Courts in this Circuit and elsewhere recognize

this general rule.  *See Goldsmith v. Weibo Corp.*, No. CV 17-4728 (SRC), 2018 WL 2733694, at

*12 (D.N.J. June 7, 2018) (statement of opinion as to defendant's compliance with Chinese law

not actionable as securities fraud); *Singh v. NYCTL 2009-A Trust*, No. 14 CIV. 2558, 2016 WL

3962009, at *7 (S.D.N.Y. July 20, 2016) (defendant's alleged misrepresentations as to legal

entitlement to attorneys' fees and costs under New York law not actionable as wire fraud);

12

*Carolina Cas. Ins. Co. v. Cap. Trucking, Inc.*, No. 18 CIV. 10871 (PED), 2021 WL 848064, at

*680 (S.D.N.Y. Mar. 5, 2021) (no common law fraud where alleged misstatements were legal,

not factual, arguments advanced by attorneys representing defendants); *Miller v. Yokohama Tire*

*Corp.*, 358 F.3d 616, 620-21 (9th Cir. 2004) (defendant's misrepresentations as to employee's

legal entitlement to overtime pay not actionable as common law or mail fraud).[6]

Here, the 13E-3s required Defendants to disclose whether holders of Class A Shares were

entitled to appraisal or other rights under Cayman Islands law. *See* 17 C.F.R. § 229.1004(d)

("Item 1004(d) of Regulation M-A"). Without any case law interpreting the CICL, Defendants

were required to provide an opinion concerning legal rights available to holders of Class A

Shares – if any. Under the securities laws, Defendants' opinions concerning appraisal rights are

therefore not actionable unless Plaintiff establishes one of three exceptions: Defendants (i) did

not sincerely hold those opinions, (ii) provided supporting facts that were untrue, or (iii) omitted

information that made Defendants' statements misleading to a reasonable investor. *Tongue v.*

*Sanofi ("Sanofi II")*, 816 F.3d 199, 210 (2d Cir. 2016); *see also Omnicare, Inc. v. Laborers Dist.*

*Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015). Plaintiff alleges no facts

addressing the second exception and fails to plausibly allege facts establishing the first or third

exceptions.

With respect to the first exception – that Defendants did not sincerely hold the opinion

that appraisal rights were unavailable under Cayman law – Plaintiff asserts that "Defendants'

position in the 13E-3s was always wrong and never legally colorable" and that "it would . . .

make far more sense to interpret" CICL Section 238 differently. *See* Compl., ¶¶ 77-78.

---

[6] The cases Plaintiff cites in its pre-motion letter, ECF No. 30, merely stand for the proposition that there is a duty to disclose illegal conduct when the defendant had **actual knowledge** of illegality. *In re Uniti Grp., Inc. Sec. Litig.*, No. 4:19-CV-00756-BSM, 2021 WL 1238889, at *2-3 (E.D. Ark. Mar. 31, 2021) (finding duty to disclose **known** risk of illegality); *Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 964 (E.D. Va. 2020) (finding duty to disclose **known** illegality).

However, a plaintiff does not allege subjective falsity by claiming "it would have been possible to reach a different opinion than that reached by defendant . . . or even that the defendant's opinion was unreasonable." *Podany v. Robertson Stephens, Inc.*, 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) ("A securities fraud action may not rest on allegations that amount to second-guesses of defendants' opinions").  Plaintiff must allege facts actually showing the opinion was not sincerely held, and no such facts were pleaded here.

For the third exception, Plaintiff advances two theories of liability to no avail.[7]  First, Plaintiff asserts that Defendants' statements were misleading because they omitted a warning to ADS holders that "at best" the issue of appraisal rights was "an unsettled point of law."  Compl., ¶ 79.  But this is insufficient to support a claim.  The securities laws "does not impose liability merely because [a defendant] failed to disclose information that ran counter to an opinion expressed in the [transaction] statement … Defendants [are] only tasked with making statements that fairly aligned with the information in [their] possession at the time."  *Sanofi II*, 816 F.3d at 212 (internal quotations omitted).  Moreover, Plaintiff's allegations do not match reality.  At the time the 13E-3s were circulated, there was no legal decision at odds with Defendants' interpretation of the CICL.  Contrary to Plaintiff's assertion that there was "clear precedent" for "permitting appraisal even in short-form mergers," it identifies no legal authority.  Compl., ¶ 82.  Instead it cites a solitary Schedule 13E-3 from the 2013 going-private merger of an unrelated Cayman Islands company where the company chose to give holders of ordinary shares dissenters rights.  *Id*. (relying on a Schedule 13E-3 filed by Tsingda eEDU Corporation).  Moreover, Defendants' statements regarding appraisal rights were consistent with the disclosures made by

