M52TCHAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ODS CAPITAL LLC,
*Individually  and on Behalf OF*
*All Others Similarly Situated,*

                Plaintiffs,

         v.                          21 CV 7858 (GHW)
                                     Remote proceeding
CHANGYOU.COM LIMITED, et al.,

                Defendants.

------------------------------x

                                     New York, N.Y.
                                     May 2, 2022
                                     4:00 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                     District Judge


                    APPEARANCES (Telephonic)

LABATON SUCHAROW LLP
     Attorneys for Plaintiffs
BY:  JAKE BISSELL-LINSK
     NICOLE ZEISS
     CAROL VILLEGAS

GOULSTON & STORRS PC
     Attorneys for Defendants Changyou, Sohu and Lv
BY:  RICHARD ROSENSWEIG
     ABIGAIL FLETES

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
     Attorneys for Defendant Chen
BY:  MICHAEL GRIFFIN

M52TCHAC

(Via teleconference)

THE COURT:  Let me begin by taking appearances for the parties.  I'm going to ask that the principal spokesperson for each set of parties identify him or herself and the members of her team rather than having each lawyer identify themselves individually.

Let me begin first with counsel for plaintiffs.  Who is on the line for plaintiffs?

MR. BISSELL-LINSK:  Yes, your Honor, this Jake Bissell-Linsk from Labaton, lead counsel, on behalf of lead plaintiff ODS Capital, LLC.  And on the line in me is Nicole Zeiss, a partner at our firm, and I believe also Carl Villegas.

THE COURT:  Thank you.  Who is on the line on behalf of defendants?

MR. ROSENSWEIG:  Good afternoon, your Honor, two firms.  This is Richard Rosensweig from Goulston & Storrs, and with me is Abigail Fletes, and we are on for all but one of the defendants, Changyou.com Limited, Sohu.com Limited, Sohu.com (Game) Limited and Joanna Lv.  I believe some folks are on from Skadden for another defendant.

THE COURT:  Thank you.

MR. GRIFFIN:  Yes, good afternoon, this is Michael Griffin from Skadden for Mr. Chen, the last remaining defendant.

THE COURT:  Thank you very much.

Let me begin by reminding all the parties this is a public proceeding. Any member of the public or press is welcome to audit this conference. I'm not presently monitoring whether they are, I just remind you that that is a possibility.

Second, please keep your lines on mute at all times except when you're speaking to me or one of your colleagues representing a party in the case.

Third, please state your name each time that you speak during the conference, if you would, please. Please do that even if you have spoken previously.

Fourth, I'm inviting our court reporter to let us know if the court reporter at any time has any difficulty hearing or understanding anything that we have to say. If the court reporter asks you to do something that will make it easier for the court reporter to do their job, please do it to the extent that you can.

And finally, I'm ordering that there be no recording or rebroadcast of all or any portion of today's conference.

So counsel, with that out of the way, let me turn to the substance of the conference.

First, thank you for submitting your proposed settlement materials for preliminary approval by the Court. I looked through them shortly before the order that I issued scheduling today's conference. I have a number of questions about the submissions. I have some smaller typographical type

M52TCHAC

comments about the submissions, but I thought that I might start with some broader thematic questions about which you may be able to help me.

So first, let me just begin with the amount of the recovery. I'll ask counsel for plaintiffs or counsel for the defendants, but principally counsel for plaintiffs to let me know if I missed this, but I didn't see anything really telling me how this recovery winds up with the possible recovery, and so I find it difficult to evaluate whether the monetary amount that has been proposed as the settlement amount here is appropriate because I don't have any benchmark against which to evaluate it. I have seen the description in your memorandum about the legal risks. That said, if there's something that I missed, I would welcome you pointing it out to me.

The principal question is: Why is this a good settlement? Where does this line up in light of the anticipated potential damages? It is a lacuna. And I would like to ask you to let me know if there's something that I missed in the submissions; and if you can't point me to it, then we can talk about next steps.

So counsel for plaintiff, can you point me to the relevant portion of your submission here?

MR. BISSELL-LINSK: Yeah, I'm happy to try to answer your question. I don't believe that we submitted any sort of specific damages number for what class-wide damages would be,

and I can sort of speak to that.

