# Exhibit 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CHANGYOU.COM LIMITED SECURITIES LITIGATION | Case No. 1:21-cv-07858-GHW<br><br>CLASS ACTION<br><br>**DECLARATION OF PAUL MULHOLLAND CONCERNING <u>PROPOSED NOTICE PROGRAM</u>** |

I, Paul Mulholland, declare and state as follows, pursuant to 28 U.S.C. § 1746:

1.    I am the President of Strategic Claims Services ("SCS"), a nationally recognized class action administration firm. I have thirty (30) years of experience specializing in litigation support services, principally in the area of the administration of securities class action settlements. I have also testified as an expert witness in securities and other class action matters. Attached as Exhibit A is my curriculum vitae and SCS brochure.

2.    SCS was retained by Lead Counsel, subject to Court approval, to provide notice and claims administration services in connection with the proposed settlement of the above-captioned action ("Action").[1]

3.    At the request of Lead Counsel, I am providing this declaration in support of Lead Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement. ECF No. 47-50. I have personal knowledge of the facts set forth herein, and if called on to testify, I could and would do so to the best of my ability.

4.    SCS has successfully administered over five hundred (500) class action settlements since it was established in April 1999. SCS specializes in administering securities class action settlements and has distributed over $3 billion in settlement funds. SCS is considered one of the leading claims administrators in the United States. More information about SCS is available on our website at www.strategicclaims.net.

PROPOSED NOTICE PLAN

Overview

5.    I have been informed that the proposed Settlement Class here consists of (a) all

---

[1]    The terms of the settlement are in the Stipulation and Agreement of Settlement, dated March 28, 2022 (the "Stipulation"), previously filed with the Court. ECF No. 49-1. All capitalized terms not defined in this Declaration have the same meanings as in the Stipulation.

1

holders of Changyou.com Limited ADSs on April 23, 2020 and (b) all persons and entities that sold (including by tendering) Changyou ADSs during the period from February 19, 2020 through April 23, 2020, inclusive (the "Class Period"), who were allegedly harmed by Defendants' conduct. Excluded from the Settlement Class are: (i) Defendants; (ii) any officers or directors of Defendants during the Class Period (the "Excluded D&Os"); (iii) members of the immediate families of the Individual Defendants and of the Excluded D&Os; (iv) the subsidiaries and affiliates of the Company and any entity in which Defendants or the Excluded D&Os have or had a controlling interest; and (v) the legal representatives, heirs, successors, or assigns of any excluded person or entity, in their capacities as such. Also excluded from the Settlement Class is anyone who timely and validly seeks exclusion from the Settlement Class.

6.      The proposed notice plan in this matter uses widely accepted procedures that have been designed to provide direct mail notification to investors who are members of the Settlement Class and who can be identified with reasonable efforts. In addition, direct mail notification (and emails to the extent available) will be provided to thousands of financial institutions, whether brokerage firms, banks, and other third-party nominees ("Nominees"), which regularly monitor proposed securities class action settlements.

7.      All persons and entities identified as potential Settlement Class Members will be mailed a Postcard Notice. To the extent we are provided with email addresses, potential Settlement Class Members will also be emailed links to obtain copies of the long-form Notice of Pendency, Proposed Settlement of Class Action, and Motion for Attorneys' Fees and Expenses ("Long Notice") and Proof of Claim and Release Form ("Claim Form"). The Postcard Notice will direct recipients to the settlement webpage, www.strategicclaims.net/Changyou/, for additional information about the Settlement and to access the Long Notice, the Claim Form, and the online

2

claim portal. The Postcard Notice will also notify potential Settlement Class Members that they can request that a copy of the Claim Form be mailed to them. The Long Notice, Claim Form, and website will include instructions for claim submission.

8.    The proposed notice plan also calls for the Summary Notice of Pendency and Proposed Settlement of Class Action and Motion for Attorneys' Fees and Expenses ("Summary Notice") to be transmitted once over the *GlobeNewswire* and be published once in the *Investor's Business Daily*. In addition, SCS will send the Depository Trust Company ("DTC") the Long Notice and Claim Form for the DTC to publish on its Legal Notice System ("LENS"). LENS provides DTC participants the ability to search and download legal notices, as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted.

