**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CHANGYOU.COM LIMITED SECURITIES LITIGATION | Case No. 1:21-cv-07858-GHW<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**
<u>**AND PLAN OF ALLOCATION**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT ............................................................................................................................2

I.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
    ADEQUATE, AND WARRANTS FINAL APPROVAL .................................................2

    A.  The Law Favors and Encourages Settlement of Class Action Litigation.....................2

    B.  The Standards for Final Approval ................................................................................2

    C.  Lead Plaintiff and Lead Counsel Have Adequately Represented the
        Settlement Class ...........................................................................................................4

    D.  The Settlement Was Reached After Arm's-Length Negotiations ................................6

    E.  The Relief Provided by the Settlement Is Adequate ....................................................6

        1.  The Complexity, Expense, and Likely Duration of the Litigation Support
            Approval of the Settlement ...................................................................................7

        2.  The Risks of Establishing Liability and Damages Support Approval of
            the Settlement.........................................................................................................8

            (a)  Risks with Respect to Settling Defendants' Motion to Dismiss .................9

            (b)  Risks Related to Proving Liability: Falsity and Scienter ...........................10

            (c)  Risks Related to Proving Loss Causation and Damages ............................11

            (d)  The Risks of Achieving and Maintaining Class Certification ...................13

    F.  The Effective Process for Distributing Relief to the Settlement Class .......................14

    G.  The Request for Attorneys' Fees and Expenses Is Reasonable...................................16

    H.  The Relief Provided in the Settlement Is Adequate Taking Into Account All
        Agreements Related to the Settlement ........................................................................16

    I.  Application of the Remaining *Grinnell* Factors Supports Approval...........................17

        1.  The Ability of Defendants to Withstand a Greater Judgment.............................17

        2.  The Reaction of the Settlement Class to Date .....................................................17

3.    The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement ...................................................18

4.    The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Approval of the Settlement ....................................................................19

II.    THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED .............................................................................................................20

III.    NOTICE SATISFIED RULE 23 AND DUE PROCESS ...................................................22

CONCLUSION..................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972)......................................................................................................14

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ........................................................................................8

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)......................................................................................................13

*In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)....................................................................4, 7, 17, 20

*Christine Asia Co., Ltd. v. Yun Ma*,
  No. 1:15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................14

*In re Citigroup Inc. Sec. Litig.*,
  No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ..................................3

*City of Detroit v. Grinnell Corp.*
  495 F.2d 448 (2d Cir. 1974)....................................................................................3, 4, 8, 17

*City of Providence v. Aeropostale Inc. et al.*,
  No. 11-cv-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot
  v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) ...............................................................6

*Ebbert v. Nassau Cnty.*,
  No. 05-5445, 2011 WL 6826121 (E.D.N.Y. Dec. 22, 2011)..................................................14

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F.
  App'x. 37 (2d Cir. 2016) ......................................................................................6, 7

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................20, 21

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ....................................................................................22

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..............................................................................................3

*In re Gilat Satellite Networks, Ltd.*,
　　No. 02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ......................................................7

*Haideri v. Jumei Int'l Holding Ltd., et al.*,
　　20-cv-02751-EMC, 2021 WL 4170791 (N.D. Cal. Sept. 14, 2021)................................ *passim*

*Hicks v. Morgan Stanley*,
　　No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..............................20

*In re IMAX Sec. Litig.*,
　　283 F.R.D. 178 (S.D.N.Y. 2012) ..............................................................................13, 20, 21

*In re Initial Pub. Offering Sec. Litig.*,
　　671 F. Supp. 2d 467 (S.D.N.Y. 2009)...................................................................................7, 21

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
　　No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)......................20

*In re Marsh & McLennan Cos. Sec. Litig.*,
　　No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................24

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
　　246 F.R.D. 156 (S.D.N.Y. 2007) ............................................................................................20

*In re Merrill Lynch Inc. Research Reports Sec. Litig.*,
　　No. 02-MDL-1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ............................................23

*Newman v. Stein*,
　　464 F.2d 689 (2d Cir. 1972)....................................................................................................19

*In re PaineWebber Ltd. P'ships Litig.*,
　　171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)..............................19, 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
　　330 F.R.D. 11 (E.D.N.Y. 2019)..............................................................................................4, 7

*In re Polaroid ERISA Litig.*,
　　240 F.R.D. 65 (S.D.N.Y. 2006) .................................................................................................5

*In re PPDAI Grp. Inc. Sec. Litig.*,
　　No. 18-CV-6716 (TAM), 2022 WL 198491 (E.D.N.Y. Jan. 21, 2022).....................................4

*Robbins v. Koger Props., Inc.*,
　　116 F.3d 1441 (11th Cir. 1997) .................................................................................................8

