**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CHANGYOU.COM LIMITED SECURITIES LITIGATION | Case No. 1:21-cv-07858-GHW <br><br> CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES**
**AND PAYMENT OF EXPENSES**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT....................................................................................................................3

I.    THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE
      PERCENTAGE OR LODESTAR METHOD...............................................................3

      A.    The Requested Attorneys' Fee Would Be Reasonable Under the
            Percentage-of-the-Fund Method ...............................................................3

      B.    Fees Awarded in Comparable Cases Within this District........................4

      C.    The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar
            Method ....................................................................................................5

II.   THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING
      THE SECOND CIRCUIT'S FACTORS .....................................................................8

      A.    Lead Counsel's Time and Labor................................................................8

      B.    The Magnitude and Complexity of the Action Support the Requested Fee ............9

      C.    The Risks of the Litigation Support the Requested Fee ..........................9

      D.    The Quality of Lead Counsel's Representation Supports the Requested
            Fee...........................................................................................................11

      E.    The Requested Fee in Relation to the Settlement ...................................12

      F.    Public Policy Considerations Support the Requested Fee ......................12

III.  THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE
      REQUESTED FEE .................................................................................................13

IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ..................14

V.    REIMBURSEMENT TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-
      4(a)(4) ..................................................................................................................15

CONCLUSION.............................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,
MDL No. 03-1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272
F. App'x. 9 (2d Cir. 2008) ...................................................................................................12

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................................................................9

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
772 F.3d 125 (2d Cir. 2014)..................................................................................................16

*In re Bayer AG Sec. Litig.*,
No. 03-1546, 2008 WL 5336691 (S.D.N.Y. Dec. 15, 2008) ..................................................10

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................................6, 7

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................................3

*In re Bristol-Myers Squibb Sec. Litig.*,
361 F. Supp. 2d 229 (S.D.N.Y. 2005).....................................................................................5

*In re China Sunergy Sec. Litig.*,
No. 07 Civ. 7895 (DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)................................5

*City of Providence v. Aeropostale Inc.*,
No. 11-7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014), *aff'd. Arbuthnot v.
Pierson,* 607 F. App'x. 73 (2d Cir. 2015).............................................................................3, 9

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-cv-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010).....................................7, 9, 12

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)....................................7, 10, 12

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MD-2543, 2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020) ..........................................15

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................................11

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000).................................................................................................3, 8

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)...................................4, 6

*Hicks v. Morgan Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................11, 13, 15

*Luciano v. Olsten Corp.*,
   109 F.3d 111 (2d Cir. 1997).........................................................................................................6

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2008).......................................................................................13

*In re Marsh & McLennan Inc. Sec. Litig.*,
   No. 04-8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................7, 16

*Missouri v. Jenkins*,
   491 U.S. 274 (1989).....................................................................................................................6

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06 Civ. 4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ...................................4

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999).........................................................................................................4

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 16 cv 06728, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..................................................9

*Stefaniak v. HSBC Bank USA, N.A.*,
   No. 05-720, 2008 WL 7630102 (W.D.N.Y. June 28, 2008).........................................................4

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003).........................................................................................5

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................................................4, 6

*In re Veeco Instruments Inc. Sec. Litig.*,
   MDL No. 05-1695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007).......................................11, 12

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   No. 15-cv-1249, 2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018)...................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................................3, 4, 5, 7

*Wong v. Arlo Tech., Inc.*,
   No. 19-cv-00372-BLF, 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ...............................11, 12

**Docketed Cases**

*In re Akari Therapeutics PLC Sec. Litig.*,
　17-cv-03577 (KPF), slip op. (S.D.N.Y. Nov. 28, 2018) ..........................................................5

*Ark. Tchr. Ret. Sys. v. Bankrate*,
　No. 13-cv-7183, slip op. (S.D.N.Y Nov. 25, 2014) ...................................................................7

*In re China Mobile Games & Ent. Grp, Ltd. Sec. Litig.*,
　No. 14-CV-04471, slip op. (S.D.N.Y. Sept. 14, 2017) ............................................................5

