N1RKCHAC                    ***DRAFT***

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

IN RE CHANGYOU.COM LIMITED
SECURITIES LITIGATION                    21 CV 7858 (GHW)
                                         Telephone Conference
-------------------------------x

                                         New York, N.Y.
                                         January 27, 2023
                                         3:00 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                         District Judge

                         APPEARANCES

LABATON SUCHAROW LLP
     Attorneys for Plaintiffs
BY:  JAKE E. BISSELL-LINSK
     NICOLE M. ZEISS

GOULSTON & STORRS PC
     Attorneys for Defendants
BY:  ABIGAIL FLETES
     RICHARD J. ROSENSWEIG

N1RKCHAC                    ***DRAFT***

(The Court and all parties appearing telephonically)

THE COURT:  This is Judge Woods.  Do I have a court reporter on the line?

(Pause)

THE COURT:  Good.  Thank you.

Let me begin by taking appearances from the parties.

First, who's on the line for plaintiff then, if I can, I'd like to ask the principal spokesperson for each side to identify him or herself and the members of their team rather than having each lawyer introduce themselves individually.

So, let me begin with counsel for plaintiffs.  Who is on the line for plaintiffs?

MR. BISSELL-LINSK:  Hi, your Honor.  This is Jake business links from lead counsel Labaton with me is Nicole Zeiss and I will be the principal spokesperson though I think Nicole will also be speaking.

THE COURT:  Thank you.  Good.

And who's on the line for can defendants?

MR. ROSENSWEIG:  Good afternoon, your Honor.  Richard Rosensweig from geuls stores and with me is Abigail Fletes.

THE COURT:  Good.  Thank you very much.

Now, let me just say a few brief comments as we begin this proceeding.

At the outset, as the participants in the conference know, this is a hearing for the proposed approval of the

N1RKCHAC                    ***DRAFT***

settlement reached in the case of In re Changyou.com Ltd. Sec. Litig., which is Case No. 21 CV 7858.  This is a public proceeding.  Any member of the public or press, as well as any class members, are welcome to audit this proceeding.  So, I ask everyone to please keep the fact that this is a public proceeding in mind.

Second, I'd like to ask everyone who's on the line to please state your name each time that you speak.

Third, please keep your lines on mute at all times except when you are intentionally speaking to the Court or to the representative of a party.  To the extent that you are not intentionally speaking to me or to the representative of a party, again, please keep your phones on mute.

Fourth, I'm inviting our court reporter to let us know if he has any difficulty hearing or understanding anything that we have to say here.  If our court reporter does ask you to do something that will make it easier for him to do his job, please do it, to the extent that you can.

And, finally, I'm ordering that there be no recording or rebroadcast of all or any portion of today's proceeding.

So, with that out of the way, let me say that briefly, as the parties and participants know, I scheduled this hearing in order to discusses the proposed settlement of this case.  In it, lead plaintiff, ODS Capital LLC, on behalf of itself and the settlement class, seeks final approval of the class action

N1RKCHAC                        ***DRAFT***

settlement between the class and defendants Changyou.com limited, which I will refer to as Changyou, Issue.com limited, Sohu.com (Game) limited, Xiao Chen and Joanna Lv, reaffirmation of my prior certification of the settlement class for the purpose of effect waiting the settlement, and approval of the plan of allocation.  Lead counsel, Labaton seuk LLP, moves force an award of attorneys' fees and expenses, and a service award for compensation for ODS Capital LLC's time and service representing the class in this case.  Defendants do not oppose these motions.  I have reviewed the submissions and I am prepared to rule on the motions.

Before I do that, let me first ask if there's anything that any party or participant would like to add before I rule on the motions.

Let me hear first for plaintiffs.  Counsel?

MR. BISSELL-LINSK:  Thank you, your Honor.  This is Jake Bissell-Linsk.

The only thing I would like to add is that the deadline for objections was January 6, 2023, and we have received no objections to any aspect of the settlement or related relief, and we have also received no requests for exclusion from the settlement.