---

[7] Plaintiff's absurd allegation that "Defendants nevertheless could have chosen to" give shareholders appraisal rights, and that Defendants made "a decision not to… and it was misleading not to disclose this fact" (Compl., ¶ 81) merits no consideration.  Such an allegation is not plausible on its face and the securities laws impose no such disclosure requirements.  *See generally Sanofi II*, 816 F.3d at 210 (no general duty to disclose facts that potentially undermine defendants' opinion statements).

14

numerous other Cayman companies that have conducted short-form mergers. *See* Cutaia Decl., Exs. 5-7. Accordingly, liability cannot lie for these alleged omissions "[i]n the absence of plausible allegations showing a conflict between Defendants' statements" and Cayman law. *Sanofi II*, 816 F.3d at 214.

Next, Plaintiff claims that the 13E-3s should have described the "basis for [Defendants'] positions" regarding appraisal rights to make their statements not misleading. Compl., ¶ 79. But Defendants did exactly that. In the 13E-3s, Defendants identified the specific statutory provisions supporting their determination that appraisal rights were unavailable and referred ADS holders to a copy of the Cayman statute attached to the 13E-3s. *Id*. at ¶ 70. Thus, ADS holders had what they needed to understand Defendants' opinion regarding appraisal and the basis for it. *See Shemian*, 2013 WL 1285779 at *20 (no liability when Defendants actually disclosed allegedly missing information).

Accordingly, Plaintiff does not adequately allege any exception to the general rule that Defendants' opinion statements are not actionable as fraud.

### 3.    Plaintiff Fails to Plead Any Actionable Omissions.

In addition to alleging misstatements, Plaintiff claims the 13E-3s did not disclose "other rights that may be available to security holders under the law" pursuant to Item 1004(d) of Regulation M-A. Compl., ¶ 85. This argument fails for three reasons.

First, Plaintiff fails to identify a specific right that Defendants did not disclose. Instead, Plaintiff alleges that shareholders could have sought equitable *remedies* – specifically, injunctive relief or "equitable quasi-appraisal type remedies" – in connection with the Merger. *Id*. But Plaintiff cites no authority for its allegation that Item 1004(d) required Defendants to disclose potential judicial remedies.

15

Second, the failure to disclose matters of general public knowledge, such as the general ability to seek judicial relief, is not actionable under Section 10(b) and Rule 10b-5. The Second Circuit has made clear that a defendant cannot be liable for failing to disclose such general information. *See Seibert v. Sperry Rand Corp.,* 586 F.2d 949, 952 (2d Cir. 1978) (no duty to disclose matters of general public knowledge); *In re Progress Energy, Inc.*, 371 F. Supp. 2d 548, 553 (S.D.N.Y. 2005) ("[T]he securities laws do not require disclosure of information that is publicly known . . . or which constitutes generally applicable laws and regulations").

Third, Plaintiff's claims do not pass the materiality hurdle, which "is . . . a meaningful pleading obstacle." *Qihoo 360*, 2020 WL 4734989 at *5. Courts are "careful not to set too low a standard of materiality" and will dismiss a claim when an alleged omission is "so obviously unimportant to a reasonable investor that reasonable minds would agree on that omission's unimportance." *In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013). Here, it was not material for an investor to be told that he or she could file a lawsuit seeking to enjoin the merger based on some unidentified right to do so. *Id.* at 103 ("[T]he role of the materiality requirement is not to attribute to investors a child-like simplicity.") (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988) (concern with burying "shareholders in an avalanche of trivial information—a result that is hardly conducive to informed decision making")).