Ordinarily in a securities litigation case, damages are proven, as you likely know, through the out-of-pocket rule where you look at a corrective disclosure event and the losses that were caused by a corrective disclosure, and we would normally have a damages expert help us in deriving that number through the normal process.

This case is a little bit different than your average securities case because there isn't a corrective disclosure event.  And the reason for that is that the company went private, that is sort of core to the allegation, and so it was not publicly traded at the time when sort of the truth became known to world, and so there was no stock price reaction.

As a result of that, a precise showing of damages or even a very strong estimate of damages would depend on getting a firm understanding of what the shares were really worth.  And that's because our view of damages and our loss position theory in cases like these is that plaintiffs are entitled to recover the difference between the amount that they sold -- the price that they sold the shares for, either tendering or on the market, and the fair value of those shares.

So we could have and could, if it would help the Court, submit some analysis of what we think that number might come to, but sort of differently than in a normal sort of average securities case, there's not really a firm number to

M52TCHAC

point to.  So we haven't ventured, I don't believe, into submitting anything publicly that sort of gives that number as more likely to draw on sort of the criticism and analysis of whether that's the right number.

That said, we think that this is a really good recovery for the class even though it's not an enormously large number, given the risks in the case and our overall view that this was unlikely to be a large case in terms of classified damages in any scenario.

I don't know if that answered your questions.  I could talk to you a little more sort of how we look at the numbers.

THE COURT:  Thank you, I may come back to that.

Let me ask a related question which pertains to the plan of distribution which is laid out in paragraph 58 of the notice.  That has numbers in it, but I don't have any way to evaluate what the basis is for those numbers or the plan of allocation.

So there are a number of, I will call it embedded decisions in the plan of allocation that I, again, couldn't find an explanation for in the parties' proposal.  If there's something that I missed, again, I welcome an indication where I should be looking, but the bottom line issue that I saw was that I couldn't ascertain what the basis was for the proposed plan of allocation, which includes a recognized loss amount per ADS that differed based on any period.  I don't know where

M52TCHAC

those numbers came from, so it's hard for me to evaluate whether or not it's a reasonable plan of allocation.

Counsel for plaintiff?

MR. BISSELL-LINSK:  Yes, I would be happy to answer that.

So in the plan of allocation, I think the main number -- well, there's a couple of numbers, there's the deal price, the $10.80 deal price.  That's just a fixed number of what the deal closed at.

Then the other sort of given number is $38.26, which is what we're calling the nominal fair value of the ADS.  And that number is used in plan of allocation primarily as a mathematical tool for establishing somebody's loss.  It's not terribly important that that be an exact estimate of what the damages are, because really what we're doing is determining everyone's pro rata share of the recovery, and that number is sort of just a constant that is being used to assist in running that math out.

I can explain that in greater detail if you would like, but I could also explain where the $38.26 number came from, which is in the second amended complaint at paragraph 99, that's one of the few paragraphs that we give on why we think that the fair value of the ADS was higher than the deal price and the market price.  And in that paragraph, we talk about the valuation as reflected by the analysis of comparable companies,

M52TCHAC

which is one of the sort of typical methods of evaluating shares, and explain that if you that made what we think are reasonable adjustments to the comparable company's analysis that was done, you would end up with a mean valuation per ABS of $38.26.

So we submitted that number as a reasonable benchmark basically for purposes of setting math within the plan of allocation, but the logic of the plan of allocation is not entirely driven by that number, it's essentially a pro rata distribution with certain adjustments.

THE COURT:  Thank you.  So I would like to drill down on a number of those things.  First off, let me carry back part of this to your earlier comments about the amount of the potential recovery.  I understand it to be your contention, at least, or the suggestion in the plan of allocation that the fair value per ABS is 38.26 and the deal price was 10.80.  Why do you say that the damages are so nominal if the difference between the fair value and the deal price is 27-odd dollars?

MR. BISSELL-LINSK:  Yes.  So I think that that comes down to how reliable you think that $38.26 is, which, again, I know defendants would certainly object to that being recognized as a sort of true estimate of the fair value of the shares, and it's our view that that is a reasonable estimate for purposes of the plan of allocation but not necessarily the number that would have been reached through a full analysis of the exact

valuation.

And speaking to that, we gave a number of different reasons why we think that the fair value of the company was higher than the deal price. And this number was one of the numbers that came out of that analysis, but that's not to say that it's sort of meant to be a perfectly accurate estimate of what fair value is.