**Outreach Based on Transfer Records and Nominees**

9.    If SCS is appointed by the Court as Claims Administrator, and subject to the Court's approval of the notice plan set forth in the proposed Order Granting Preliminarily Approval of Class Action Settlement ("Preliminary Approval Order"), SCS will, after cleanup and deduplication, initially send the Postcard Notice by First-Class Mail to all persons and entities identified as potential Settlement Class Members by Changyou's transfer agent. The transfer agent will only have the contact information for the small number of investors that held their Changyou ADSs in their own names. These investors typically make up a very small percentage of a class. In SCS's experience, class members who hold their securities in their own name, and are therefore known to the transfer agent, make up less than 1% of an identified class in a typical securities settlement.

10.    The vast majority of potential Settlement Class Members will have held/have sold their Changyou ADSs through a brokerage firm, bank, institution, or other third-party Nominee as

3

beneficial owners whose ADSs are held in "street name"; *i.e.*, the ADSs were purchased and held by one of the Nominees on behalf of the beneficial owner.

11.    In order to obtain the contact information for investors at the beneficial level, SCS will use a procedure, standard within the industry, designed to obtain beneficial owner contact information from the Nominees that hold the ADSs as record holders. In the twenty-three years that SCS has been notifying potential class members of actions involving publicly traded securities, SCS has found that the large majority of potential class members are reached through their Nominees.

12.    In this matter, SCS will send a Postcard Notice and a cover letter to each entity included on our propriety list of approximately 2,500 Nominees, which we have developed over time. This list includes the largest and most common broker firms, banks, and other institutions connected with publicly traded securities and is contained in a database SCS created and maintains. In SCS's experience, the institutions included in this database represent a significant majority of the beneficial owners in most settlements involving publicly traded companies. The cover letter accompanying the Postcard Notice will notify the Nominees of the proposed Settlement, the definition of the Settlement Class, and inform them of their obligation to either (a) provide the names and addresses of their clients who may be Settlement Class Members to SCS or (b) request copies of the Postcard Notice from SCS to provide directly to their clients. As noted above, Nominees will also be notified through LENS. The Preliminary Approval Order also directs Nominees to provide email addresses to SCS, to the extent available.

13.    SCS will then promptly mail Postcard Notices, and email links to the Long Notice and Claim Form to the extent emails are provided, directly to all potential Settlement Class Members identified by Nominees. SCS will also promptly send copies of the Postcard Notice to

4

Nominees who indicate that they will directly forward Postcard Notices to their clients who may be Settlement Class Members.

14.    All name and address data obtained by SCS will be reviewed to identify and eliminate exact name and address duplicates and incomplete data prior to mailing and/or emailing. Any Postcard Notices that are returned as undeliverable mail will be reviewed to determine if an alternative or updated address is available from the Postal Service and skip-tracing. SCS will re-mail to any updated or alternative address.

**Summary Notice and Website**

15.    SCS will supplement the direct mailing and emailing program described above by transmitting the Summary Notice over the *GlobeNewswire*, a national online newswire that will disseminate the Summary Notice across the internet. News outlets often use posted notices as the basis for their own stories about litigation settlements involving publicly traded companies, thereby creating added awareness of a proposed settlement among investors. In addition, SCS will publish the Summary Notice in print in the *Investor's Business Daily*.

16.    Throughout the notification and claims processing period, SCS will maintain a toll-free telephone number to field potential Settlement Class Members' inquiries. SCS will also maintain a settlement webpage, www.strategicclaims.net/Changyou/, where key documents will be posted including the Stipulation, the Long Notice and Claim Form, and the signed Preliminarily Approval Order. The webpage will provide an overview of the case and proposed Settlement and highlight important dates, including the date of the final approval hearing. The webpage will also include the ability for claimants to submit a claim electronically. If there are any modifications to the time and/or date of the final approval hearing, SCS will update the website accordingly. All posted documents will be available for download from the website.

5

## ESTIMATED REACH OF NOTICE PROGRAM

17.     Because the majority of class members in a securities case are only known to the Nominees that held securities on their behalf, it is not possible to quantify the size of the proposed Settlement Class here with precision.  However, through our experience in other securities settlements and within this industry, I am confident that the vast majority of class members here held through Nominees and that SCS has robust procedures for reaching those Nominees. Accordingly, based on the procedures described above, and SCS's experience in other securities settlements, SCS estimates 95% to 99% of potential Settlement Class Members will be notified of the Settlement.