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
　　258 F. Supp. 2d 254 (S.D.N.Y. 2003).........................................................................................8

iv

*Teachers Ret. Sys. of La. v. A.C.L.N. Ltd.*,
   No. 01-cv-011814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .........................................19

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ...........................................................................8, 10, 13

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05-cv-01695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007).......................................5, 17

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................................................2, 3, 6, 22

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06-cv-11515, 2009 WL 2025160 (S.D.N.Y. July 10, 2009)...........................................18

*Wong v. Arlo Techs., Inc.*,
   No. 19-cv-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ..................................20

**Docketed Cases**

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 5:15-cv-04883-BLF (N.D. Cal. July 22, 2019)..............................................................20

*In re Mindbody, Inc. Sec. Litig.*,
   1:19-cv-08331 (S.D.N.Y. Oct. 27, 2022)..............................................................................19

**Statutes**

15 U.S.C. § 78u-4(a)(7) ....................................................................................................23

**Rules**

Fed. R. Civ. P.  23 ................................................................................................................4

Fed. R. Civ. P. 23(a) ..........................................................................................................15

Fed. R. Civ. P. 23(b)(3)......................................................................................................15

Fed. R. Civ. P. 23(c)(1)(C) ................................................................................................14

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................24

Fed. R. Civ. P.  23(e) ...................................................................................................2, 4, 22

Fed. R. Civ. P. 23(e)(2).....................................................................................................3, 4

Fed. R. Civ. P. 23(e)(2)(A) ..................................................................................................4

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................................................6

Fed. R. Civ. P. 23(e)(2)(C) ...............................................................................................7, 14, 15

Fed. R. Civ. P. 23(e)(2)(C)(iv)..................................................................................................16

Fed. R. Civ. P. 23(e)(3)..............................................................................................................3

Court-appointed Lead Plaintiff ODS Capital LLC ("Lead Plaintiff"), on behalf of itself and the proposed Settlement Class, respectfully submits this memorandum of law in support of its motion for: (i) final approval of the proposed Settlement of the above-captioned action (the "Action"); (ii) approval of the proposed Plan of Allocation for distribution of the Net Settlement Fund; and (iii) final certification of the Settlement Class.[1]

## PRELIMINARY STATEMENT

As set forth in the Stipulation, Lead Plaintiff has agreed to settle all claims asserted, or that could have been asserted, and related claims against the Released Defendant Parties in exchange for $1,075,000 (the "Settlement Amount"), for the benefit of the Settlement Class.  The terms of the Settlement are detailed in the Stipulation, which was executed on March 28, 2022. ECF No. 49-1.

Lead Counsel, which has extensive experience and expertise in prosecuting securities class actions, believes that the Settlement represents a favorable resolution of this complex litigation in light of the specific risks of continued litigation, particularly the challenges in prevailing on Defendants' Motion to Dismiss the Complaint (pending at the time the Parties agreed to settle), in certifying the class in this case, and the risks of failing to survive Defendants' likely summary judgment motions focused on falsity, scienter, materiality, and

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated March 28, 2022 (the "Stipulation") (ECF No. 49-1).  Citations to "¶" in this memorandum refer to paragraphs of the Declaration of Carol C. Villegas in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses (the "Villegas Declaration" or "Villegas Decl."), filed herewith, unless otherwise noted.

All exhibits are annexed to the Villegas Declaration.  For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___."  The first numerical

damages, particularly given the decision in *Haideri v. Jumei Int'l Holding Ltd., et al.,* 20-cv-02751-EMC, 2021 WL 4170791 (N.D. Cal. Sept. 14, 2021), where the court granted a motion to dismiss and rejected claims based on highly similar facts.

Lead Plaintiff, a sophisticated institutional investor that was actively involved in the Action, diligently represented the class and has approved the Settlement. *See* Declaration of Hilary Shane on Behalf of ODS Capital LLC. Ex. 1. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement. In addition, the Plan of Allocation, which was developed by Lead Counsel with the assistance of Lead Plaintiff's experts, is a fair and reasonable method for distributing the Net Settlement Fund and should also be approved by the Court.

## ARGUMENT

I. **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND WARRANTS FINAL APPROVAL**

A. **The Law Favors and Encourages Settlement of Class Action Litigation**

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'").[2] This policy would be well-served by approval of the Settlement of this complex securities class action, which absent resolution could consume years of additional resources of this Court and, likely, the Court of Appeals for the Second Circuit.

B. **The Standards for Final Approval**

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement

---

reference is to the designation of the entire exhibit attached to the Villegas Declaration and the second reference is to the exhibit designation within the exhibit itself.

2

must be presented to the Court for approval. The Settlement should be approved if the Court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In ruling on final approval of a class settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms. *See Wal-Mart Stores*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014).