*In re Mindbody, Inc. Sec. Litig.*,
　No. 1:19-cv-08331,(S.D.N.Y Oct. 27, 2022).........................................................................11

*In re Namaste Tech. Inc. Sec. Litig.*,
　No. 18-CV-10830-GHW, slip op. (S.D.N.Y. Mar. 11, 2020).................................................4, 5

*In re Silvercorp Metals Inc. Sec. Litig.*,
　No. 12-cv-09456-JSR, slip op. (S.D.N.Y. Feb. 13, 2015) .......................................................16

*Singh v. Tri-Tech Holding, Inc. et al.*,
　No. 13 CV-9031 (KMW), slip op. (S.D.N.Y. Oct. 16, 2015)....................................................5

*Stein v. Eagle Bancorp, Inc., et al.*,
　No. 1:19-cv-06873-LGS, slip op. (S.D.N.Y. Feb 10, 2022)...................................................16

**Statutes**

15 U.S.C. §78u-4(a)(4) ...............................................................................................................15

Court-appointed Lead Counsel, Labaton Sucharow LLP ("Labaton Sucharow"), respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees in the amount of 30% of the Settlement Fund.  Lead Counsel also seeks payment of $41,785.97 in litigation expenses that Lead Counsel reasonably incurred in prosecuting the Action, as well as $15,000 in reimbursement to Lead Plaintiff ODS Capital LLC ("Lead Plaintiff"), directly related to its representation of the Settlement Class, as authorized by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").[1]

## PRELIMINARY STATEMENT

The proposed Settlement, if approved by the Court, will resolve this case in its entirety in exchange for a $1,075,000 cash payment pursuant to the terms of the Stipulation.  The Settlement brings this Action to a close with a certain recovery, after litigation that included an international investigation, drafting comprehensive amended complaints, and expert analysis. The benefits of the Settlement are clear when weighed against the risk that the Settlement Class might recover nothing if litigation continued.  Settling Defendants had substantial defenses to liability.[2]  While Lead Plaintiff believes it had compelling counterarguments, there was a substantial risk, for example, that the Settling Defendants would prevail on their pending Motion

---

[1] Lead Counsel is simultaneously submitting the Declaration of Carol C. Villegas in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation and Lead Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses (the "Villegas Declaration") (cited herein as "¶").  Capitalized terms have the meanings ascribed to them in the Villegas Declaration or the Stipulation and Agreement of Settlement (ECF No. 49-1) (the "Stipulation").

All exhibits referenced below are attached to the Villegas Declaration.  For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Villegas Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

to Dismiss the Complaint. In addition to challenges with respect to falsity and scienter, Lead Plaintiff faced ongoing hurdles with respect to proving loss causation and damages. Finally, even if Lead Plaintiff succeeded in establishing both the Settling Defendants' liability, loss causation, and damages at trial, Defendants undoubtedly would have pursued appeals, which would have further delayed and threatened any recovery. The Settlement eliminates these risks while providing a certain recovery to the Settlement Class.

In the face of these challenges—as well as the fully contingent nature of the case—Lead Counsel devoted resources to prosecuting this Action against well-regarded opposing counsel. Among the other work detailed in the Villegas Declaration, Lead Counsel: (i) conducted an international investigation concerning the allegedly fraudulent misrepresentations and omissions; (ii) prepared and filed two amended class action complaints; and (iii) consulted with experts with respect to damages and loss causation issues, and dissenter shareholder rights under the law of the Cayman Islands. *See* Villegas Declaration at §III. At the time the Settlement was reached, Lead Counsel had a thorough understanding of the strengths and weaknesses of the Action.

Against this backdrop, Lead Counsel requests a fee of 30% of the Settlement Fund, which would represent a negative lodestar "multiplier" of approximately 0.76 (*i.e.,* 76% of Lead Counsel's lodestar), payment of Lead Counsel's litigation expenses in the amount of $41,785.97, and a service award pursuant to the PSLRA of $15,000 to Lead Plaintiff for the time and resources it dedicated to representing the class. As demonstrated below, the fee request is well within the range of attorneys' fees typically awarded in securities class actions of this size, and the fee and expense requests are well supported by both case law and the facts of this case. For

---

[2] Defendant Charles Zhang has not appeared in the Action and is not a party to the Settlement, but he is one of the Released Defendant Parties.

the following reasons, Lead Counsel respectfully submits that its efforts in this Action justify the requested fees and expenses.