With that, I am more than happy to answer any questions that you have but also fully stawrs that we've laid everything out in our papers.

THE COURT:  Thank you.

Counsel for defendants, is there anything that you'd like to add?

MR. ROSENSWEIG:  Just a question, your Honor:  In case I missed it, I wasn't sure, when you recited the names of the parties, you included Sohu.com game limited.  If you did I missed that.

THE COURT:  Thank you I did.  Good.

So, is there any other participant in the conference that wishes to be heard?

Hearing none, let's proceed.

I just have one brief question, maybe two brief questions.

I did not see representations from the parties regarding their compliance with Rule 11 in connection with this case.  I'd like to confirm that the parties complied with their obligations in connection with Rule 11.  So I'm going to ask for a representation from counsel for each side regarding your respective compliance with the rule and, to your knowledge, your adversary's.

So, counsel for plaintiffs, did counsel for plaintiffs ***and plaintiff comply with Rule 11 with respect to any compliant, responsive pleading or dispositive motion filed in this case?

MR. BISSELL-LINSK:  Yes, your Honor.  And, to the best

of my knowledge, defendants have as well.

THE COURT:  Thank you.

Counsel for defendants, did counsel for defendants and each of the defendants comply with Rule 11 with respect to any complaint, responsive pleading, or dispositive motion filed in this case?

MR. ROSENSWEIG:  Richard Rosensweig.

Yes, your Honor, certainly.  And the same as far as we're concerned with respect to plaintiffs.

THE COURT:  Good.  Thank you.

So, please, again, praise your phones on mute.  I'm prepared to rule on the motions.  I'm going to do so now, and will do so orally.

Beginning with class certification:

On July 5, 2022, pursuant to Rule 23 of the Federal Rules of Civil Procedure, I preliminarily certified a settlement class for settlement purposes only.  The settlement class is defined as:

(a) all holders of Changyou.com limited ADSs on April 23, 2020 and (b) all persons and entities that sold (including by tendering) Changyou adses during the the period February 19, 2020 through April 23, 2020, include) the class period), who were allegedly harmed by defendant' conduct. Excluded from the settlement class are:  (i) defendants (ii) any officers or directors from defendants during the class

N1RKCHAC                    ***DRAFT***

period (the "Excluded D&Os"); (iii) members of the immediate families of the individual defendant and of the excluded D&Os; (iv) the subsidiaries and affiliates of the company and any entity in which defendants or the excluded D&Os have or had a controlling interest; and (v) the legal representatives, Harris, successors, or assigns of any excluded person or entity, in their capacities as such.  Also excluded from the settlement class are those persons who timely and validly seek exclusion from the settlement class in connection with the requirements set forth below and in the notice."

Docket No. 58 paragraph 2 approval of the settlement Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and somebody's civil fair, reasonable, and adequate.  Federal Rule of Civil Procedure 23(e).  Under Rule 23(e)(2), amended on December; 2018, courts must consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under

N1RKCHAC                         ***DRAFT***

Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

*Id..*

To determine procedural fairness, courts examine the negotiating process leading to the settlement.  Wal-Mart Stores, Inc. v. Visa USA, Inc. 396 F.3d 96, 116 (2d Cir. 2005). Courts in this circuit have historically determined the substantive fairness by analyzing the factors set forth in city of droit v. *Grinnell* korp 495 F.2d 448 (2d Cir. 1974) "The factors set forth at Rule 23(e)(2)V been applied in tandem with the Second Circuit's *Grinnell* factors and focus the court and the lawyers on core concerns of procedure and you be stance that should guide the decision whether to approve the proposal."  Noig 2019 WL 5257534 at *9 (S.D.N.Y. Oct. 162019) appeal withdrawn sub nom tan ciao v. William No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020)(citing stawrs F.R.D 904, 918 Apr. 262018)) see also in repayment card interchange fee & Merck disk antitrust Litig. 330 F.R.D. 11, 29 (E.D.N.Y Jan. 28, 2019)("The Court understands the new Rule 23(e) factors to add to, rather than displace the [*Grinnell*] factors.")).