**B.      Plaintiff's Conclusory Allegations Fail to Establish a Strong Inference of Scienter.**

Plaintiff's claims also fail because Plaintiff does not allege facts sufficient to establish a "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). To survive dismissal, scienter allegations must include facts showing "motive and opportunity to commit fraud" or "constitut[ing] strong circumstantial evidence of conscious misbehavior or recklessness." *Bay*

16

*Harbour Mgmt. LLC v. Carothers,* 282 F. App'x 71, 76 (2d Cir. 2008) (internal citations omitted).  Here, Plaintiff has alleged neither.

### 1.    Plaintiff Fails to Allege Intentional or Reckless Misconduct.

Plaintiff's conclusory allegations that Defendants (i) knew or were reckless in not knowing their statements were false and misleading, and (ii) acted in conscious disregard of the accuracy of their statements (Compl., ¶ 103) "are wholly inadequate to pleading scienter under the 'exacting' standards of the PSLRA." *Haideri*, 2021 WL 4170791 at *20.  Although Plaintiff alleges that "at most, the statements in the 13E-3s reflected [Defendants'] own positions but the statements were nevertheless represented as fact" and that "to the extent there was any accuracy to [Defendants'] statements . . . this was because of Defendants' own choices and agreements and not because the CICL prohibited the exercise of such rights in short-form mergers" (Compl., ¶ 106), these same allegations were already rejected in *Haideri.*

There, as here, the *Haideri* plaintiff alleged that Jumei intentionally misled shareholders when it stated in its merger-related filings that minority shareholders do not have appraisal rights in a short-form merger under Cayman law.  *Haideri*, 2021 WL 4170791 at *20.  And there, as here, the *Haideri* plaintiff "identifie[d] no case, statute, rule, or other Cayman legal authority that recognized appraisal rights" other than the Cayman Decision and identified only one instance in which a Cayman company explicitly addressed the availability of appraisal rights in short-form mergers (whereas Jumei identified three instances that reached the opposite conclusion).  *Id*. Moreover, there, as here, Jumei "provided the text of the relevant Cayman statute with their merger-related filings so that any shareholder was free to read the statute and reach his or her own conclusion about the validity of [the stated] interpretation." *Id.* (internal citations omitted). Accordingly, the court concluded that "the most plausible inference is that [defendants] believed their statements were correct and consistent with the plain language of the relevant statute and

17

had no basis to think that, ***almost a full year later***, a Cayman court would interpret, apparently

for the first time, the statute in a contrary fashion." *Id.* (emphasis added).

### 2.    Defendants Did Not Have "Motive and Opportunity to Commit Fraud."

Likewise, Plaintiff fails to raise a strong inference of scienter through "motive and

opportunity" because it does not allege that Defendants "benefitted in some concrete and

personal way from the purported fraud." *ECA, Local 134 IBEW Joint Pension Trust of Chicago*

*v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Plaintiff alleges only that Zhang and

Lv were motivated by their relationships with Sohu and Sohu Game "to execute the Merger at

the lowest price possible, and to suppress dissent from shareholders – which would directly cost

[Sohu and Sohu Game] money – or taking other action to block . . . a highly lucrative merger."

Compl., ¶ 104.  But such "general allegations of economic self-interest" for the company

"generally possessed by most corporate directors and officers" are insufficient to establish

scienter.  *Bay Harbour*, 282 F. App'x at 76; c*ompare Kalnit v. Eichler*, 264 F.3d 131, 140 (2d

Cir. 2001) (citing *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 622-24 (4th Cir. 1999) (no adequate

motive when plaintiffs alleged that director sought to depress stock price to assure success of

merger to retain board position and obtain higher price for his stock)), *with JA Solar Holdings*

*Co.*, 2020 WL 7028639 at *12 (scienter adequately pled where, unlike here, defendant increased

its ownership stake in company before the merger was announced and ***received $440 million***

***following merger***).  Nowhere does Plaintiff here identify a "concrete and personal" benefit

received by Zhang and Lv that could sustain this theory of scienter.