But if it would be helpful to the Court, and I'm getting the sense it may be, we would be happy to submit a short, additional briefing on sort of just running up the math in the different scenarios on what the classified damages would be, if that is something that would be helpful.

THE COURT:  I am leading to that conclusion. I think it would be helpful for me to understand what the assessment is of classified damages and where this fits, the recovery here fits in light of your anticipated damages.

I saw the net or the fair valuation in the plan of allocation, and the numbers looked as though they would be large if these were the right numbers for the nominal fair value per share. So yes, I'm going to invite some further information about both the calculation of the damages so that I and, more importantly, potential class members can evaluate this recovery against the potential recovery were the case to be fully litigated, and also to understand the basis for the plan of allocation and how these two sets of assumptions

M52TCHAC

correlate.

Counsel, in that regard, you described the 38.26 as essentially a plug number to help get to a pro rata calculation for each of these periods.  Are you suggesting that it doesn't matter what that plug number is so long as you use it consistently across the groups?

MR. BISSELL-LINSK:  Not exactly.  So the number that is used could have some affect on the exact recovery that the different groups of people are getting, I believe.  And the point that I was making is you're correct, it's sort of being used as a constant, and we chose a constant that we thought was reasonable in light of our allegations.  My point was only that as a constant, it's not exceptionally important, I don't think, that it be a precise estimate of what the true fair value is so much as that it's sort of a reasonable estimate to use within the model.

The logic of the plan of allocation is each shareholder who is selling gets a recognized loss amount based on the difference between that $38.26 number and the price they sold at.  And the shareholders who tendered their shares and who sold their shares during the class period, if they held shares before the start of the class period basically are getting a pro rata distribution based on that.  And then the shareholders who only purchased shares after the transaction statement was published and then sold those shares during the

class period are also entitled to a pro rata distribution, but there's a cap on what that category is getting.  And the logic behind that is we thought those were the weakest claims for a number of different reasons.

So I believe that the $38.26 number should have some affect on sort of how that cap ends up playing out or that distribution works, but I am no math expert.  And I will note we worked on this plan of allocation with an expert extensively who thought this was a reasonable approach.

THE COURT:  Thank you.  You just touched on my next question with respect to the plan of allocation, which was to ask about the logic behind the break points that are embedded in each of these categories.  I take it from your remark that that may have something to do with counsels' assessment of the strength of the claims for each of these periods.  Can you say something else about why these were the break points?

MR. BISSELL-LINSK:  Yes, definitely.  So when trying to put together this plan of allocation, we were striving to put something together that was reasonable to all class members and we sort of saw it in these three categories:

The first is shareholders who tendered shares in the merger itself.  And we thought that those claims were strong in some sense because the issues of reliance are somewhat different for shareholders who tender as opposed to shareholders who trade in the market, as well as other sort of

potential reasons, but I think that's the biggest.  So we thought those were strong claims for that reason.

And then the second category is shareholders who held shares before the information statement was published and then sold shares during the class period.  And the distinction there is that the tendering category does not require that they held shares before the information statement was published.

So the reason that that category be of people who held before and sold during is strong in some sense is that there is risks and arguments that could be raised against the ability of people to recover if they did not hold shares before the publication of the initial information statement, because at least to some extent or by some argument they were to purchase shares that were already affected by what we think are the misstatements.

Now it gets complicated in cases like these because it's not just -- the misstatement is not just the initial information statement, and we allege there were continuing omissions throughout the class period insofar as defendants failed to disclose information that we think they had a duty to disclose.  So it would very much not be our view that you necessarily needed to hold before the start of the class period to have any damages, but there is an argument that those who did hold before have a stronger claim or have a strong claim in that way.

M52TCHAC

And then the third category is the weakest of the three, which is those who bought shares after the class period began and sold those shares during the class period.  And so we put a cap on that category as a way of recognizing that those claims were comparatively weak.

THE COURT:  Thank you.  Do you have any information about the rationale for the five percent cap on type C claims?

MR. BISSELL-LINSK:  Just to clarify, are you asking why the number was set at five percent?

THE COURT:  Yes.