18.     In terms of volume, on April 23, 2020, approximately 10.7 million Changyou ADSs[2] were owned by institutions, representing approximately 60% of the ADSs available for trading on April 23, 2020. The large majority of these institutions will file claims and they will represent the majority of the alleged losses in the Action.

19.     SCS also estimates there were approximately 17.9 million[3] allegedly damaged ADSs held by class members on April 23, 2020. In addition, there were approximately 3.9 million

---

[2] Source is Securities and Exchange Commission ("SEC") Form 13-F quarterly filings by institutions holding Changyou ADSs as of 3/31/20.

[3] Source is SEC Schedule 13E-3 dated 2/19/20, filed by Changyou. This SEC schedule describes the going private transaction of Changyou.com Limited.  The 17.9 million ADSs were available for trading and represent the 19.1 million outstanding ADSs at 2/19/20 less the 1.2 million ADSs owned by directors, officers and Sohu.

ADSs[4] sold during the period February 19, 2020 through and including April 22, 2020. In total, accordingly, there were approximately 21.8 million (17.9 million plus 3.9 million) allegedly damaged ADSs during the Class Period. Based on this, and SCS's past experience in securities class action settlements, I am estimating SCS will be sending notices to approximately 15,000 potential class members.

20.    Based on SCS's experience, I am estimating a claim filing ratio ranging from 15% (2,250 claims) to 25% (3,750 claims), meaning that 15% to 25% of the notices will convert to claims. This does not, however, mean that only 15% to 25% of the alleged losses will be claimed. For example, a considerably large portion of the alleged losses may have been suffered by a small group of institutions, which will file claims.

21.    Overall, I am confident that the standard procedures to be employed in this notice program will provide robust results and that the vast majority of Settlement Class Members will receive notice of the Settlement.

**ADDITIONAL CLAIMS ADMINISTRATION DUTIES**

22.    In addition to the proposed notice plan outlined above, SCS will, at a minimum, provide the following additional administrative services relating to class communications: (1) review and type-set notices; (2) set-up a Settlement Class database, phone system, and frequently asked questions protocol; (3) review and process all opt-out requests; (4) regularly update the Settlement Class database to include updated addresses and other information regarding Settlement Class Members; (5) handle and respond to all phone call questions regarding notice and claims processing from Settlement Class Members; (6) respond to all other questions via emails, letters

---

[4] This represents actual shares traded during the period 2/19/20 to 4/22/20, inclusive, and reduced by 50% to account for market maker trading.

and other correspondence from Settlement Class Members; (7) process and pay broker charges; (8) provide accounting and periodic status reports to Lead Counsel; and (9) prepare declarations as required by the Court and counsel throughout the administrative process.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 16th day of May 2022, in Media, Pennsylvania.

Paul Mulholland

**Exhibit A**

## EXHIBIT A

## PAUL MULHOLLAND, CPA
### (CURRICULUM VITAE)

Mr. Mulholland is the President and founder of Strategic Claims Services (SCS) in April of 1999. SCS is a litigation support firm specializing in the administration of class action cases and in providing damages analyses in class action matters. SCS has administered over 500 class action settlements and calculated over 150 damage analyses since its inception. The Company also specializes in the preparation and compliance of federal and state income taxes for Qualified Settlement Funds. For more information on SCS visit its website at **www.strategicclaims.net**.

From 1992 to 1999, Mr. Mulholland was Senior Vice President of Valley Forge Administrative Services, Inc. Mr. Mulholland was responsible for overseeing all aspects preparation of damage/expert reports in class action matters and for claims processing and administration of class action settlements. He also was responsible for areas of federal and state income taxes for settlement funds and for compliance with all treasury regulations.

From 1986 to 1992, Mr. Mulholland was Chief Financial Officer of Terramics Property Company, a Philadelphia-based regional commercial real estate company with a $150 million real estate portfolio. He was responsible for asset management, financial reporting, budgets, bank and investor liaison, debt restructurings, refinancings, contract negotiations, tax matters, treasury functions and cash management.

From 1984 to 1986, Mr. Mulholland was Chief Financial Officer of American Health Systems, Inc., a $40 million (revenue) nursing home management company, and was responsible for financial reporting, taxation, budgeting, cash management, cost containment, risk management and regulatory reporting.