Pursuant to the amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

(A)     whether the class representatives and class counsel have adequately represented the class;

(B)     whether the proposal was negotiated at arm's length;

(C)     whether the relief provided for the class is adequate, taking into account:

      i.     the costs, risks, and delay of trial and appeal;

      ii.     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      iii.     the terms of any proposed award of attorneys' fees, including timing of payment; and

      iv.     any agreement required to be identified under Rule 23(e)(3); and

(D)     whether the proposal treats class members equitably relative to each other.

In *City of Detroit v. Grinnell Corp.*, the Second Circuit held that the following factors should be considered in evaluating a class action settlement:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of

---

[2] All internal quotations and citations are omitted unless otherwise stated.

establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265-66 (S.D.N.Y. 2012).   The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the Rule 23 factors are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendments.   Indeed, "[t]he Court understands the new Rule 23(e) factors to add to, rather than displace, the [Second Circuit] factors."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019); *see also In re PPDAI Grp. Inc. Sec. Litig.,* No. 18-CV-6716 (TAM), 2022 WL 198491, at *8 n.10 (E.D.N.Y. Jan. 21, 2022) (noting the significant overlap between the relevant Second Circuit case law and the Rule 23(e)(2) factors).

Accordingly, Lead Plaintiff will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to the Rule 23(e)(2) factors and will also discuss the application of relevant, non-duplicative factors traditionally considered by the Second Circuit.

C.     **Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class**

In determining whether to approve a class action settlement, the court should consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).   There can be little doubt that Lead Plaintiff and Lead Counsel have

adequately represented the Settlement Class.  Lead Plaintiff, like all other members of the Settlement Class, was allegedly defrauded into holding onto the Company's ADSs and/or selling them during the Class Period, for less than the fair value of those shares.  Thus, the claims of the Settlement Class and Lead Plaintiff would prevail or fail in unison, and the common objective of maximizing recovery from Defendants aligns the interests of Lead Plaintiff and all members of the Settlement Class.  *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Moreover, Lead Plaintiff is a sophisticated and knowledgeable institutional investor that was an active and informed participant in the litigation and, among other things: (i) provided valuable contributions to the development of the core case theory given its Managing Member's advanced degree in finance and experience with issues concerning mergers and appraisal rights; (ii) had regular in-person, telephonic, and written communications with Lead Counsel concerning the Action; (iii) remained fully informed regarding case developments; (iv) reviewed pleadings and motions filed in the Action; and (v) closely monitored and participated in settlement discussions, ultimately agreeing to accept the Settlement, subject to the Court's approval.  *See* Ex. 1 at ¶4.  A settlement reached "with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness."  *In re Veeco Instruments Inc. Sec. Litig.*, No. 05-cv-01695, 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

Throughout the Action, Lead Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases.  During the course of the litigation, Lead Counsel developed a deep understanding of the facts of the case

and the merits of the claims.  *See generally* Villegas Declaration.  Moreover, Labaton Sucharow is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 4-C) and was able to successfully conduct the litigation against skilled opposing counsel.[3] Accordingly, the Settlement Class has been, and remains, well represented.

### D.      The Settlement Was Reached After Arm's-Length Negotiations

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d Cir. 2016).

The Settlement here merits such a presumption of fairness because it was achieved after thorough arm's-length negotiations between well-informed and experienced counsel.  ¶18.  The Parties and their counsel had a well-honed understanding of the strengths and weaknesses of the case before agreeing to settle.  The judgment of Lead Counsel—a law firm that is highly experienced in securities class action litigation—that the Settlement is in the best interests of the Settlement Class is also entitled to "great weight."  *City of Providence v. Aeropostale Inc. et al.*, No. 11-cv-7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015).

### E.      The Relief Provided by the Settlement Is Adequate

The Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant

---

[3] Defendants were represented by well-regarded firms, Goulston & Storrs, PC and Skadden,

factors. Fed. R. Civ. P. 23(e)(2)(C).   "This assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.

**1.      The Complexity, Expense, and Likely Duration
of the Litigation Support Approval of the Settlement**

Securities class actions like this one are by their nature highly complex, and district courts have long recognized that "[a]s a general rule, securities class actions are notably difficult and notoriously uncertain to litigate."  *In re Facebook,* 2015 WL 6971424, at *3; *Bear Stearns,* 909 F. Supp. 2d at 266; *In re Gilat Satellite Networks*, *Ltd*., No. 02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute.").

This case was no exception.  As discussed in the Villegas Declaration, the case involved, among other things, unique and intricate issues related to falsity, scienter, materiality, loss causation, and damages in connection with alleged misrepresentations regarding the availability of appraisal rights in Changyou's going-private Merger.  Surviving the Motion to Dismiss, certifying a class, prevailing on summary judgment, and then achieving a litigated verdict (and sustaining any such verdict on appeal) would have been very uncertain undertakings.  *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense, and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable").

---

Arps, Slate, Meagher & Flom LLP.