<strong><u>ARGUMENT</u></strong>

**I.    THE REQUESTED FEE WOULD BE REASONABLE UNDER EITHER THE PERCENTAGE OR LODESTAR METHOD**

**A.    The Requested Attorneys' Fee Would Be Reasonable Under the Percentage-of-the-Fund Method**

It is well-established that attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The purpose of the common fund doctrine is to fairly and adequately compensate counsel for their creation of the fund and to ensure that all class members contribute equally towards the costs associated with litigation on their behalf. *See Id.* at 47.

Courts have recognized that, in addition to providing just compensation, "awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature." *City of Providence v. Aeropostale Inc.*, No. 11-7132, 2014 WL 1883494, at *11 (S.D.N.Y. May 9, 2014), *aff'd. Arbuthnot v. Pierson,* 607 F. App'x. 73 (2d Cir. 2015).

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (finding that the "trend in this Circuit is toward the percentage method" and that the method "directly aligns the interests of the class and its counsel

3

and provides a powerful incentive for the efficient prosecution and early resolution of litigation"); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) ("percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 & n.7 (S.D.N.Y. 2008) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.").[3]

**B.  Fees Awarded in Comparable Cases Within this District**

The 30% fee requested by Lead Counsel is in the range of percentage fees awarded within the Second Circuit.  *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.,* No. 12-CIV-8557 CM, 2014 WL 7323417, at \*12 (S.D.N.Y. Dec. 19, 2014) ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common fund."); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 WL 5851465, at \*5 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding over 30% and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); *Stefaniak v. HSBC Bank USA,  N.A.*, No. 05-720, 2008 WL 7630102, at \*3 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit").

A fee of 30% is within the range of percentage fees awarded in comparable class action settlements in the Second Circuit.  *See, e.g., In re Namaste Tech. Inc. Sec. Litig.*, No. 18-CV-10830-GHW, slip op. at 9 (S.D.N.Y. Mar. 11, 2020) (awarding 33.3% of $2.75 million

---

[3] All internal quotations and citations are omitted unless otherwise stated.

settlement) (J. Woods) (Ex. 6);[4] *In re China Mobile Games & Ent. Grp, Ltd. Sec. Litig.,* No. 14-CV-04471, slip op. at 3 (S.D.N.Y. Sept. 14, 2017) (awarding 30% of $1.5 million settlement) (Ex. 6); *In re China Sunergy Sec. Litig.,* No. 07 Civ. 7895 (DAB), 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (awarding 33 1/3% of $1.05 million settlement and noting that the fee requested is "within the range of percentage fees awarded in the Second Circuit"); *In re Akari Therapeutics PLC Sec. Litig.*, 17-cv-03577 (KPF), slip op. at 1-2 (S.D.N.Y. Nov. 28, 2018) (awarding 33 1/3% of $2.7 million settlement) (Ex. 6); *Singh v. Tri-Tech Holding, Inc. et al.*, No. 13 CV-9031 (KMW), slip op. at 2 (S.D.N.Y. Oct. 16, 2015) (awarding 33 1/3% of $975,000 settlement) (Ex. 6); *Strougo ex rel Brazilian Equity Fund, Inc. v. Bassini,* 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (awarding 33.3% of $1.5 million settlement).

Additionally, a recent analysis by NERA Economic Consulting of securities class action settlements found that from 2012-2021, the median attorneys' fee award for settlements of less than $5 million was 30%.  *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA 2022), Ex. 2 at 27.

### C.    The Requested Attorneys' Fee Would Be Reasonable Under the Lodestar Method

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to "cross-check" the proposed award against counsel's lodestar.  *Wal–Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50); *see also In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method.").