The Court examines the procedural and substantive fairness of a proposed settlement in light of the "strong judicial policy favoring settlements" of class action suits. Wal-Mart Stores, 396 F.3d at 116.  A "presumption of fairness, adequacy and reasonableness may attach to a class settlement

N1RKCHAC                    ***DRAFT***

reached in arm's-length negotiations between experienced,

capable counsel after meaningful discovery."  *Id.* "Absent fraud

or collusion [courts] should be hesitant to substitute] their]

judgment for that of the parties who negotiated the

settlement."  In re EVCI career kols holding Corp. SEC Litig.

2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

For the reasons set forth below, the settlement

satisfies the factor set forth in Rule 23(e)(2) and *Grinnell*,

and, accordingly, the settlement is approved.

A. procedural fairness.

The settlement is procedurally fair, reasonable,

adequate, and not a product of collusion.  "Rule 23(e)(2)(A),

which requires adequate representation, and Rule 23(e)(2)(B),

which requires arm's-length negotiations, 'constitute the

"procedural" analysis 'of the fairness inquiry."  Christine

Asia co-201,912th law 5257534 at *9 (quoting payment card, 330

F.R.D. at 29).  The parties engaged in "extended arm's-length

discussions" over the course of several months in late 2021

before reaching an agreement in principle to settle this action

on November 24, 2021.  Docket No. 63, declaration of Carol C.

Villegas) "Villegas dec") paragraph 18.  The parties then

ultimately agreed on the settlement agreement that I

preliminarily approved on July 5, 2022.  *Id.* paragraph 19.

Here, given the parti' months-long arm's-length negotiations,

there is no evidence to rebuttal the presumption of procedural

N1RKCHAC                    ***DRAFT***

fairness.  As a result, I conclude that the settlement is procedurally fair.

B. substantive fairness.

The settlement is also subs Civil fair.  "Courts in this circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate," as required by Rule 23(e)'s amendments.  Christine Asia co-2019 WL 525p 7534 at *10.  The factors set forth in *Grinnell* provide the analytical framework for evaluating the substantive fairness of a class action settlement.  The *Grinnell* factors are:  (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class; (3) the stable of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.  "Not every factor must weigh in favor [the] settlement, rather the Court should consider the totality of these factors in light of the particular circumstances."  Christine Asia 2019 WL 5257534, at *9 (citing In re global

N1RKCHAC                      ***DRAFT***

crossing sec and ERISA Litig. 225 F.R.D. 436, 456 (S.D.N.Y. 2004)).

          1.   *Grinnell* factors.

          Here, litigation through trial would be complex, expensive, and long.  "As a general rule, securities class actions are notably difficult and notoriously uncertain to lit bait."  In re Facebook, Inc. IPO second & drif TIFF Litig. No. 12 CV 2389, 2015 Westlaw 6971424 at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd* 674 F. App'x 37 (2d Cir. 2016) lead plaintiff notes that "trial of the claims here would have required extensive expert testimony on issues related to, among other things, appraisal rights under the law of the Cayman Islands, the fair value of Changyou adses, and damages under the Exchange Act."  Memorandum of law in support of lead plaintiff's motion for final approval of class action settlement and plan of allocation ("Lead Plaintiffs Mem..") at 8, therefore, the first *Grinnell* factor weighs in favor of final approval seal noig) "Settlement is favored if settlement results in substantial and tangible present recovery, without the attendant risk and delay of trial.")

          With respect to the second grim factor, the class members' reaction to the settlement has been overwhelmingly positive.  As of the date of the objection deadline, no class members have objected to the settlement.  See reply memorandum of law in further support of final approval.  Docket No. 64

N1RKCHAC                    ***DRAFT***

("Reply") at 2-3.  Further, no class members have filed requests for exclusion.  *Id.* at 3.  The overall favorable response demonstrates that the class approves of the settlement and supports final approval.