Furthermore, Plaintiff's own allegations demonstrate that Defendants did not act with

motive to defraud.  Nine days after Sohu sent Changyou's Board of Directors a preliminary non-

binding proposal to take Changyou private, Changyou approved the formation of a Special

Committee consisting of members who were independent from Sohu and did not include Zhang and Lv.[8]  *See* Compl., ¶¶ 43-44.  The Special Committee reviewed and evaluated the proposed merger, and engaged outside legal counsel and a financial advisor to assist with this task.  *Id*. at ¶ 44.  Moreover, contrary to Plaintiff's allegations (*id*. at ¶ 48) Houlihan was retained for a fixed fee, which was not contingent upon the consummation of the Merger or any conclusion in any opinion rendered by Houlihan with respect to the Merger.  *See* 13E-3s, Cutaia Decl., Exs. 1 and 2, at 25.  Plaintiff's strained effort to cast doubt on Defendants' good faith conduct by alleging that the Special Committee and Houlihan were a sham are too speculative to support a finding of scienter.  *See Kalnit*, 264 F.3d at 140 ("Plaintiffs do not ... enjoy a license to base claims of fraud on speculation and conclusory allegations.") (internal citation omitted).

**C.     Plaintiff Is Not Entitled to Presumption of Reliance and Fails to Adequately Plead Actual Reliance.**

As to reliance, Plaintiff fails to adequately plead that either: (1) reliance can be presumed here, or (2) Plaintiff reasonably relied on Defendants' alleged misstatements.  *In re Shanda Games Limited Securities Litigation ("Shanda I")*, No. 1:18-CV-02463 (ALC), 2019 WL 11027710, at *8 (S.D.N.Y. Sep. 30, 2019).

**1.     Plaintiff Is Not Entitled to Presumption of Reliance Based on the *Mills* and *Affiliated Ute* Principle.**

Although Plaintiff alleges a presumption of reliance based on *Mills* and *Affiliated Ute*, the reliance principle in those decisions is applicable only where the plaintiff alleges "primarily omission claims."[9]  *See Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d

---

[8] Chen, who was on the Special Committee (Compl., ¶ 30), is not alleged to have any fraudulent intent at all.

[9] In *Affiliated Ute*, the Court, citing, *inter alia*, *Mills*, held that "positive proof of reliance is not a prerequisite" in cases "involving primarily a failure to disclose." *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384 (1970)); *see also Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 50 (1977) (Blackmun, J., concurring) (discussing *Mills* and *Affiliated Ute* presumption in primarily omissions claims).

103, 109 n.5 (2d Cir. 2005); *Steginsky v. Xcelera, Inc.*, No. 3:12-CV-188 SRU, 2015 WL 1036985, at *5 (D. Conn. Mar. 10, 2015), *aff'd*, 658 F. App'x 5 (2d Cir. 2016) (*Mills* and *Affiliated Ute* presumption apply only where plaintiff's claims are primarily based on omission of material fact); *Shanda I*, 2019 WL 11027710 at *8, n.2 (same).  Here, Plaintiff's claim rests *primarily* on Defendants' alleged misstatements regarding lack of dissenters' rights.  Compl., ¶¶ 68-78.  Plaintiff's omissions claim derives from that misstatement claim.  Specifically, it alleges that Defendants' purportedly misstated position on Cayman Islands law was an "unsettled point of law" and did not identify "any other rights" available to shareholders.  *Id.* at ¶¶ 79, 85.  These omission allegations are not separate from, but are rather "directly related to the . . . statements Plaintiff[] also claim[s] are false."  *Waggoner v. Barclays PLC*, 875 F.3d 79, 96 (2d Cir. 2017).  The alleged omissions in the 13E-3s are claimed merely to have "exacerbated the misleading nature of the affirmative statements."  *Id.*; *see also Starr*, 412 F.3d at 109 n. 5 (same).

> ### 2.    Plaintiff Is Not Entitled to Presumption of Reliance Under the Fraud on the Market Theory.