MR. BISSELL-LINSK:  That was a reasonable attempt by us to sort of put a limit on the category C.  I don't think that is a super precise analysis, it was our attempt to do something that is reasonable in treating all the different claimants fairly.  And I don't really have a super technical explanation for why the number was five percent other than the fact that we didn't think those claims were especially strong and we thought that there is a risk of in and out traders in the class period overwhelming the other two categories which we thought were stronger.

THE COURT:  Thank you.  I will come back to both of these questions at the end of our conference.

One thing that I would like to request, if I can, counsel, in addition to what I think I may request with respect to the plan of allocation is a declaration regarding the facts

that are presented to the Court in connection with the application to settle these claims.  Here, I have a declaration by I think Ms. Villegas that attaches the stipulation of settlement, but I don't think that it recites the factual background that the parties are asking for me to consider in connection with settlement.

Counsel, is there a, I will call it a more fulsome declaration that describes the facts that I'm to take into account here?  It would be helpful if that were incorporating by reference the text of the recitals to the stipulation or otherwise.  That would be fine.  I'm just looking for a factual statement that I could consider for establishing some of the predicates for my decision.

Is there another declaration in the record or are you asking me to look to the recitals to the agreement as the factual predicate?

MR. BISSELL-LINSK:  The shortest answer is we're happy to submit an additional declaration if that would be helpful, but I think this is a question that I may refer to Nicole Zeiss, who is also on line, who is the person most familiar with the process of us preparing settlement documents.

THE COURT:  Good, thank you.  I will come back to you, counsel.  Please hold your answer.  Let me just get through a few other things and I look forward to hearing from you.

I would just like to ask a very simple question, and I

M52TCHAC

apologize, this is a bit idiosyncratic.  In the proposed order I'm directing -- I'm to direct the claims administrator to make reasonable efforts to notify class members of the pendency of the action and to provide them with a proposed long-form notice or otherwise notify them of the existence of the action.

Counsel, is there anything on the record that tells me what percentage of the potential class members are likely to be notified if the claims administrator undertakes so-called reasonable efforts?  Do reasonable efforts get to 50 percent of the potential class members or do reasonable efforts get to 95 percent of class members?  Is there anything that tells me what reasonable efforts should reach?

MS. ZEISS:  Your Honor, this is Nicole Zeiss.  There's nothing in the record at the moment with those stats, but I can tell you that through the process in the preliminary approval order, the claims administrator will use transfer records provided by the company and also outreach to custodial banks, brokers, to obtain the names and addresses for the class members.

Typically, the claims administrators reach a very robust proportion of the class.  We -- Labaton typically has twelve settlements a year, and I have been doing this for more than ten years now.  I have never seen a claims process in which the recognized losses of claimants didn't meet our estimate of damages.  We never had a settlement where

M52TCHAC

claimants -- a small portion of claimants came forward.

This administrator is estimating that about 20,000 notices will be mailed, so in a way a class of about 20,000, but many of the investors are institutions.  Their one notice may represent millions of dollars in losses.  And so of those -- sorry, 16,000 notices, the administrator is contemplating that about 30 percent of those will convert to claims, but that doesn't mean only 30 percent of the class will have claims, it still assumes that the vast majority of allegedly damaged investors will put in claims, will reach out into the process.

THE COURT:  Thank you, that's helpful.  I will come back to this in a bit.

That concludes my most substantial questions.  I have a few other smaller questions.  I'm going to do them in no particular order, with apologies.

First, I would like to talk about the method by which the hearing will take place.  We are still in the Covid-19 pandemic, although, with luck, it will continue to abate.  I'm happy to conduct the settlement hearing in person, which is what the current settlement documents or notices provide for, but I wanted to raise the possibility of conducting the proceeding by phone rather than in person in the courthouse.  I have done that I think in nearly all of my class action final settlement proceedings since the pandemic began, and it seems

to work relatively well.  Again, I'm happy to proceed in either way, but my sense has been that remote proceedings have been valued by the parties.

I started to raise this as a topic for conversation. I will begin with counsel for plaintiff.  Counsel, what do you think?  Do you have a preference for proceeding in person as opposed to remotely?

I should say one other thing.  As you all know from your practices where this happens, generally the parties establish a dial-in number which is included in the notice materials.  The notice materials are modified somewhat to contemplate a remote proceeding, but it's relatively straightforward.

Counsel first for plaintiffs, what are your thoughts?

MR. BISSELL-LINSK:  I think we're happy to do either. I think remote proceedings are very convenient and probably work well here, as much as I enjoy coming to the S.D.N.Y. courthouse.