From 1980 to 1984, Mr. Mulholland was employed at Coopers & Lybrand. He planned and directed audit engagements in a variety of industries, including preparation of financial statements, SEC reporting, and evaluation of internal accounting systems and supervision of staff accountants.

Mr. Mulholland holds a BS in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a member of the AICPA. He serves on several advisory boards and board of directors for several companies in the Philadelphia area. Mr. Mulholland was an adjunct professor of accounting and finance at Neumann University located in Aston, PA.

PAUL MULHOLLAND, CPA
EXPERT TESTIMONY AND DEPOSITIONS

**Expert Testimony:**

Celia L. Hale., et al., v. Wal-Mart Stores, Inc
Jackson County, Missouri
Case No. 01-CV-218710 (Division 1)                       June 2008

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                 June 2004

Barter v. Southmoore Golf Associates                     March 21, 2000 and
(Common Pleas of Northhampton County (No. 199-C-1815)    March 22, 2000

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)   March 1995

**Depositions:**

Fosamax Products
Liability Litigation No. 1:06-MD-1789 (JFK)
(MDL No. 1789)
USDC for the Southern District of New York                June 14, 2007

Aredia and Zometa Products
Liability Litigation No. 3:06-MD-1760
(MDL No. 1760)
USDC for the Middle District of Tennessee
at Nashville                                              May 31, 2007

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                 June 2004

In Re: Curative Health Services, Inc. Securities Litigation
(Master File No. CV99-2074) United States District Court
Eastern District of New York                              February 2002

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)   January 1995

**Mediation Presentation:**

Alibaba Group Holding Limited Securities Litigation
Civil Action 1:15-md-02361 (CN)
USDC Southern District of New York
Mediation Presentation to Honorable Layne R Phillips       March 2019

Case 1:21-cv-07858-GHW    Document 56-1    Filed 05/18/22    Page 14 of 15

## CLAIMANT COMMUNICATION

*Phone Calls*

We tailor our Call Center to the needs of each settlement, we can provide an automated approach using the latest IVR technology or, if counsel perfers, we offer a more personal approach and have one of our highly trained staff answer the phone and help the Class member with any issue they may have. We also offer call tracking for each case, detailing the claimants question, and reporting on the total number of calls received.

*Email*

If a client requests it, we can provide a dedicated email address for each settlement where Class members can correspond and recieve prompt answers from one of our highly trained staff.

*Website*

On request, we can provide a dedicated website for a settlement where all pertinent data and forms can be easily accessed by class members. Using these websites Class Counsel can quickly and easily communicate to the class with ongoing updates and status changes in the Settlement.

## DISTRIBUTION

*Checks*

We have handled distributions of all sizes and values, ranging from a few hundred checks, to hundreds of thousands of checks worth millions of dollars. We monitor all our bank accounts on a daily basis using a Postive Pay system to ensure our clients that only checks we issued will be cashed

*Taxation*

SCS can handle all taxation needs for a settlement. From calculating and paying taxes on the interest earned in the Settlement Fund, to withholding Federal and State taxes on wage cases, our staff of Certified Public Accounts ensure that all filing requirements are met.

## KEY INDIVIDUALS

### Paul Mulholland, CPA, CVA
### President

*As the founder, Mr. Mulholland is the key liaison with counsel on all administrative cases. He holds a BS degree in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a Certified Valuation Analyst. He is a member of the AICPA and NACVA.*

### Matthew Shillady
### Operations Manager

*Mr. Shillady overlooks all areas of operations and systems management. Matthew is an expert in database management and computer systems. Matthew Shillady is a graduate of Penn State University. He holds a BS degree in Information Sciences and Technology Integration with substantial experience in data integration and database systems. Mr. Shillady has been with Strategic Claims since June of 2003.*

### Josephine Bravata
### Quality Assurance Manager

*Ms. Bravata is involved with all areas of claims administration. She supervises the claims processing, database management, notification, bank reconciliations, check distributions and preparation of reports. Ms. Bravata joined the Company in 2001 after graduating from Neumann University. She has a BS degree in Accounting and a Minor in Computer and Information Management.*

"I want to express my appreciation for the excellent work that Strategic Claims Services has provided to-date in administering the Blue Cross settlement. You and your staff have been timely, responsive and have made the claims administration process efficient and effective. Thank you for all your hard work."
Mike Karnuth, Esq.
Krislov & Associates, Ltd.