7

The trial of the claims here would have required extensive expert testimony on issues related to, among other things, appraisal rights under the law of the Cayman Islands, the fair value of Changyou ADSs, and damages under the Exchange Act.  Courts have observed that these sorts of disputes—requiring dueling testimony from experts—are particularly difficult for plaintiffs to litigate.  *See*, *e.g.*, *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited…").  Of course, even if Lead Plaintiff had prevailed at summary judgment and then trial, it is virtually certain that appeals would be taken, which would have, at best, delayed any recovery.  *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery.").  At worst, there was of course the possibility that the verdict could be reversed by the trial court or on appeal.  *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation).

### 2.    The Risks of Establishing Liability and Damages Support Approval of the Settlement

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages."  *Grinnell*, 495 F.2d at 463.  In most cases, this will be a principal factor for a court to consider in its analysis of a proposed settlement.  *See Id.* at 455 ("The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.").  While

8

Lead Plaintiff and Lead Counsel believe the claims asserted against Defendants are strong, they recognize that the Action presented several substantial obstacles with respect to the prospect of dismissal outright in connection with the Settling Defendants' Motion to Dismiss and, if the claims survived that motion, years of additional and risky litigation involving contested certification of the class, completion of fact and expert discovery, complex dueling summary judgment motions, trial, and inevitable appeals.

**(a)      Risks with Respect to Settling Defendants' Motion to Dismiss**

In order for the Settlement Class to recover anything in the Action, Lead Plaintiff would need to overcome the pending Motion to Dismiss.  It is well-known that securities fraud claims are frequently dismissed under the "strong inference of scienter" standard established by the PSLRA.  For example, according to the most recent analysis of securities class action settlements by NERA Economic Consulting, "[o]f the 239 cases resolved in 2021, 153 were dismissed and 86 resolved through a settlement. . . . Compared to 2020, there was an increase in both dismissed and settled non-merger-objection cases."[4] *See* McIntosh J. & Starykh S., *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*, at 1 & 11 (NERA January 25, 2022), Ex. 2.  Moreover, "[f]or each filing year since 2015, more cases have been resolved in favor of the defendant than have been settled." *Id*. at 12.

Here, there was a significant risk of immediate dismissal.  In particular, after the filing of this Action, a decision was issued in a case analogous to the instant Action, which was adverse to Lead Plaintiff's claims, *Jumei,* 2021 WL 4170791.  *Jumei* involved allegations very similar to those here, namely that a Chinese-based Cayman incorporated company allegedly falsely stated,

---

[4] NERA distinguishes between "merger-objection" cases and, like the instant Action, "non-merger-objection" cases.

9

among other things, that minority shareholders did not have appraisal rights in a short-form merger under Cayman law. In response to defendants' motion to dismiss, the Northern District of California dismissed the claims for failure to adequately plead scienter and loss causation. While not controlling, the *Jumei* decision put Lead Plaintiff's prospects of success here in doubt. ¶¶ 6, 30.

Even if the Action progressed beyond the Motion to Dismiss, Lead Plaintiff would of course still have to prove falsity, materiality, and scienter with sufficient evidence, and faced additional risks relating to its ability to prove loss causation and damages.

### (b)    Risks Related to Proving Liability: Falsity and Scienter

At summary judgment and trial, Defendants would strenuously maintain that Lead Plaintiff could not establish that Defendants' statements were false and misleading or that Defendants acted with scienter as required by the Exchange Act. "Proving a defendant's state of mind is hard in any circumstances." *Telik,* 576 F. Supp. 2d at 579. Indeed here, Lead Plaintiff must establish that Defendants knew (or believed) or were reckless in not knowing (or reckless in not believing) that their statements were false.

Defendants would have likely argued that the relevant statements – concerning the exercise of appraisal rights – were inactionable legal opinions and immaterial as a matter of law. Had Lead Plaintiff prevailed in showing that the statements were not *per se* inactionable, Settling Defendants would also likely argue that the "opinions" offered were inactionable because they were honestly held. While Lead Plaintiff had arguments in response, the underlying legal issue – the right to appraisal in short form mergers under Cayman law – was not firmly decided under Cayman law at the time of Defendants' statements, and so it would be challenging to show they did not or could not have held the stated belief. Indeed, the issue is still unsettled as Changyou has continued to pursue appeals from the initial Cayman opinion finding the existence of such

appraisal rights, creating a further risk that both (a) Lead Plaintiff would fail to demonstrate Defendants did not believe the statement and (b) that an adverse ruling on appeal could actually find the rights were as Defendants claimed in the Merger documents. ¶32.

Proving scienter would also be a significant challenge for Lead Plaintiff. Lead Plaintiff believes it could marshal evidence that supported the inference that Defendants understood their public statements were false or at least incomplete. However, Settling Defendants would have argued that this evidence was insufficient to establish that the inference of fraudulent intent was more compelling than the alternative. Lead Plaintiff would also argue that Defendants had a motive and opportunity to defraud based on their ability to profit through the Merger, but Settling Defendants would have arguments that this allegation was too generalized to meet Lead Plaintiff's burden to establish scienter. ¶33.