---

[4] All unreported slip opinions are submitted in a compendium attached as Ex. 6 to the

Here, Lead Counsel spent more than 631 hours of attorney and other professional staff time litigating and settling the case from inception through December 15, 2022. *See* Ex. 4-A. Lead Counsel's lodestar, derived by multiplying the hours spent by each attorney and other professional by their 2022 hourly rates, is $426,427.[5] *Id.* The hourly rates of Lead Counsel here range from $875 to $1,150 for partners, $600 to $850 for of counsels, $450 to $475 for associates, and $375 to $390 for paralegals. *See* Ex. 4-A. "[P]erhaps the best indicator of the market rate in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that *defend* class actions on a regular basis." *Telik*, 576 F. Supp.2d at 589; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation"). Defense firm rates gathered and analyzed by Labaton Sucharow from bankruptcy court filings nationwide in 2021 in many cases exceeded these rates. ¶78; Ex. 5.

The requested fee of 30% of the Settlement Fund, *i.e.,* $322,500, therefore represents a *negative* fractional multiplier of 0.76 (76%) of the total lodestar. A 0.76 "multiplier" is below the parameters used throughout district courts in the Second Circuit and is additional evidence that the requested fee is reasonable. *See*, *e.g.*, *In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving fee with a negative multiplier and

---

Villegas Declaration.

[5] The Supreme Court and courts in the Second Circuit have approved the use of current hourly rates to calculate a lodestar figure, as a means of compensating for the delay in receiving payment, inflation, and the loss of interest. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *In re HiCrush Partners LP Sec. Litig.*, No. 12-8557, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) ("the use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation").

noting that the negative multiplier was a "strong indication of the reasonableness of the [requested] fee"); *In re Marsh & McLennan Inc. Sec. Litig.*, No. 04-8144, 2009 WL 5178546, at *20 (S.D.N.Y. Dec. 23, 2009) (reasoning that where the multiplier is negative, the lodestar cross-check "unquestionably supports the requested percentage fee award.").

Within the Second Circuit, lodestar multiples greater than 1.5 are regularly awarded. *See, e.g., Walmart Stores Inc. v. Visa USA Inc.*, 396 F. 3d 96, 123 (2d Cir. 2005) (upholding a multiplier of 3.5 as reasonable on appeal); *Ark. Tchr. Ret. Sys. v. Bankrate*, No. 13-cv-7183, slip op. at 2 (S.D.N.Y Nov. 25, 2014) (Ex. 6) (awarding 1.8 multiplier). Fees representing multiples above a lodestar are awarded to reflect the contingency risk and other relevant enhancement factors. *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010) ("[A] positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors[.]"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar[.]").

Additional work will be required of Lead Counsel on an ongoing basis, including: correspondence with Settlement Class Members; preparation for, and participation in, the final approval hearing; supervising the claims administration process being conducted by the Claims Administrator; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid Claim Forms. However, Lead Counsel will not seek payment for this additional work. For all these reasons, the lodestar "cross-check" supports the reasonableness of the requested fee.

In sum, it is respectfully submitted that Lead Counsel's requested fee is reasonable whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## II.   THE REQUESTED FEE IS FAIR AND REASONABLE WHEN APPLYING THE SECOND CIRCUIT'S FACTORS

The Second Circuit has set forth the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case, whether under the percentage approach or the lodestar multiplier approach:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50.  As discussed below, it is respectfully submitted that these factors and the analyses above demonstrate that the requested fee would be reasonable.

### A.   Lead Counsel's Time and Labor

The time and effort expended by Lead Counsel in prosecuting the Action and achieving the Settlement support the requested fee.  As set forth in greater detail in the Villegas Declaration, Lead Counsel, among other things: conducted a comprehensive international investigation of the claims against Changyou and the other Defendants, including a robust review of Changyou's Merger; researched and drafted two amended complaints; worked with experts in the fields of valuation, damages, and appraisal rights under the law of the Cayman Islands, and engaged in arm's-length settlement negotiations with Defendants' Counsel to resolve the Action. *See generally* Villegas Declaration at §III.