While the parties had not yet conducted discovery, the pertinent question here is "whether counsel had an adequate appreciation of the merits of the case before negotiating." Beck man v. key Bank nah 293 F.R.D. 467, 475 (S.D.N.Y. 2013)(quoting In re war principal sodium antitrust Litig. stawrsing Third Circuit 2004)) lead counsel spent significant time and resources analyzing and litigating the factual and legal stawrs of this case which included analysis of:  (i) documents filed publicly by the company with the SEC; (ii) publicly available information, including press releases, and news articles, and other public statements issued by or concerning the company and defendants; (iii) research reports issued by financial analysts concerning the company; (iv) other publicly available information and data concerning thesome; and (v) the applicable law governing the claims and potential defenses.  Villegas declaration paragraph 14.  Lead counsel also worked with an international investigator in China and consulted with experts with respect to damages and loss causation issues, and dissenter shareholder rights under Cayman law.  *Id.*, therefore, the third *Grinnell* factor weighs in favor of final approval.

N1RKCHAC                      ***DRAFT***

Turning to the fourth and fifth *Grinnell* factors, the risk of establishing liability and damages further weighs in favor of final approval.  "Litigation inherently involves risks."  In re PaineWebber Ltd. partnerships Litig. 171 F.R.D. 104, 126 (S.D.N.Y. 1997), indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits.  See Velez v. Majik cleaning serve, Inc. 2007 WL 7232783 at *6 (S.D.N.Y. June 25, 2007), here, plaintiffs would have faced numerous risks as to both liability and damages if they had continued to litigate.  The case faced a pending motion to dismiss, and a recent case involving allegations very similar to those here — Haideri v. noig 2021 west lay 4170791 (N.D.Cal. Sept. 14, 2021) — was decided addevelopers to lead plaintiff putting prospects of success in significant doubt. See lead plaintiffsMem. at 9-10.  Even the action progressed past the motion to dismiss moreover lead plaintiff would have had the challenge of establishing "falsity, materiality, and scienter with sufficient evidence, and faced additional risks relating to its ability to prove loss causation and damages." *Id.* at 10, see *Id.* at 10-13 (detailing these challenges).  The proposed settlement eliminates all of these challenges.  These factors, therefore, weigh in favor of final approval.

The risk of obtaining class certification and maintaining it through trial is also present.  "Settling defendants would have undoubtedly challenged certification with

N1RKCHAC                          ***DRAFT***

respect to reliance, arguing that lead plaintiff could not establish class-wide reliance in connection with the allegedly false statements."  *Id.* at 13.  This would have required further and extensive briefing, and also could have entailed additional appeals.  Settlement eliminates the risk, expense, and delay inherent in the litigation process.  The sixth *Grinnell* factor weighs in favor of final approval.

Turning to the seventh *Grinnell* factor, the defendants here do have financial constraints.  While they might be able to withstand a somewhat greater judgment, "a defendant is not required to empty its coffers before a settlement can be found adequate."  Shapiro v. JP Morgan Chase & Co. 2014 WL 11224666 at *11 (S.D.N.Y. Mar. 24, 2014)(quotation omitted) defendants' financial circumstances do not ameliorate the force of the other *Grinnell* factors, which lead to the conclusion that the settlement is fair, reasonable and adequate.

Finally, the amount of the settlement, in light of the best possible recovery and the attendant risks of litigation, weighs in favor of final approval.  The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum."  In re Austrian & German Bank Holocaust Litig. 80 F.Supp.2d 164, 178 (S.D.N.Y. 2000.

MR. BISSELL-LINSK:  Instead, there is a range of reasonableness with respect to a settlement — a range which

N1RKCHAC                    ***DRAFT***

recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in talked any litigation to completion."  Newman v. Stein 464 F.2d 689 of 689, 693 (2d Cir. 1972), here, lead counsel asserts that the settlement would constitute approximately 3.3 percent of the estimated recoverable damages.  Lead plaintiffsMem. at 19.  This is a reasonable result when compared to the median recovery for securities class action settlements of 1.7 percent in 2020.  Id., therefore, the amount of this immediate recovery is reasonable and this factor weighs in favor of final approval.