To plead reliance based on the fraud on the market theory, Plaintiff "first must allege that the relevant market was open and developed or, in other words, efficient."  *Shanda I*, 2019 WL 11027710 at *8.  While it is not the case that the fraud on the market "presumption could never apply to a go private transaction . . . generally, IPOs and private transactions are treated as inefficient."  *JA Solar Holdings Co.*, 2020 WL 7028693 at *14.  More specifically, the "forced sale of shares through a merger ***does not constitute an efficient market*** . . . because the share price [is] negotiated as opposed to being driven by trading volume or external analysis or reporting."  *Shanda I*, 2019 WL 11027710 at *9 (emphasis added).  Here, Plaintiff has failed to adequately plead an efficient market.

In *Shanda*, the plaintiff attempted to plead that the Shanda securities were traded in an efficient market despite the merger by asserting that: (i) Shanda's ADSs were actively traded on Nasdaq, (ii) "Shanda Securities were covered by numerous securities analysts … who wrote reports that were distributed to the sales force and certain customers of their respective firms, though many of these firms discontinued coverage after the announcement of the proposed Transaction," and (iii) "the market reacted promptly to public information disseminated by Shanda." *In re Shanda Games Limited Securities Litigation ("Shanda II")*, No. 1:18-CV-02463 (ALC), 2020 WL 5813769, at *2 (S.D.N.Y. Sept. 30, 2020) (emphasis in original omitted). However, the Court found these allegations insufficient to plead an efficient market for two reasons.  First, the "suspension of analyst coverage at the beginning of the class period in response to the at-issue transaction points towards an inefficient market." *Id.*  Second, plaintiff did not demonstrate that the market reacted promptly to information disseminated about the great demand for Shanda securities because it did not allege any increase in defendant's stock price associated with the alleged misstatements. *Id.*  In other words, despite defendant's positive projections, plaintiff did not allege any facts to show that the share price went above the transaction price.  As such, the court found these allegations "point[] to a lack of an efficient market that was incorporating news about Shanda's value into its price." *Id.*  Plaintiff's allegations here fare no better.

Like the plaintiff in *Shanda*, Plaintiff claims that the market "promptly digested current information regarding Changyou from all publicly available sources and reflected such information in Changyou's stock price." Compl., ¶ 93.  However, also like the plaintiff in *Shanda*, Plaintiff here fails to allege any facts to support its assertion that the market promptly digested information regarding Changyou.  Despite Defendants' statements in the 13E-3s regarding the lack of appraisal rights for holders of Class A Shares, Plaintiff did not allege any

decrease in Defendants' stock price associated with the alleged misstatements.  At best, Plaintiff

makes the conclusory assertion that the challenged statements "artificially deflated" the price of

Changyou ADSs.  *Id.* at ¶ 94.  However, this allegation does not comport with reality because the

trading price of ADSs actually ***increased*** during the Class Period.  *See* 13E-3s, Cutaia Decl., Exs.

1 and 2, at 20; *supra*, Section II at 6.  Absent facts evidencing that an efficient market was

incorporating news about Changyou, Plaintiff is not entitled to a presumption of reliance based

on the fraud on the market theory.

### 3.    Plaintiff Fails to Plead Reasonable Reliance on Alleged Misrepresentations.

Absent a presumption of reliance, Plaintiff must plead that it actually relied on

Defendants' alleged misstatements.  *See Shanda I*, 2019 WL 11027710 at *8.  "The traditional

(and most direct way) a plaintiff can demonstrate reliance is by showing that [it] was aware of a

company's statement and engaged in a relevant transaction . . . based on that specific

misrepresentation."  *Id*.  Plaintiff claims it relied on the 13E-3s in deciding both ***to sell*** some

ADSs prior to the Merger ***and to hold*** other ADSs until the Merger closed.  Compl., ¶ 88.  This

is incoherent.  It cannot be the case that Plaintiff relied on the same statements to take

contradictory actions.