THE COURT:  Thank you.

Let me hear from counsel for the defendants.  Do you have a preference?  First, I will turn to, I will call it counsel for the majority of defendants, counsel?

MR. ROSENSWEIG:  Your Honor, Richard Rosensweig for the majority of defendants.  We have no preference.  Whatever is convenient for the Court is fine with us, and we're happy to

M52TCHAC

do this by call or remotely rather than in person.

THE COURT:  Thank you.

Counsel for the remaining defendant?

MR. GRIFFIN:  Yes, this is Michael Griffin for defendant Chen.  And we agree.  We're happy to do it remotely via phone if that's easiest for everyone.

THE COURT:  Thank you.  Let's plan to do this remotely if the parties are willing to do so.  I think that that requires, as you know, some modifications to the proposed notice, it requires that the parties identify now a phone number that we can use for the call.  That seems to be best if those are moderated conference lines.

And so I would ask that you revise those documents accordingly so that the participants can dial in to the conference and we'll do the proceeding by remote means.

Thank you.

MR. BISSELL-LINSK:  Sure.

THE COURT:  So briefly, in the notice there are a couple of other just brief comments that I would like to raise.  I already raised the principal one.

There's a small typo in paragraph 13 of the notice, which I don't think I would raise but for the fact that we're already making one change, which is that in paragraph 13 there's the clause that reads, "or if you held. . . on April 23," I think that the space that I just filled in with .

. . may need to be filled with a word, I think "any," but I ask you to look at paragraph 13 to see if there's a typographical error that needs to be corrected.

I'm looking now at the proposed order, in particular paragraph 14 of the proposed order, that paragraph has me conclude that the notice shall constitute due and sufficient notice to all persons and entities entitled thereto.  Of course, I have to conclude that the notice itself satisfies due process and all of the other requirements.

The thing that I want to ask about is whether I can make the last -- the finding included in the last clause of that paragraph 14, which is the conclusion that it does constitute sufficient notice to all persons and entities entitled thereto.

Let me hear from counsel for plaintiff.  Again, I have to make the proceeding findings, that last clause that I want to invite comment on.  Counsel first for plaintiff.

MS. ZEISS:  It's Nicole Zeiss from Labaton.  I'm having a little trouble finding the language of concern.  So the form and content of notice --

THE COURT:  The last clause.

MS. ZEISS:  Meet the requirements so they constitute the best notice practicable and shall constitute due and sufficient notice to all persons entitled thereto.

The program that we are presenting has been tailored

to be efficient and cost effective.

THE COURT:  Let me pause you.  I understand that last clause to be a finding by me that it is effective notice to all persons, in other words, that all persons get notice as a result of this.  And so I'm asking whether I have to conclude, in order to find that the method of distribution is reasonable and meets due process that it also notifies everyone.

So I read this to require me to find that this process will not reach a reasonable number of people, not to find that it's consistent with due process, but rather to find that it constitutes sufficient notice to all persons.  And I invite comment on that, that request, namely that I find that it will effectively notify all persons entitled to such notice.  If so, what is the basis for me to reach that conclusion; and if not, what's the purpose of it, and on what basis can I make the finding?

MR. BISSELL-LINSK:  Your Honor, could I ask a clarifying question?  Is the distinction that you're making between -- that the language as you read it is stating that all persons are receiving notice as opposed to that the notice program is legally sufficient, is that sort of the distinction?

THE COURT:  That is the distinction.

MR. BISSELL-LINSK:  I will turn it back to Nicole.

THE COURT:  I read this to conclude that I am finding this constitutes due notice to all persons and entities

M52TCHAC

entitled to it, as opposed to finding that it is, I will call it a process that is instructed to reach that end, even if it doesn't actually necessarily get 100 percent of the people the notice.

MS. ZEISS:  In a case like this, we do not have the complete list of all, so it probably is a function of the Court -- if the Court is concerned about the word "all," modifying it to say, "and shall constitute due and sufficient notice to those persons and entities entitled thereto."

THE COURT:  Thank you.  Let me ask this in a different way.  The other provisions of paragraph 14 are tethered to requirements of the rules and the statute.  What requires that I make the finding in the final clause of this paragraph 14, if anything?

MS. ZEISS:  It probably could end with, "constitute the best notice practicable under the circumstances."