# STRATEGIC CLAIMS SERVICES

Strategic Claims Services
600 North Jackson Street
Suite 3
Media, PA 19063

PHONE
866.274.4004
610.891.9852

FAX
610.565.7985

EMAIL
pmulholland@strategicclaims.net

"Your able and conscientious handling of this matter is much appreciated."
Honorable William C. Connor
United States District Judge
Southern District of New York
Administration of the Texaco ERISA
Litigation Settlement

Copyright © 2009 Strategic Claims Services

Case 1:21-cv-07858-GHW   Document 56-1   Filed 05/18/22   Page 15 of 15

## OUR MISSION

*Strategic Claims Services strives to offer high quality claims administration and unmatched solutions to its clients while maintaining exceptional client relationships.*

*» We supply customized reports and detailed reviews of the Administration process so clients can stay well informed and up-to-date on any aspect of the administration process.*

*» We provide unsurpassed customer relations through our fully trained claims administrators who answer each call personally and assist our clients with their knowledge and expertise.*

*» We tailor a solution to each class action to ensure compliance with all the court and settlement documents.*

## OUR HISTORY

Strategic Claims Services (SCS) was established in 1999 to provide support in managing, planning, implementing and administering class action litigations. The highly skilled staff consists of Certified Public Accountants, Information Technology professionals, experienced managers, bookkeepers and support staff.

With over a decade of experience in hundreds of cases involving notification, claims processing and distribution. SCS develops a custom solution for each and every client to ensure the highest quality service at a competitive price. SCS is devoted to offering paramount quality control throughout all dimensions of the claims administration process.

As an innovator in claims administration services, SCS is a technology driven organization with a proven track record to handle cases of all sizes in a cost-effective and efficient manner. The firm also provides tailored proposals, data management, and consultation.

## CLASS NOTIFICATION

Strategic Claims Services offers many different options for both notices and claim forms. Based on the Client's requirements, SCS can compare the notice documents to ensure compliance with the settlement documents and the Court's require-ments. SCS can also design Claim Forms to ensure Class Members fully understand and comply with the requirements of each settlement.

We can also provide assistance with publishing Legal Notice through newspapers, press releases, and websites. Using our contacts in the publishing industry we can negotiate favorable rates in most major newspapers, allowing the class to benefit from reduced publication costs.

*Our Services Include:*
*» Direct Mailed Notice*

*» Email Campaigns*

*» Notice Design and Proofing*

*» Claim Form Design*

*» Custom Websites for each settlement*

*» Customize Class Data*

*» Updating Out-of-Date Class Data (National Change of Address, Skip-tracing methods)*

*» Providing compliance affadavits/declarations for publications and direct mailing*

"Strategic Claims Services (SCS) provides excellent customer service, and the best price in the business. SCS's attention to detail, high quality work, quick and accurate turn around are the hallmarks of its true professionalism. Ready access to SCS's president, Paul Mulholland, and his personal involvement assures me everything is done right. You can't beat SCS – they're simply the best in the industry."
John F. Innelli
Innelli & Robertson

## DATA MANAGEMENT

One of the most important steps in class action administration is creating and maintaining accurate class lists. Based on the client's needs, we develop a custom database to hold all the class member's pertinent data.

Our Information Technology Specialists can:
*» Convert most data formats for use in the class database*

*» Database Management and Design*

*» Website Design and Updates*

*» Design custom reports for clients based on class data*

*» Removal of duplicate records*

*» Class-wide loss calculations*

## CLAIMS PROCESSING

Our staff is well trained in all aspects of claims processing, with a focus on quality control and customer service. Each claim is reviewed in detail to ensure compliance with all settlement requirements. Using our custom built software, we ensure each claim is calculated accurately and quickly. The scope of our work includes, but is not limited to the following:

» Determining the validity of each claim filed

» Calculation of losses for each claim

» Communication with claimants to cure invalid claims

» Quality assurance for all high value claims

» Final reporting to Counsel and the Court

» Electronic Claim Processing

During the administration process we are in constant communication with counsel concerning all matters. We provide regular status reports from the initial mailing through the final disposition of funds.