In short, it was far from certain that Lead Plaintiff would be able to prove the falsity of Defendants' statements and Defendants' scienter, particularly through summary judgment and at trial, militating in favor of a settlement.

### (c)    Risks Related to Proving Loss Causation and Damages

Damages in the Action would depend upon a factual determination of the value of the Changyou shares held and sold by class members. Estimated damages ranged from $32.6 million to $317 million, and of course the Settling Defendants would maintain that there were no damages. ¶¶5, 22-28. Loss causation and damages were expected to be especially contested, and there was a substantial risk that Lead Plaintiff would not have succeeded at establishing even the low end of its estimate ($32.6 million), even if Lead Plaintiff succeeded in establishing that Defendants made materially false statements or omissions with the requisite mental state.

Although Lead Plaintiff believes the evidence would establish that Defendants' allegedly false denial of appraisal rights prevented class members from obtaining fair value for their

11

shares, proving that the value of Changyou ADSs was higher than the prices class members received when they sold the ADSs, or that class members held ADSs to their detriment, would have been very difficult and complex, and would have been hotly contested by the Parties' respective experts. Although Lead Plaintiff was confident expert opinion and testimony would have supported its claims that the Company's fair value exceeded the prices members of the class sold their shares for during the Class Period, in connection with a summary judgment challenge and at trial, defendants would have put forth their own experts who would strenuously argue to the contrary. Ultimately, the fair value of the ADSs would have been the subject of a complex and widely divergent "battle of the experts" and up to a jury to decide, with no certainty that Lead Plaintiff's experts would be credited over defendants." ¶¶35-36.

Lead Plaintiff's $317 million estimate is a result of multiplying the estimated number of Allegedly Damaged ADS Sold (21,904,457) by the Estimated Damages Per ADS ($14.45). ¶27. Alternatively, academic research indicates that in recent years (2015-2019), average returns to investors through appraisal litigation has been approximately 13.2%. Here, applying a 13.2% increase in share price to the $10.80 Deal Price as the estimated fair value (*i.e.*, $12.23), and using the same methodology as above, would imply class-wide damages of approximately $32.6 million (*i.e.,* taking the estimated $12.23 fair value per ADS, subtracting the $10.74 average sale price to determine an estimated damage per ADS (*i.e.,* $1.49) and then multiplying the result by the 21,904,457 Allegedly Damaged ADS Sold). ¶28 and ECF No. 56.

Moreover, following the filing of this case, a decision was reached in *Jumei*, 2021 WL 4170791, which addressed allegations very similar to those here, namely that a Chinese-based Cayman incorporated company allegedly falsely stated, among other things, that minority shareholders did not have appraisal rights in a short-form merger under Cayman law. In

12

response to defendants' motion to dismiss, the Northern District of California dismissed the claims for failure to adequately plead scienter and loss causation, rejecting loss causation arguments premised on "true value" as "speculative." *Id*. at *23.   Accordingly, there was a substantial risk that Lead Plaintiff would not have succeeded at establishing even the low end of its estimate.

While Lead Counsel would work extensively with Lead Plaintiff's valuation and damages experts with a view towards presenting compelling arguments to the jury and prevailing at trial, Defendants would have put forth well-qualified experts of their own who were likely to opine that the class suffered little or no damages.   As Courts have long recognized, the substantial uncertainty as to which side's experts might be credited by a jury presents a serious litigation risk.  *See In re IMAX Sec. Litig.*, 283 F.R.D. 178, 193 (S.D.N.Y. 2012) ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *Telik,* 576 F. Supp. 2d at 579-80 (in this "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found…").

Given all of these risks with respect to liability, loss causation, and damages, Lead Plaintiff and Lead Counsel respectfully submit that it is in the best interests of the Settlement Class to accept the certain and substantial benefit conferred by the Settlement.

### (d)    The Risks of Achieving and Maintaining Class Certification

Lead Plaintiff had not yet moved for class certification at the time the Settlement was reached.  However, Settling Defendants would have undoubtedly challenged certification with respect to reliance, arguing that Lead Plaintiff could not establish class wide reliance in connection with the allegedly false statements, because Lead Plaintiff would not be able to rely on the fraud-on-the market presumption set forth in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)

13

based on the characteristics of the market for Changyou ADSs during the Class Period, or rely on *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), given a lack of alleged omissions. There was significant uncertainty with respect to how the Court would rule on these matters or whether certification would be maintained through a potential appeal and a trial. The Court could have revisited certification at any time prior to judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) (authorizing a court to decertify a class at any time); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) (this risk weighed in favor of final approval because "a class certification order may be altered or amended any time before a decision on the merits"). The Settlement avoids any uncertainty with respect to class certification and the risks of maintaining certification of the Settlement Class through trial and on appeal. *See Ebbert v. Nassau Cnty.*, No. 05-5445, 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) (risk of de-certification of the certified class supported approval of Settlement).[5]