As noted above and discussed in the Villegas Declaration, Lead Counsel expended more than 631 hours prosecuting this Action with a lodestar value of $426,427.  *See* Ex. 4-A.  At all times, Lead Counsel took care to staff the matter efficiently and to avoid unnecessary duplication of effort.

8

**B.        The Magnitude and Complexity of the Action Support the Requested Fee**

The magnitude and complexity of the Action also support the fee request.  Courts regularly recognize that securities class action litigation is "notably difficult and notoriously uncertain." *City of Providence,* 2014 WL 1883494, at *5; *In re Signet Jewelers Ltd. Sec. Litig.,* No. 16 cv 06728, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("securities class actions are generally complex and expensive to prosecute").  This case was no different.

As detailed in the Villegas Declaration, this Action raised particularly thorny questions concerning—among other things—damages, loss causation, falsity, scienter, and materiality within the scope of Changyou's business, as well as appraisal rights under Cayman law in connection with Changyou's "going-private" Merger.  Prosecuting the class's claims required expertise, skill and dedication, including expert analysis across multiple fields.  Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable.  *See City of Providence*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

**C.        The Risks of the Litigation Support the Requested Fee**

The risks associated with this contingency fee case also support the requested fee.  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Comverse*, 2010 WL 2653354, at *5; *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 433 (S.D.N.Y. 2001) (it is "appropriate to take [contingent-fee] risk into account in determining the appropriate fee.").

At the time the Parties agreed to settle, Settling Defendants had filed their Motion to Dismiss the Complaint and Lead Plaintiff was working on its opposition.  As discussed in the Villegas Declaration and the memorandum of law in support of Lead Plaintiff's motion for final

9

approval, the class faced the very real prospect of dismissal outright in connection with the Motion to Dismiss, especially in light of the *Jumei* decision and, if the claims survived the motion, years of additional and risky litigation involving contested certification of the class, completion of fact and expert discovery, complex dueling summary judgment motions, trial, and inevitable appeals. While Lead Plaintiff remains confident in its ability to prove its claims and to effectively rebut Defendants' defenses, many unresolved issues remained in continued litigation. The contours of the ultimate class and actionable misstatements could also have compromised Lead Plaintiff's ability to succeed at trial and obtain a larger judgment for the class. *See In re Bayer AG Sec. Litig.*, No. 03-1546, 2008 WL 5336691, at *5 (S.D.N.Y. Dec. 15, 2008) (noting the "difficulty of establishing loss causation [] and the difficulty in proving that Defendants acted with scienter, militate in favor of fee awards."). The Parties were deeply divided on virtually every issue in the litigation, as detailed in the Villegas Declaration, and there was no guarantee Lead Plaintiff's positions would prevail. If Defendants had succeeded on any of their defenses, Lead Plaintiff and the class would have recovered nothing or far less than the Settlement Amount.

In the face of many uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation would require the devotion of substantial time and expense with no guarantee of compensation. ¶67. Lead Counsel's assumption of this contingency fee risk strongly supports the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.").

**D.** **The Quality of Lead Counsel's Representation Supports the Requested Fee**

The quality of the representation by Lead Counsel is another important factor that supports the reasonableness of the requested fee. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, MDL No. 05-1695, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Lead Counsel is a nationally recognized leader in the field of securities class action litigation and has substantial experience litigating and trying securities class actions in courts throughout the country. ¶81; Ex. 4-C. The attorneys who were principally responsible for prosecuting this case relied upon their skill to develop and implement sophisticated strategies to overcome myriad obstacles raised by Defendants.

When considering the quality of counsel's representation, courts often look to the amount obtained. Here, the Settlement provides the Settlement Class with a certain and favorable recovery, where the prospects of no recovery were strong. As explained in detail in the Villegas Declaration, total damages could have ranged from approximately $32.6 million to $317 million, depending on the number of allegedly damaged shares and the fair value of the ADS, among other hotly contested facts. ¶¶5, 22-28. Typical recoveries in appraisal litigation would imply class-wide damages of closer to the lower range. ¶28.