Weighing the *Grinnell* factors, I find that the settlement is substantively fair and weighs in favor of final approval.

2.  Rule 23(e)'s remaining factors.

The proposed method of distribution is effective.  See Federal Rule of Civil Procedure 23(e)(2)(C)(ii).  The settlement provides for the distribution of proceeds in accordance with the plan of allocation.  Under the plan of allocation, the claims administrator will calculate claimants' recognized loss amounts using transactional information provided in claim forms.  Villegas declaration paragraph 56. The plan of allocation recognizes three types of losses based on three categories of transactions, which is designed to accurately reflect the difference between lead plaintiff's

N1RKCHAC                          ***DRAFT***

estimate of the nominal "fair value" of Changyou stock of $38.26 and the price at which the shares were sold, and also to take into account the relative risks of each type of loss succeeding through litigation.  *Id.* at paragraphs 51-54.  Of the claims administrator will then distribute a pro rata share of the net settlement to each authorized claimant with a claim for $10 or greater, though with a cap on allocations available for ads, both purchased and sold during the class period.  *Id.* paragraphs 54-55.  "This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective."  Christine Asia v. Young that 2019 WL 5257534 at *14 (S.D.N.Y. Oct. 16, 2019).

The proposed award of attorneys fees is fair and reasonable when the terms of the proposed award are considered.  See Federal Rule of Civil Procedure 23(e)(2)(C)(iii).  As discussed below, the proposed attorneys' fees of 30 percent of the total settlement, or $322,500, to be paid upon approval by the Court, are reasonable in light of the work of lead counsel, their investment of resources in the case, their prosecution of the action for the benefit of the class, the risks that they faced in the litigation, and the overall benefit of the settlement achieved.

Ors the parties are also required to identify agreements entered into in connection with the settlement.  Federal Rule of Civil Procedure 23(e)(2)(C)(iv) and 23(e)(3)

N1RKCHAC                    ***DRAFT***

require that the parties seeking approval file a statement identifying any agreement made in connection with the proposal, and that I consider any such agreements in my evaluation of the settlement.  Here, the parties entered into a settlemental agreement "setting forth the conditions under which settling defendants have the option to terminate the settlement in the event that requests for exclusion from the settlement class exceed an certain agreed-upon threshold."  Lead plaintiffsMem. at 16.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the settlement."  Cheefn Asia co-2019 WL 5257534 at *15.

And, finally, the settlement treats class members equitably relative to one another.  Federal Rule of Civil Procedure 23(e)(2)(D).  As discussed further who, the plan of allocation provides that each eligible class member will receive a pro rata share of the net settlement based on their purchases of stock as calculated under the plan of allocation IV plan of allocation.

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate...an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."Or in re WorldCom, Inc. sec Litig. 388 F.Supp.2d 319, 344 (S.D.N.Y. 2005)(citation and quotation omitted).  A plan of allocation

need not be perfect," EVCI2007 WL 2230177 at *11 (collecting cases), or "tailored to the rights of each plaintiff with mathematical precision," In re PaineWebber 171 F.R.D. at 133. Thus, "in determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel." EVCI2007 WL 2230177 at *11.

Here, "the the Court-approved claims administrator, SCS, under lead counsel's direction, will calculate claimants 'recognized has amounts using the transactional information provided in their claim forms," and in accordance with a detailed formula for calculating recognized loss amounts. Villegas declaration paragraph 56, see ID paragraphs 51-55. "The sum of a claimant's recognized loss amounts will be the claimant's "Recognized Claim." If the aggregate amount of all recognized claims of all authorized claimants is greater than the net settlement fund, which is likely given that the settlement does not recover 100 percent of alleged damages, each authorized claimant will receive a payment equal to their pro rata share of the Net Settlement Fund, assume that their payment would be $10 or greater." *Id.* paragraph 56.