Moreover, even if Plaintiff relied on Defendants' alleged misstatements, such reliance

would be unreasonable based on its other allegations.  Specifically, Plaintiff alleges that

Defendants' statements in the 13E-3s were plainly contradicted by the "clear[]" language of

Section 238(1) of the CICL.  Compl., ¶ 73.  If this were true, it would be fatal to Plaintiff's

claims because "[a]n investor may not justifiably rely on a misrepresentation if, through minimal

diligence, the investor should have discovered the truth."  *Starr*, 412 F.3d at 109.  Plaintiff could

have discovered the purported "truth" by reading Section 238 of the CICL, which was an

attachment to the 13E-3s, including the amended 13E-3 that was *sent to Plaintiff by Defendants*. Compl., ¶ 70. Thus, Plaintiff's alleged reliance was unreasonable, where Plaintiff had ready access to the allegedly "clear" language of the statute.

> **D.      Plaintiff Fails to Adequately Plead Economic Loss and Loss Causation.**

Plaintiff's speculative and conclusory loss causation allegations fail to "link [Defendants'] purported material misstatements or omissions with the [alleged] harm ultimately suffered." *JA Solar Holdings Co.*, 2020 WL 7028639 at *14. Indeed, these same allegations were rejected by the court in *Haideri*. There, the *Haideri* plaintiff alleged that Jumei's statements as to "shareholders' lack of appraisal rights in short-form mergers proximately resulted in economic loss because shareholders' knowledge of the arguable existence of appraisal rights for shares that are undervalued in a merger transaction … [gives] shareholders the option of pursuing appraisal or selling their shares" at a higher value. *Haideri*, 2021 WL 4170791 at *24. In other words, "[a]ccording to [plaintiff's] theory, an alternative statement by [defendants] that appraisal rights may *possibly* have been available to … minority shareholders in early 2020 would have led arbitrageurs to acquire [defendants'] stock, which would in turn have forced the share price above [the] offer price and forced [an] increase[d] … bid for the company." *Id.* (emphasis in original). The court found that such a theory "requires several inferential steps to arrive at any potential loss." *Id.*

Plaintiff's allegations here similarly fail. Plaintiff alleges that "members of the Class suffered losses when they sold their Changyou securities for less than the fair value of those securities" and were "deceived into foregoing their appraisal rights and other rights under Cayman Islands law, which would have provided them with significantly greater value than provided by the Merger." Compl., ¶ 95. Like in *Haideri*, Plaintiff's theory of loss causation is premised upon a "highly contingent series of events" (that a statement by Defendants as to the

potential availability of appraisal rights would have led an arbitrageur to acquire Changyou securities at an increased cost) and "cannot suffice to plead loss causation." *Haideri*, 2021 WL 4170791 at *24.

Furthermore, Plaintiff's allegation that it sold ADSs at an artificially deflated and undervalued price is "bellied [sic] by the fact that [Changyou's] stock price rose or remained roughly the same during the relevant class period." *JA Solar Holdings Co.*, 2020 WL 7028639 at *15. On September 6, 2019, the last trading day prior to the announcement of the Merger, the closing price was $5.92 per ADS, and on January 23, 2020, the last trading day prior to the date of the Merger, the closing price was $9.91 per ADS. *See* 13E-3s, Cutaia Decl., Exs. 1 and 2, at 31. In other words, the value of Changyou's ADSs *nearly doubled* during the Class Period and never exceeded the transaction value. Plaintiff's "sentiment [that the stock was actually worth more] simply is not enough to sufficiently plead loss causation and speculation and conjecture, even a well-educated guess, in the context of market prognostication does not suffice to establish a fact." *JA Solar Holdings Co.*, 2020 WL 7028639 at *15 (internal citations omitted).[10]

## II.   COUNTS II AND III FAIL AS A MATTER OF LAW BECAUSE THERE IS NO PRIVATE RIGHT OF ACTION UNDER SECTION 13(e) OF THE EXCHANGE ACT.