THE COURT:  Thank you.

Counsel for the majority of the defendants, do you have any information about what this language is designed to address?  I understand why one would want it in there, but is there a particular statutory or regulatory requirement that this language is tethered to or designed to address, to your knowledge?

MR. ROSENSWEIG:  Your Honor, Richard Rosensweig for the majority defendants.  My understanding is that it doesn't

have to be this exact language, essentially that sufficient notice is required in order to meet due process and that the long form notice being available to the class.  The mailing notice, summary notice being made to the class, and the publication notice have been found by various courts to constitute sufficient notice to a class in these circumstances.

Our responsibility under the terms of the stipulation is to provide access to all of the transfer records and to provide access to the street holders, the brokers and banks, if you will, that hold ABSs or held ABSs in the names of their various clients, which we will do.

From prior experience with this claims administrator and other claims administrators, they already have a working relationship with all of the banks and brokers such that they have a sort of well-oiled machinery whereby the contact information that will enable a mailing is provided quickly without much difficulty.  The only thing that the brokers require is evidence that this has been authorized by a Court in order for them to release that contact information.

So I don't see any magic particularly to the way it was formulated here.  I can tell you that this language is very similar to another settlement that was approved by your colleague, Judge Liman, I don't know, maybe a year and a half ago or so, and that's how it may have made its way into here. But there's no magic to it.

THE COURT:  Thank you.

Counsel for Mr. Chen?

MR. GRIFFIN:  We concur with what our colleague for the majority said.  This is Michael Griffin for Mr. Chen.

THE COURT:  Thank you very much.

Let me turn to paragraph 15 of the order.  Just very briefly, counsel, paragraph 15 of the order has the claim forms being postmarked no later than five calendar days before the settlement hearing.  I don't quibble with that, I accept it, but I just ask what the view is of the plaintiffs regarding that timing.  Does that give you enough time in advance of the settlement hearing to have and to consider claim forms?  That's the postmark date, not the received by date, so we may not have as much information available on the date of the settlement hearing.  So I wanted to hear your thoughts about that requirement of the stipulation.

MS. ZEISS:  Your Honor, it's Nicole Zeiss.  That deadline -- we are flexible about this deadline.  We structured it to be before the hearing to give us an idea of -- a better idea of the number of claims that are going to be submitted, but you are correct, it is not going to be a perfect number, it's a postmarked deadline.  It will not be enough time for the administrator to review the claims in detail.  It will be enough time for us to report to you the number of claims, the number of claims with ABSs purchased in the class period,

probably held on the tender dates, give you some sort of benchmarks.  But it isn't enough time for us to report final recognized loss numbers, many of the claims will be deficient.  There's a whole process for communicating with claimants.  It will give us and you some valuable information that we wouldn't have if the deadline were after the hearing.

THE COURT:  Thank you.  I appreciate that.  And again, I don't quibble with this, I question whether looking at this one might want more time before the settlement hearing for that work to happen.  Again, this is not something that I would hold off on approving this preliminarily over, but I just flag it and ask for some consideration regarding whether that will give you enough time to get the information that will be most helpful at the final settlement hearing.  Again, I am not asking you to change it, just inviting you to review it.

With respect to paragraph 21 of the proposed order, this appears to refer to a document that I may not have.  In the introductory language to paragraph 21, it reads that if a settlement class member doesn't make their objection "in the manner provided for in the settlement notice and settlement web page shall be deemed to have waived such objection."  So here I am requiring that people make their objection in the manner provided for in that web page, as I read this.  I don't, however, have that web page or know what it is that I am requiring through this language because I don't have the

M52TCHAC

language that appears to be incorporated by reference into it.

Counsel, is this information available to me someplace in the package that's been presented?  If so, can you point me to it, please?

MS. ZEISS:  This is Nicole Zeiss.  I'm looking for the paragraph that explains the objection process.

The reference to the settlement web page is a function of the fact that we are going to be mailing the postcard notice and posting the long form notice.  The information is the information in paragraph 19.  Paragraph 19 explains what objectors -- the process that objectors need to follow, and that information is also in the long form notice in detail.

In paragraph 21, we could change the language and say, "the manner provided for above in paragraph 19."

THE COURT:  Good.  Thank you.  That would be helpful. I appreciate that.  Thank you very much.  That would address my concern.  Thank you.