**F.      The Effective Process for Distributing Relief to the Settlement Class**

Rule 23(e)(2)(C) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, Strategic Claims Services ("SCS"). The Claims Administrator is employing a well-tested protocol for the processing of claims in a securities class action. Namely, a potential class member can submit,

---

[5] In the Preliminary Approval Order (ECF No. 58), the Court preliminarily certified the Settlement Class. There have been no developments in the case that would undermine that determination and, for all the reasons stated in the Memorandum of Law in Support of Lead Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement (ECF No. 48), Lead Plaintiff now requests that the Court reiterate its prior certification of the Settlement Class

14

either by mail or online using the Claims Administrator's website, the Court-approved Claim Form.  Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible claimant's *pro rata* portion of the Net Settlement Fund.  *See* Stipulation at ¶23.  Lead Plaintiff's claims will be reviewed in the same manner.  Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims.  *Id*. at ¶28(d)-(e).  Any claim disputes that cannot be resolved will be presented to the Court.  *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶37) and the claims process is completed, Authorized Claimants will be issued payments.  If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses).  Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  Thereafter, any *de minimis* balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of any outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to Consumer Federation of American ("CFA"), a non-sectarian, not-for-profit, charitable organization serving the public interest, or such other non-sectarian, not-for-profit

---

pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes, and the appointment of Lead Plaintiff as Class Representative and Labaton Sucharow as Class Counsel.

charitable organization approved by the Court. *Id*. at ¶25.[6]

### G.   The Request for Attorneys' Fees and Expenses Is Reasonable

As discussed in the accompanying Fee Memorandum, the proposed attorneys' fees of 30% of the Settlement Fund, to be paid as ordered by the Court, are reasonable in light of the efforts of Lead Counsel and the risks in the litigation. Most importantly with respect to the Court's consideration of the fairness of the Settlement, is the fact that approval of attorneys' fees is entirely separate from approval of the Settlement, and neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees and/or litigation expenses.

### H.   The Relief Provided in the Settlement Is Adequate Taking Into Account All Agreements Related to the Settlement

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the Parties in connection with the proposed Settlement. On March 28, 2022, the Parties entered into the Stipulation and a confidential Supplemental Agreement Regarding Requests for Exclusion, (the "Supplemental Agreement"). *See* Stipulation at ¶39(a). The Supplemental Agreement sets forth the conditions under which Settling Defendants have the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is being kept

---

[6] CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education before the judiciary, Congress, the White House, federal and state regulatory agencies, and state legislatures. See generally www.consumerfed.org. With respect to victims of financial fraud, CFA has an Investor Protection program that works nationwide to promote consumer-oriented policies that safeguard investors against fraud through: (i) the development of educational material for investors; (ii) drafting policies and legislation; (iii) and providing testimony and comments on legislation and regulations. See www.consumerfed.org/issues/ investor-protection. CFA has been approved as a *cy pres* beneficiary in numerous securities settlements, including *In re Broadcom*

confidential in order to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class. The Supplemental Agreement and the Stipulation are the only agreements concerning the Settlement entered into by the Parties.

## I.     Application of the Remaining *Grinnell* Factors Supports Approval

### 1.     The Ability of Defendants to Withstand a Greater Judgment

The ability of a defendant to pay a judgment greater than the amount offered in settlement is relevant to whether the settlement is fair.  *Grinnell*, 495 F.2d at 463.  While it is Lead Plaintiff's understanding that Defendants could withstand a judgment in excess of $1.075 million, courts generally do not find the ability of a defendant to withstand a greater judgment to be an impediment when the other factors favor the settlement.  *See, e.g., Veeco*, 2007 WL 4115809, at *11 ("this factor alone does not prevent the Court from approving the Settlement where the other *Grinnell* factors are satisfied").

### 2.     The Reaction of the Settlement Class to Date

The reaction of the class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy.  *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 266-67.  Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, SCS, provided copies of the Postcard Notice to potential Settlement Class Members and their nominees.  *See* Declaration of Margery Craig Concerning (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; (C) Mailing of CAFA Notice; and (D) Report on Requests for Exclusion Received to Date ("Mailing Decl."), Ex. 3 at ¶¶2-10.  As of December 21, 2022, SCS has provided Postcard Notices to 6,934 potential Settlement Class Members and

---

*Corp. Sec. Litig*., No. 01-CV-00275-MLR (C.D. Cal.), *DePalma v. Rent-A-Center, et al*., No. 16-

nominees. *Id*. at ¶9. In addition, the Summary Notice was published in *Investor's Business Daily* on August 1, 2022 and transmitted over the internet using *Globe Newswire* on August 1, 2022. *Id*. at ¶11. SCS also maintains a webpage for the Settlement on its website, www.StrategicClaims.net/Changyou, which is available 24 hours a day and provides basic information about the Settlement and its deadlines, posts downloadable copies of the long-form Notice, Claim Form, and Stipulation, and contains a claim submission portal.