Accordingly, the Settlement represents a recovery of up to approximately 3.3% of alleged damages, which is within the range of reasonableness that courts have approved. *See, e.g., In re Mindbody, Inc. Sec. Litig.*, 1:19-cv-08331, ECF No. 144 (approving $9.75 million settlement representing 2.2% of maximum estimated damages) (Ex. 6); *Hicks v. Morgan Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (approving $10 million settlement representing 3.8% of estimated damages); *Wong v. Arlo Tech., Inc.*, No. 19-cv-00372-

11

BLF, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (approving settlement representing 2.35% of estimated total damages).

The quality of Lead Counsel's representation is further demonstrated by the fact that the Settlement was obtained within the context of an aggressive defense by well regarded attorneys at Goulston & Storrs PC and Skadden, Arps, Slate, Meagher & Flom LLP.  Courts recognize that the strength of the opposition should be considered in assessing its performance.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *7 (among factors supporting 30% fee award was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, MDL No. 03-1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x. 9 (2d Cir. 2008).

### E.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3.  As discussed in detail in Section I, *supra*, the requested fee is within the range of percentage fees that have been awarded in comparable cases and, accordingly, the fee requested is reasonable in relation to the Settlement.

### F.    Public Policy Considerations Support the Requested Fee

A strong public policy favors rewarding firms for pursuing successful securities litigation. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the

12

enormous risks they undertook"); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2008) ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.").

III.    **THE REACTION OF THE SETTLEMENT CLASS TO DATE SUPPORTS THE REQUESTED FEE**

The reaction of the Settlement Class to date also supports the fee request.  First, through December 21, 2022, the Claims Administrator has provided Postcard Notices to 6,934 potential Settlement Class Members and nominees informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund and up to $60,000 in litigation expenses.  *See* Declaration of Margery Craig Concerning (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; (C) Mailing of CAFA Notice; and (D) Report on Requests for Exclusion Received to Date (the "Mailing Declaration" or "Mailing Decl."), dated December 21, 2022, Ex. 3 at ¶9 and Exs. A & B thereto.  While the time to object to the Fee and Expense Application does not expire until January 6, 2023, to date no objections have been received.  Lead Counsel will address any that are submitted in its reply papers, which will be filed on or before January 20, 2023.  Additionally, the requested fee of 30% is made with the full support of the Lead Plaintiff, a sophisticated institutional investor.  *See* Declaration of Hilary Shane, Managing Member of ODS Capital LLC, dated December 21, 2022, submitted herewith as Ex. 1 at ¶6.

* * *

For all the foregoing reasons, it is respectfully submitted that an award of a 30% attorneys' fee to Lead Counsel would be fair and reasonable.

**IV.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

Lead Counsel's fee application includes a request for payment of its litigation expenses, which were reasonably incurred and necessary to prosecute the Action. As explained in the Villegas Declaration, Lead Counsel incurred $41,785.97 in litigation expenses. *See* Ex. 4-B. This amount is below the $60,000 cap that the Notice informed potential Settlement Class Members counsel may apply for, and which—to date—there has been no objection to.

The amount of litigation expenses is consistent with the stage of the litigation. Lead Counsel has incurred expenses related to, among other things, consulting expert fees, investigator fees, electronic legal and factual research, service of process fees, translation services, and filing fees. A complete breakdown by category of the expenses incurred by Lead Counsel is set forth in Exhibit 4-B to the Villegas Declaration.

One of the largest expenses relates to the retention of Lead Plaintiff's consulting experts. These fees total $18,930, or approximately 45% of the total litigation expenses. *See* Ex. 4 at ¶8(b). Principally, Lead Counsel retained an expert on valuation issues to assess whether Changyou's fair value exceeded the price paid in the Merger, a loss causation and damages expert who analyzed various matters in connection with the investigation and pleadings, and a consulting expert with expertise in the law of the Cayman Islands. *Id*. Lead Plaintiff also retained an international investigation firm to assist with the investigation in China, resulting in costs of $13,065.00, or approximately 31% of total expenses. *Id*.