Because the plan of allocation has a clear rational basis, equitably treats the class members, and was devised by experienced class counsel and its expert, I find it to be fair and adequate. See In re Tel.

MS. ZEISS: K, Inc. SEC Litig. stawrs S.D.N.Y. 2008.

N1RKCHAC                          ***DRAFT***

Couple nation of notice.

On July 5, 2022, I entered an order granting preliminary approval of the settlement as "sufficiently fair, reasonable and adequate" to class members.  Docket No. 58.  Strategic claims services ("SCS"), the court-appointed claims administrator, mailed the settlement notice to 6,934 potential settlement class members.  Villegas declaration paragraph 42.  SCS published a summary notice in Investor's Business Daily and transmitted the summary notice over GlobeNewswire.  *Id.* paragraph 43.  SCS further established a settlement website that provided dailies information for potential settlement class members.  *Id.* paragraph 44.  It also created and continues to maintain a toll-free telephone number for potential class members to obtain more information about the settlement and the process for filing a claim.  *Id.* Exhibit 3 paragraph 12.  Finally, it created a web page to provide the same information to potential class members.  *Id.* paragraph 13.

These notices apprised settlement class members of, among other things, (1) a summary of the settlement; (2) the proposed plan of allocation; (3) the amount lead counsel would seek in attorneys' fees and expenses and the award to lead plaintiff; (4) information concerning how to object to any aspect of the settlement; (5) an explanation of the reasons for the settlement (6) a date by which settlement class members must file a request for exclusion; and (7) the deadline for

N1RKCHAC                        ***DRAFT***

submitting a claim form.  Villegas declaration paragraph 41, 44, Exhibit 3-A at 2; see as Federal Rule of Civil Procedure 23(c)(2)(B)mented I find that these efforts fairly and adequately advised class members of the terms of the settlement, including informing class members of the deadline and manner in which they were required to submit a claim form to be eligible for a distribution and informing all class members of their rights, including their right to object to the settlement and to attend the final fairness hearing today.  I find that the notice and its distribution comported with all constitutional requirements, including those of due process.

Attorneys' fees, costs and expenses.

Lead counsel requests attorneys' fees in the amount of $322,500.  This amounts to 30 percent of the $1,075,000 settlement fund.  Memorandum of flaw support of lead counsel's motion for an award much attorneys' fees and payment of expenses ("FeeMem..") Docket No. 62.  Lead counsel also requests reimbursement of $41,785.97 in litigation expenses, plus accrued interest.  Id.  In addition, the lead plaintiff requests an award of $15,000 as compensation for the costs and expenses incurred in prosecuting the case on behalf of the class as lead plaintiff.

The trend in the Second Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases, although the Court has discretion to award

N1RKCHAC                      ***DRAFT***

attorneys' fees based on either the lodestar method or the percentage of recovery method.  See Fresno County employees let association Z stawrs 925 F.3d, 63, 68 (2d Cir. 2019).

The notice provided to class members advised that class counsel would apply for attorneys' fees for up to 30 percent of the settlement fund and up to $60,000 in litigation expenses.  Villegas declaration Exhibit 3-A at 2. No class member objected to that provision.  Reply at 2-3.

A. *Goldberger* factors.

Reasonableness is the touchstone when determining whether to award attorneys' fees.  In *Goldberger v. Integrated Resources, Inc.* 209 F.3d 43 (2d Cir. 2000), the Second Circuit set forth the following six factors to determine the reasonableness of a fee application:  (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  *Id.* at 50.

1.  Lead, counsel,'s time and labor.

Lead counsel's fee declaration shows a total of 631.6 hours spent on the litigation over the course of this action. Villegas declaration Exhibit 4-A.