As Judge Gardephe recently held, Section 13(e) does not provide an implied private right of action. *Boylan v. Sogou Inc.*, No. 21 CIV. 2041 (PGG), 2021 WL 4198254, at *12-13 (S.D.N.Y. Sept. 13, 2021) (finding that express language of Section 13(e) and legislative history

---

[10] In support of its allegations that the value of Changyou securities was "artificially deflated" (Compl., ¶ 94) Plaintiff alleges that Houlihan's financial analysis grossly understated Changyou's value (*id*. at ¶¶ 98-100), that Changyou "almost doubled analyst expectations for earnings per share in 4Q19" (*id*. at ¶ 97), and that on the day the Merger closed, Sohu's stock price went up by 25% (*id*. at ¶ 101). However, there is no correlation between an increase in the share price of Changyou's parent company Sohu (a large company offering a variety of online products and services unrelated to Changyou) and the alleged artificial deflation of Changyou's stock, which did not decrease at all during the putative class period. Further, Plaintiff does not allege, because it cannot, that Houlihan's financial analysis did not factor in correct information about historic and expected performance.

of Williams Act indicates that "Congress did not intend to create a private remedy"). This holding is supported by the weight of authority in courts that have addressed the issue.[11]

Here, Plaintiff provides virtually no additional authority that "evinces an affirmative intent on Congress's part to provide a private right of action under Section 13." *Boylan*, 2021 WL 4198254 at *13. Accordingly, Plaintiff "has not carried [its] heavy burden to demonstrate that Congress intended to make a private right of action available for violations of Section 13(e)." *Id*. Even if Plaintiff were entitled to seek relief under Section 13(e), such a claim nevertheless fails because any liability would be based on the same alleged misrepresentations as Plaintiff's Section 10(b) claim, and thus fails for the same reasons detailed in Section I, *supra*.

## III.    COUNT IV FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF FAILED TO ALLEGE AN UNDERLYING VIOLATION OF THE EXCHANGE ACT.

Plaintiff's Section 20(a) claim fails as a matter of law because the Complaint does not adequately allege an underlying primary breach of the securities laws. *See ATSI Commc'ns, Inc.*, 493 F.3d at 108 (no control person liability under Section 20(a) when plaintiff failed to allege any primary violation); *JA Solar Holdings Co.,* 2020 WL 7028639 at *15 (dismissing Section 20(a) claim when plaintiffs failed to adequately allege Section 10(b) claim).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss all counts against them in the Corrected Amended Complaint with prejudice.

---

[11] *See, e.g., Fasano v. Juoqing Li*, 16 cv-8759 (KPF), 2017 WL 6764692, at *13 (S.D.N.Y. Dec. 29, 2017) ("[m]any courts [...] have refused to recognize an implied right of action under Section 13(e)"), *reversed on other grounds, Fasano v. Yu Yu*, 921 F.3d 333 (2d Cir. 2019) (citing *Bolton v. Gramlich*, 540 F. Supp. 822, 842-43 (S.D.N.Y. 1982) (no private right of action under Section 13(e)); *Berg v. First Am. Bankshares, Inc.*, Civ. A. No. 83-3887, 1985 WL 2232, at *8 (D.D.C. Apr. 17, 1985) (same); *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1393-45 (D. Del. 1984), aff'd, 769 F.2d 152 (3rd Cir. 1985) (same).

Dated: October 29, 2021

**GOULSTON & STORRS PC**

/s/ Nicholas Cutaia

Nicholas Cutaia
885 Third Avenue, 18th Floor
New York, New York 10022
Tel: (212) 878-6900
Fax: (212) 878-6911
Email: ncutaia@goulstonstorrs.com

Richard J. Rosensweig (admitted *pro hac vice*)
Abigail Fletes (admitted *pro hac vice*)
400 Atlantic Avenue
Boston, Massachusetts 02110
Tel: (617) 482-1776
Fax: (617) 574-4112
Email: rrosensweig@goulstonstorrs.com
Email: afletes@goulstonstorrs.com

*Attorneys for Defendants Changyou.com Limited,
Sohu.com Limited, Sohu.com (Game) Limited, and
Joanna Lv*

**SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP**

/s/ Robert A. Fumerton

Robert A. Fumerton
Scott D. Musoff
Michael C. Griffin
One Manhattan West
New York, NY 10001
Tel: (212) 735-3000
Fax: (212) 777-2000
Email: robert.fumerton@skadden.com
Email: scott.musoff@skadden.com
Email: michael.griffin@skadden.com

*Attorneys for Defendant Xiao Chen*