One final question regarding the order which pertains to paragraph 30, this is the paragraph in which I would order that the stipulation and all of the related things won't be used as an admission, et cetera.

So counsel, I fully understand that this is something that exists in this marketplace.  I understand why the parties want it, that is, for me to order it.  The question that I have is why I should and under what authority.  In other words, why

M52TCHAC

should I order this as opposed to having this simply be a feature of the parties' agreement as between each other?

Counsel for the plaintiff?

MR. BISSELL-LINSK:  Yes, this is Jake Bissell from Labaton.  And just to clarify, the question is not why the parties want it to be clear that there are no admissions but rather why the Court should enter an order to that effect as part of this?

THE COURT:  Correct.

MR. BISSELL-LINSK:  I think that the answer is just that in the context of the overall approval that it would clarify the scope of what is going on, which is that while the Court is entering certain orders in this process, it is not intending to convey that there was any findings in either direction against either party.

So I guess the answer to the question is the value of having the Court order sort arises from the fact that the Court is also issuing other orders that could serve as a negative inference to imply something undesirable if this clause wasn't there, but I think probably this is a clause that defendants would be best equipped to explain why they believe it should be there.

THE COURT:  That's good.  Counsel for defendants, let me hear from you on this.  And let me just expand the question.

My understanding is this is an order that applies to

people who are not parties in the litigation. In other words, I would be ordering non-parties here not to do these things, presumably ordering third parties not to do these things. As formulated, that's the way it's written. In other words, it's a general order that people not do these things. And the parties can agree bilaterally not to do these things vis-a-vis each other.

So my question is why should I be ordering this, and the related question: Can I order people who are not parties to this litigation to do anything? In particular, can I order them to not use this in the way that's described here?

MR. ROSENSWEIG: So your Honor, I don't think that this provision orders people to do anything. The purpose of the language, as I understand it, is to bind class members who are absent but their interests are being represented by the lead counsel and lead plaintiff on their behalf in this litigation.

So the absent class members have not entered into any agreement, but absent a Court order, they cannot be bound by it. And from the defendants' perspective, we are paying money that we don't think the class is entitled to. And I say that with respect, I understand the plaintiffs have a different position, but we're essentially paying money in order to buy peace and resolve the case. And so if a settlement were viewed as an admission of culpability or an admission by the

defendants that the plaintiffs' claims have merit, it would be very difficult to settle the case because, of course, there could be all kinds of corollary uses by that implied admission by other plaintiffs in other circumstances.

So when the parties negotiate, typically they're willing to negotiate that this settlement in and of itself should not be viewed as any admission of any malfeasance by any of the defendants, and that the settlement has been reached in order to avoid the risks of litigation, et cetera.

And so if the absent class members or anybody else could simply argue that the settlement is somehow an admission by the defendants, it would have a chilling effect on all these settlements.

So it's not -- I don't believe that there's any order in here about ordering anyone who is absent to do anything, it's simply stating that none of the settlement documents or the fact that it was approved by the Court should be construed as an admission by defendants and it shouldn't be offered that way before another Court.

THE COURT:  You just said it can't be offered by any other party, in addition to the releasing parties, in any other court.  So why is this not an order by me to third parties not present here, not the releasing parties, not to do things, namely not to use this in any other court?

MR. ROSENSWEIG:  I admit, I think it is an order, but

it's not an order to do anything.  I agree with you, your Honor, it is an order that others shall refrain from using this document in that way, which, I have to say, is pretty standard in these cases.  And I think that if the Court were uncomfortable with it, simply the acknowledgment by the Court that the order shall not be construed as an admission of the validity of any claim or whatnot without a more affirmative order saying it shall not be offered against released parties I think would likely do the trick.

My guess is if you could have an affirmative order by the Court, it probably gives the parties more comfort that if anybody tries to use the document in a way it was not intended, or misconstrue it, it would be more effective to get an order of the Court.  But I do understand what you're saying, your Honor, and effectively I think even absent that language the defendants would be satisfied if simply the language that this is not -- that the Court here is not construing this as an admission, and parties did not intend it that way, could be effective as well.

By the way, the order goes both ways.  It's also intended to protect the plaintiff parties as well from any claims that they brought a frivolous claim or that somebody could assert a violation of Rule 11 or anything like that by virtue of the fact that they settled for less than the claims were originally made for.  But anyway, I am probably getting

M52TCHAC

off on a tangent in that regard.