While the deadline set by the Court for Settlement Class Members to object (January 6, 2023) has not yet passed, to date, no objections to the Settlement or Plan of Allocation have been received and no requests for exclusion have been received. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2009 WL 2025160, at *2 (S.D.N.Y. July 10, 2009) (no class member objections since preliminary approval supported final approval). As provided in the Preliminary Approval Order, Lead Plaintiff will file reply papers no later than January 20, 2023, addressing any objections and any requests for exclusion.

### 3. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlement

Here, as detailed in the Villegas Declaration, Lead Counsel conducted a thorough investigation that included among other things, analyzing documents filed publicly by the Company with the SEC, as well as publicly available information, such as press releases, news articles, and other public statements issued by or concerning the Company and Defendants; research reports issued by financial analysts concerning the Company; and the applicable law governing the claims and potential defenses. In addition, Lead Counsel worked with an expert on valuation issues to assess whether Changyou's fair value exceeded the price paid in the Merger, which required detailed analysis of Changyou's business based on publicly available

---

CV-00978, ECF No. 130 (E.D. Tex.).

documents and complex valuation work.  Lead Plaintiff then prepared a comprehensive amended complaint followed by a second amended complaint after the case was transferred to the S.D.N.Y, was preparing an opposition to Defendants' Motion to Dismiss, and prepared for and participated in an arm's-length settlement process.  *See generally* Villegas Decl. at §III.

Armed with this substantial base of knowledge, Lead Plaintiff was in a position to balance the proposed settlement with a well-educated assessment of the likelihood of overcoming the risks of litigation.  Accordingly, Lead Plaintiff and Lead Counsel respectfully submit that they had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial.  *Teachers Ret. Sys. of La. v. A.C.L.N. Ltd.*, No. 01-cv-011814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004).  The Court thus should find that this factor also supports approval.

4.  **The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All the Attendant Risks of Litigation Support Approval of the Settlement**

Courts agree that the determination of a "reasonable" settlement "is not susceptible [to] a mathematical equation yielding a particularized sum."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Instead, "in any case there is a range of reasonableness with respect to a settlement…."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  Here, as discussed above and in the Villegas Declaration (*see* ¶¶5, 22-28), the Settlement recovers up to approximately 3.3% of the estimated range of likely recoverable damages, depending on a factual determination of the value of Changyou shares.

This recovery falls within the range of reasonableness that courts within the Second Circuit have approved.  *See, e.g.*, *In re Mindbody, Inc. Sec. Litig.*, 1:19-cv-08331, ECF No. 144 (S.D.N.Y. Oct. 27, 2022) (approving $9.75 million settlement representing 2.2% of maximum

19

estimated damages) (Ex. 6);[7] *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages [and] within the range of reasonableness for recovery in the settlement of large securities class actions"); *Hicks v. Morgan Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (approving $10 million settlement representing 3.8% of estimated damages).

Courts in other jurisdictions have approved similar recoveries in other securities class action settlements. *See, e.g., Wong v. Arlo Techs., Inc.,* No. 19-cv-00372-BLF, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (approving settlement representing 2.35% of estimated total damages, assuming lead plaintiff was successful on all issues of liability and damages); *In re Extreme Networks, Inc. Sec. Litig.*, No. 5:15-cv-04883-BLF (N.D. Cal. July 22, 2019) (ECF Nos. 182 & 183) (Ex. 6) (approving settlement representing recovery between approximately 3% and 7% of estimated damages); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing about 3.5% of estimated damages, noting that the "amount [was] within the median recovery in securities class actions").

## II. THE PLAN OF ALLOCATION FOR THE PROCEEDS OF THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation with a "rational basis" satisfies this requirement. *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *21 (S.D.N.Y. Nov.

---

[7] Exhibit 6 is a compendium of unreported slip opinions referenced herein.

8, 2010); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 497. A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See IMAX*, 283 F.R.D. at 192. However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision." *PaineWebber*, 171 F.R.D. at 133.

Here, the proposed Plan, which was developed by Lead Counsel in consultation with Lead Plaintiff's experts, provides a fair and reasonable method to allocate the Net Settlement Fund among class members who submit valid claims. The Plan is set forth in full in the long-form Notice, which was posted on the Claims Administrator's website. *See* Ex. 3-B at ¶¶54-66. The Plan provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on their "Recognized Loss Amounts," calculated according to the Plan's formulas. Recognized losses will be calculated by the Claims Administrator and are based on the shares held and/or sold during one of three periods of time. As set forth in the Villegas Declaration, and as previously provided to the Court (*see* ECF No. 56), the proposed Plan of Allocation attributes losses based on three types of transactions.