The other requested expenses are typical of those incurred in complex securities class actions, such as: court and service fees ($6,384.00); translation costs ($1,124.44); and fees associated with electronic legal and financial electronic research ($1,674.21). *See* Ex. 4-B.

It is respectfully submitted that such expenses are properly recoverable by counsel. "In

14

class action settlements, [a]ttorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients. When the 'lion's share' of expenses reflects the typical costs of complex litigation such as experts and consultants, trial consultants, litigation and trial support services, document imaging and copying, deposition costs, online legal research, and travel expenses, courts should not depart from the common practice in this Circuit of granting expense requests." *In re Virtus Inv. Partners, Inc. Sec. Litig.*, No. 15-cv-1249, 2018 WL 6333657, at *5 (S.D.N.Y. Dec. 4, 2018) (approving $898,497.96 in litigation expenses, including over $340,000 for experts and $336,000 for litigation support); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2020 WL 7481292, at *2 (S.D.N.Y. Dec. 18, 2020) (finding the expense request reasonable for fees paid to experts, mediation fees, computerized research, document production and storage, and travel, among others, and noting that "[c]ourts routinely note that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses").

## V. REIMBURSEMENT TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4)

The PSLRA provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).  Here, as described in Lead Plaintiff's declaration, since its appointment, Lead Plaintiff has been committed to pursuing the class's claims—and has taken an active role in so doing.  Courts "award such costs and expenses to both reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as provide an incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the first place." *Hicks*, 2005 WL 2757792, at *10.

15

Lead Plaintiff actively and effectively fulfilled its obligations as a representative of the class, complying with the demands of the litigation.  Lead Plaintiff is a sophisticated and knowledgeable institutional investor that, among other things: (i) provided valuable contributions to the development of the core case theory given its Managing Member's advanced degree in finance and experience with issues concerning mergers and appraisal rights; (ii) participated in regular in-person, telephonic, and written communications with Lead Counsel concerning the Action; (iii) remained fully informed regarding case developments; (iv) reviewed pleadings and motions filed in the Action; and (v) closely monitored and participated in settlement discussions, ultimately agreeing to accept the Settlement, subject to the Court's approval.  *See* Ex. 1 at ¶¶3-4. These efforts required the Managing Member of ODS to dedicate time and resources to the Action that she would have otherwise devoted to her regular duties.  Lead Plaintiff seeks $15,000 in connection with the time dedicated to the litigation.  *See* Ex. 1 at ¶¶8-9.

Numerous courts within this District have approved payments to compensate representative plaintiffs under similar circumstances.  *See, e.g., Stein v. Eagle Bancorp, Inc., et al.,* Case No. 1:19-cv-06873-LGS, slip op. at 3 (S.D.N.Y. Feb 10, 2022) (awarding individual lead plaintiff $7,500) (Ex. 6); *In re Silvercorp Metals Inc. Sec. Litig.,* No. 12-cv-09456-JSR, slip op. at 9 (S.D.N.Y. Feb. 13, 2015) (awarding two individual lead plaintiffs $12,500 each) (Ex. 6); *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.,* 772 F.3d 125, 132-134 (2d Cir. 2014) (affirming award of more than $450,000 to representative plaintiffs for time spent by their employees); *Marsh & McLennan,* 2009 WL 5178546, at *21 (awarding a combined $214,657 to two state pension fund lead plaintiffs).

**CONCLUSION**

For the foregoing reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in the amount of 30% of the Settlement Fund, which includes accrued interest;

16

$41,785.97 in litigation expenses incurred by Lead Counsel, plus accrued interest; and $15,000 to Lead Plaintiff pursuant to the PSLRA.  A proposed order will be submitted with Lead Counsel's reply papers, after the January 6, 2023 deadline for objecting has passed.

Dated: December 22, 2022

**LABATON SUCHAROW LLP**

*/s/ Carol C. Villegas*
Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: cvillegas@labaton.com
            dschwartz@labaton.com
            jbissell-linsk@labaton.com

*Counsel for ODS Capital LLC and the
Proposed Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

/s/ *Carol C. Villegas*
CAROL C. VILLEGAS