2.  Magnitude and complexity of the litigation.

The size and difficulty of the issues in the case are significant factors to be considered CKend in making a fee

N1RKCHAC                    ***DRAFT***

award.   In re presidential SEC, Inc. Ltd. P assures 912 F. Supp. 97, 100 (S.D.N.Y. 1996).   "In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain."   In re flag telecom Holdings Ltd. sec Litig. 2010 WL 4537550 at *15 (S.D.N.Y. Nov. 8, 2010)(quotation omitted).   This case is one of substantial magnitude in addition to all of the complications that deigned to any large securities class action, this matter involved complex factual issues, discovery, and litigation.   The amount sought which are plaintiffs counsel is commensurate with the magnitude and complexity of this litigation.

3.   The risk of litigation.

As discussed, lead counsel faced significant risk in prosecuting this action and proving the merits of the claims. Defendants adamantly denied any wrongdoing and, in the event that litigation had continued, would have continued to aggressively litigate their defenses through further class certifications proceedings, summary judgment, trial, and appeals.

4.   Quality of representation.

Lead counsel has considerable experience in consumer class action lawsuits, such as this.   See Villegas declaration Exhibit 4-C.   Here, the Court has no reason to doubt the

N1RKCHAC                        ***DRAFT***

quality of their representation.

The high quality of defense counsel opposing plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the settlement. "The ability of plaintiffs' counsel to obtain a favorable settlement for the class in the face of such formidable legal opposition confirms the quality of their representation of the class."  In re Marsh ERISA Litig. 265 F.R.D. 128, 148 (S.D.N.Y. 2010); see also Christine Asia co-2019 WL 5257534 at *19 ("One marker of the quality of representation the class received is the quality of the result obtained.").

Accordingly, I find that this Goldberger factor weighs in favor of approving the requested fee award.

5.   The requested fee in relation to the settlement.

Generally, courts consider the size of a settlement to ensure that the percentage awarded does not constitute a windfall.  As stated previously, lead counsel was permitted to seek up to 30 percent under the settlement and seeks that amount.  In this case, that fee is within the range of reasonableness in light of other class action settlements in this circuit.  See, e.g. In re high crush Partners L.P. SEC Litig. No. 12 CV 85572014 WL 7323417 at *12 (S.D.N.Y. Dec. 19, 2014)("In this circuit, courts routinely award attorneys' fees that run to 30 percent and even a little more of the amount of the common fund."); MONY v. shellies prime stake, stone

N1RKCHAC                     ***DRAFT***

crab&oyster bar 2009 WL 5851465 at *5 (S.D.N.Y. Mar. 31, 2009)("Class counsels request for 33 percent of the settlement fund is typical in class action settlements in the Second Circuit.") 6.  Public policy considerations.

When determining whether a fee award is reasonable, courts consider the social and economic value of the class action, "and the need to encourage experienced and able counsel to undertake such litigation."  In re Sumitomo Copper Litig. 74 F.Supp.2d 393, 399 (S.D.N.Y. 1999) "Courts have, as a generic matter, frequently observed that the public policy of vigorously enforcing the federal securities laws must be considered in calculating an award."  In re bioscrip, Inc. SEC Litig. 273 F.Supp.3d 474, 502 (S.D.N.Y. 2017)(quotation omitted), *aff'd* sub nom Fresno County employees retirement association v. ierveg son/weaver family trust 925 F.3d 63 (2d Cir. 2019).  Vigorous, private enforcement of the federal securities laws laws can only occur if private investors can obtain some parity in representation with that available to large corporate defendants.  Accordingly, public policy favors granting lead counsel's fee request.

After considering all the Goldberger factor, the requests fee award appears to be reasonable.

B. litigation expenses.

Lead counsel also moves the Court for reimbursement of she thousand $785,097 in litigation expenses plus accrued

N1RKCHAC                    ***DRAFT***

interest which include, "among other things, consulting expert fees, Investigator fees, electronic legal and fact wag research service of process fees translation services and filing fees. FeeMem. at 14.  Courts routinely award such costs.  See In re Merrill Lynch & Co., Inc. research reports sec Litig. 246 F.R.D. 156, 178 (S.D.N.Y. 2007)("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."); Federal Rule of Civil Procedure 23(h).  Counsel's motion for costs and expenses is granted.