So to answer your question, your Honor, this is the way I typically have done it.  It does provide more comfort to us.  I don't think the Court is not permitted to do it, but I do agree that if we simply said that there's no admission by the parties and the Court is not construing this document that way, that it could sufficiently protect the parties from that type of mischief.

THE COURT:  Good.  Thank you.  My concern is just that.  I'm concerned about imposing injunctive relief against people that aren't in front of me.

Counsel for Mr. Chen, any additional comments with respect to this question?

MR. GRIFFIN:  Yes, your Honor, this is Michael Griffin.  I agree with everything that the company's counsel just said.

I would just add I think another way to look at this provision is it merely clarifying the scope of the Court's order and what the Court is doing here rather than enjoining third parties from doing anything in particular.  I think that's another way that we view the provision and why it didn't necessarily strike us as a third-party injunction in the way that the Court has raised.

THE COURT:  Thank you, that's helpful.

So let me come back to the beginning.  First, thank

M52TCHAC

you very much for your thoughtful responses to my questions. Here's what I would like to request in order for me to able to complete my preliminary evaluation of the proposed settlement.

I would invite a supplemental affidavit from an expert or from your expert or from whomever you think is appropriate to provide some information that would allow me to assess the settlement amount relative to potential recovery. I understand that that is potentially an estimate. My goal is to make sure that I have some information against which to measure this recovery. I don't think I need further information about the nature of the risk attendant in this litigation. That was thoroughly presented in the memorandum of law. The issue is that I want to make sure that potential class members who are considering the proposal and who may wish to object or to opt out have that information so they could use that as they're evaluating the propriety of the resolution.

I have a similar request with respect to the plan of allocation. I would like to ask for a supplemental affidavit describing the basis for the proposed plan of allocation, and I will call it the underpinnings for the valuation that's used in it and how it is that that is expected to, I call it model out potential recoveries for each of the subgroups.

I appreciate the verbal description here of the justification for each of the three class types, A, B and C. I have heard it, and I thought that it was a reasoned explanation

by competent counsel regarding the methodology that was selected for the plan of allocation.  But in order to ensure that prospective class members can evaluate it and object to it, if appropriate, I would ask that your supplemental affidavit contain a description of the basis for the breakdown for each of those categories and the rationale for them so that potential reviewers from the group of class members can understand the basis for the plan of distribution.

The last thing that I would ask for is to the point about reasonable efforts.  If you could ask your claims administrator to give me a short supplemental affidavit describing the percentage of beneficial owners who will be receiving the notice as a result of their exercise of so-called reasonable efforts, it would be helpful to me.  It could be an estimate.  But in reviewing this particular settlement, it occurred to me that the data does not tell me what percentage of potentially affected class members will be reached through the exercise of reasonable efforts.  I just don't know what reasonable efforts gets us in this context, if it's 50 percent or 95 percent, and I would appreciate a statement from them as to that data point.

The suggestions by counsel regarding a potential modification to the language of the provision that I construed as a potential third-party injunction seemed very reasonable to me.  I would invite you to consider modifying that paragraph.

M52TCHAC

Of course, I may modify it myself, but I prefer to have your feedback. I understand that you will find an operator and make the other changes that we talked about here.

I don't think it would take me very long to review supplemental affidavits of the type I just described so we can launch this, assuming that the response is satisfactory. How long do you think it would take for you to do that work, counsel for plaintiffs?

MR. BISSELL-LINSK: I think insofar as it requires us to have an expert involved, something like 15 days would seem reasonable to me, but the literal answer is we can do it as fast as the Court requires, but I think 15 days would be reasonable.

THE COURT: That's fine. I will look to see something from you around the 18th.

Anything else from any parties here? First, counsel for plaintiffs?

MR. BISSELL-LINSK: No.

MS. ZEISS: No.

THE COURT: Thank you.

Counsel for the majority of the defendants?

MR. ROSENSWEIG: Nothing from us, your Honor, thank you.

THE COURT: Counsel for Mr. Chen?

MR. GRIFFIN: Yes, nothing further from us, your

M52TCHAC

Honor, thank you.

THE COURT:  Very good.  Thank you all.  This proceeding is adjourned.

(Adjourned)