Type A recognized losses are based on ADS that were held on April 23, 2020 and sold on April 23, 2020 or tendered in the Merger. Type B recognized losses are based on ADS that were held at the start of the Class Period and sold during the Class Period. Type C recognized losses are based on ADS that were purchased on or after Feb. 19, 2020 and sold from Feb. 19, 2020 through April 22, 2020. Losses for each category are based on the difference between the estimated nominal fair value of the ADS and the price at which the ADS was disposed of. The nominal fair value in the Plan of Allocation ($38.26) is an estimated value assigned for purposes of deriving the per share loss and *pro rata* allocation. ¶¶51-54. (Defendants had no role in developing the Plan of Allocation.)

21

The *pro rata* recovery any given claimant will receive will be determined based on that claimant's recognized loss amount as a portion of the total estimated losses of all claimants. Because the same estimated nominal fair value is used in each loss category, and the Settlement is divided *pro rata* (with the exception of the cap applied to Type C), increasing or decreasing the nominal fair value within a reasonable range would not result in materially greater or smaller recovery amounts for each claimant. In other words, increasing the nominal fair value increases each claimants' recognized loss, but also increases the total recognized losses. The claimant-specific numerator and class-wide denominator move in the same direction, leaving the *pro rata* recovery calculation relatively unchanged. ¶52.

Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"). Moreover, as noted above, to date, no objections to the proposed plan have been received.

## III. NOTICE SATISFIED RULE 23 AND DUE PROCESS

Lead Plaintiff has provided members of the Settlement Class who could be identified through reasonable effort with notice of the proposed Settlement through a mailed/emailed Postcard Notice, website long-form Notice, and published Summary Notice. *See generally* Mailing Decl., Ex. 3. It is respectfully submitted that the notice program satisfied all the requirements of Rule 23(e) and due process, which require that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114. As courts have explained, "[n]otice need not be perfect, but need be only the best notice practicable under the circumstances, and each and

22

every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *In re Merrill Lynch Inc. Research Reports Sec. Litig.*, No. 02-MDL-1484, 2007 WL 313474, at *8 (S.D.N.Y. Feb. 1, 2007) (citing *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)).  Both the substance of the notice program and the method of its implementation satisfied these standards.

The notices provided all of the information necessary for Settlement Class Members to make an informed decision regarding the Settlement, the Fee and Expense Application, and the Plan of Allocation.  The notices collectively informed Settlement Class Members of, among other things: (i) the amount of the Settlement; (ii) the estimated average recovery per affected share of Changyou ADSs; (iii) the reasons why the Parties are proposing the Settlement; (iv) the maximum amount of attorneys' fees and expenses that will be sought; (v) the right of Settlement Class Members to object to the Settlement or seek exclusion; and (vi) the binding effect of a judgment on Settlement Class Members.  *See* 15 U.S.C. § 78u-4(a)(7).  *See* Ex. 3-A and B.  The notices also provided information about how to submit a Claim Form.

SCS mailed and/or emailed the Postcard Notice to all members of the Settlement Class who could be identified, using information provided by Changyou's transfer agent and names and addresses (or emails if available) provided by banks, brokers, and other nominees.  Ex. 3 at ¶¶3-10.  SCS caused the Summary Notice to be published in *Investor's Business Daily* and to be released over the internet using *Globe Newswire.*  Ex. 3 at ¶11.  SCS also maintains a webpage for the Settlement, www.strategicclaims.net/Changyou, that provides information about the Settlement and its deadlines, as well as access to downloadable copies of the long-form Notice, the Claim Form, Stipulation, and the Preliminary Approval Order (*id*. at ¶13).  Lead Counsel also posted copies of the long-form Notice and Claim Form and Stipulation on its website.  ¶90.

This combination of individual notice to those who could be identified with reasonable effort, supplemented by publication and internet notice, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-8144, 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

<u>**CONCLUSION**</u>

Lead Plaintiff respectfully requests that the Court grant final approval of the proposed Settlement, approve the proposed Plan of Allocation, and finally certify the Settlement Class for purposes of the Settlement only. Proposed orders will be submitted with the reply papers, after the deadlines for objecting or seeking exclusion have passed.

Dated:  December 22, 2022          Respectfully submitted,

**LABATON SUCHAROW LLP**

*/s/ Carol C. Villegas*
Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway, 34th Floor
New York, NY  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
cvillegas@labaton.com
dschwartz@labaton.com
jbissell-linsk@labaton.com

*Lead Counsel for ODS Capital LLC. and the Proposed Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 22, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

<u>/s/ <i>Carol C. Villegas</i></u>
CAROL C. VILLEGAS