                    C. lodestar "Cross Check."

          In Goldberger the Second Circuit "encouraged the practice of requiring documentation of hours as a "cross check" on the reasonableness of the requested percentage." Goldberger, 209 F.3d at 50.  "Of course, where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."  *Id.* counsel submitted a summary of time records detailing the billable rate and hours wonder by each attorney in this case noig.

          I find that these billable rates based on the timekeepers title, specific years of experience, and market rates for similar professionals in their fields nationwide and in New York, where lab suck is based, to be ream in this context.  See also Villegas declaration Exhibit 4-C (including personal profiles of the lawyers who worked on the case).

                    Paced on plaintiffs' counsel's requested fee —

N1RKCHAC                         ***DRAFT***

30 percent of the settlement, $322,500 — the lodestar yields a "cross check" multiplier of about negative 0.76.  Therefore, the fee is Mr. O the multipliers typically awarded in this circuit.  "Courts regularly award lodestar multipliers from 2 to 6 times lodestar in this circuit."

Fliesher v. Phoenix life Ins. Co. 2015 WL 108 stawrs S.D.N.Y. seventh 9, 2015)(quotation omitted quotation omitted collecting collecting, thus, the lodestar cross check confirms that plaintiffs counsels requested fee is reasonable.

The Court therefore finds that paced on the worryinger factors and the lodestar cross check that plaintiffs' counsel requested fees are reasonable.

D. lead plaintiff's expenses.

Lead plaintiff seeks an award of $15,000 in recognition of the time and expense that it incurred on behalf of the class.  Villegas declaration paragraph 87.  15 U.S.C. Sections 77(Z)1(a)(4) let us "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."

As set forth in the supporting declaration of lead plaintiff's managing member Hillary Shane, lead plaintiff dedicated time to the successful prosecution of this action, including by assisting with the development of the core theory of the claims, reviewing court filingsal and participation in

N1RKCHAC                      ***DRAFT***

discussions about a potential resolution of the case and the determination of the proposed settlement CHECK Villegas declaration Exhibit 1 ("Shane Dec") paragraph 9 these are the kinds of activity which are regularly found to support awards to class representative.  Lead plaintiff asserts that $15,000 is a conservative estimate of the value of the time and resources he invested in this case.  *Id.* paragraph 8.  And the application here is consistent with the notice, which disclosed that the "reasonable costs and expenses" of lead plaintiff plus the "payment of litigation expenses incurred in prosecuting the action" would not "exceed $60,000, plus accrued interest." Villegas declaration Exhibit 3-B paragraph 4.

Thus, I find that the requested award of $15,000 to lead plaintiff is reasonable.

In conclusion, I am reaffirming my certification of the class for the purpose of effect waiting the settlement, approve the class action settlement for $1,075,000 and approve the plan for allocating and distributing the net proceeds of the settlement.  Award lead counsel $322,500 in fees — which amounts to 30 percent of the settlement fund — in addition to their requested reimbursement of $41,785,000 tours I also award lead plaintiff a service award of $15,000.  I expect to enter an aorder and judgment consistent with the parties' proposals later today or tomorrow.

Counsel, please send me a Word version of the proposed

N1RKCHAC                    ***DRAFT***

order to my chambers' email account promptly.

Anything before we adjourn, first, counsel for plaintiffs?

MR. BISSELL-LINSK:  No, your Honor.

THE COURT:  Thank you.

Counsel for defendants?

MR. ROSENSWEIG:  No, your Honor.  I would have thought that you had a Word version, of the proposed final judgment but I may be mistaken about that.

THE COURT:  Good.  Thank you very much.

Thank you, all, for working on the case and thank you for working to resolve this.  This proceeding is adjourned.?

MR. ROSENSWEIG:  Thank you, your Honor.

* * *